No. 25-40520

IN THE

# United States Court of Appeals

FOR THE FIFTH CIRCUIT

In the matter of
DONALD R. TRIPLETT, JR.,
Debtor.

KEITH BLACK; JEREMY HALTOM,
Appellants

V.

DONALD R. TRIPLETT, JR.,
Appellee.

On Appeal from the United States District Court
Eastern District of Texas, Sherman Division
Case No. 4:24-cv-00838 (JCB)

**APPELLANTS' BRIEF**

Eric M. English
Adriana T. Young
**PORTER HEDGES LLP**
1000 Main Street, 36th Floor
Houston, TX 77002
(713) 226-6000
eenglish@porterhedges.com
ayoung@porterhedges.com

***Counsel for Appellants***
***Keith Black and Jeremy Haltom***

## Certificate of Interested Persons

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal.

*Appellants:*

Keith Black

Jeremy Haltom

***Counsel for Appellants Keith Black and Jeremy Haltom:***

Eric M. English
Jordan T. Stevens
Adriana T. Young
**PORTER HEDGES LLP**
1000 Main Street, 36th Floor
Houston, Texas 77002[1]

And

Ronald L. Holmes
John David Reed
**HOLMES FIRM PC**
International Plaza III
14241 Dallas Parkway, Ste. 800
Dallas, TX 75254[2]

---

[1] Counsel to Appellants in Case No. 4:24-cv-00838 (consolidated with Case No. 4:24-cv-00837) before the United States District Court for the Eastern District of Texas (the "District Court Appeal") and before this Court.

[2] Counsel to Appellants in Adversary Nos. 20-04057 & 20-04059 before the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division (the "Adversary

And

Brandon Tittle
**TITTLE LAW GROUP**
5465 Legacy Drive, Ste. 650
Plano, Texas 75024[3]

*Appellee:*

Donald R. Triplett, Jr.

*Counsel for Appellee Donald R. Triplett, Jr.:*

David R. Gibson
**THE GIBSON LAW GROUP**
15400 Knoll Trail Dr., Ste. 205
Dallas, TX 75248[4]

And

Joyce W. Lindauer
**JOYCE W. LINDAUER ATTORNEY, PLLC**
1412 Main Street, Ste. 500
Dallas, Texas 75202[5]

And

*Additional Counsel for Appellee Listed on Following Page*

---

Proceedings") and Chapter 7 Bankruptcy Case No. 19-42570 before the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division (the "Main Bankruptcy Case").

[3] Counsel to Appellants in the Adversary Proceedings and the Main Bankruptcy Case.

[4] Counsel to Appellee in the Main Bankruptcy Case.

[5] Counsel to Appellant in the Main Bankruptcy Case.

iii

Gregory W. Mitchell
**FREEMAN LAW, PLLC**
7011 Main Street
Frisco, Texas 75034[6]


*Preferred Platinum Construction (d/b/a of Donald R. Triplett, Jr.)*

    *Counsel:*
        Unknown

*DFW Design & Remodeling (d/b/a of Donald R. Triplett, Jr.)*

    *Counsel:*
        Unknown

*DFW Design & Remodeling, LLC*

    *Counsel:*
        Gregory W. Mitchell
        **FREEMAN LAW, PLLC**
        7011 Main Street
        Frisco, Texas 75034[7]

---

[6] Counsel to Appellant in the Adversary Proceedings and the District Court Appeal.

[7] Counsel to DFW Design & Remodeling, LLC in Adversary No. 21-04109 before the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

***Copper Creek Distributors, Inc.***

> *Counsel:*
>> David R. Gibson
>> **The Gibson Law Group**
>> 15400 Knoll Trail Dr., Ste. 205
>> Dallas, TX 75248[8]
>>
>> And
>>
>> Gregory W. Mitchell
>> **Freeman Law, PLLC**
>> 7011 Main Street
>> Frisco, Texas 75034[9]

 */s/ Eric M. English*
Eric M. English

---

[8] Counsel to Copper Creek Distributors, Inc. in the Main Bankruptcy Case.

[9] Counsel to Copper Creek Distributors, Inc. in Adversary No. 21-04110 before the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

**Statement Regarding Oral Argument**

Appellants Keith Black and Jeremy Haltom (collectively, "Appellants") respectfully submit that certain of the issues raised in this appeal are novel issues in this Circuit that warrant oral argument. *See* 5th Cir. Rule 28.2.3. Oral argument would be helpful to clarify the detailed factual record underlying the proceedings and the law applicable to this appeal. Thus, Appellants welcome the opportunity to present their positions to the Court and answer any questions it may have.

**Table of Contents**

Certificate of Interested Persons ................................................................ ii

Statement Regarding Oral Argument ........................................................ vi

Table of Contents ..................................................................................... vii

Table of Authorities ................................................................................. ix

Jurisdictional Statement .............................................................................1

Introduction ................................................................................................2

Statement of the Issues ...............................................................................5

Statement of the Case .................................................................................6

    I.      Factual Background ...........................................................................6

    II.    Procedural History ...........................................................................12

Summary of the Argument ........................................................................16

Standard of Review ...................................................................................18

Argument...................................................................................................20

    I.      The Courts Below Have Rendered Bankruptcy 4002 Worthless .............20

        A.     There Can Be No Serious Debate that Triplett Violated Bankruptcy Rule 4002 .....................................................................20

        B.     The District Court Erred by Disregarding Triplett's Blatant Abrogation of His Bankruptcy Rule 4002 Obligations .................22

            1.     The Grant of a Discharge to Triplett Notwithstanding His Deliberate Failure to Testify Was Not Harmless .................22

            2.     Appellants Had a Substantial Right to Call Triplett to Testify at His Discharge Trial .......................................................25

    II.    The District Court Misapplied 11 U.S.C. § 727 of the Bankruptcy Code. 28

A.    Appellants Met Their Burden to Demonstrate a Prima Facie Case ..................................................................................28

    1.    The Failure to Deny Discharge Under 11 U.S.C. § 727(a)(3) Was Error ...................................................................28

        a.    The District Court Incorrectly Interpreted Section 727(a)(3) to Accommodate Gamesmanship by Debtors....................................................................29

        b.    Triplett Failed to Provide Sufficient Documentation to Discern Between Business and Personal Funds........32

        c.    The Bankruptcy Court Necessarily Found that Appellants Met Their Burden....................................34

    2.    Triplett's False Oaths Were Made Knowingly and Intentionally ................................................................38

    3.    Triplett Failed to Obey the Bankruptcy Court's Orders ......42

B.    Triplett Failed to Carry His Section 727(a)(3) Burden of Showing Justification for Failure to File Tax Returns and His Section 727(a)(4)(A) Burden of Showing His False Oaths Were Unintentional..................................................................48

    1.    Triplett Did Not Provide Evidence of Justification for His Failure to File Tax Returns ...............................................48

    2.    Triplett Failed to Carry His Burden of Showing His False Statements and Omissions Were Unintentional...................50

Conclusion ...........................................................................................51

Certificate of Service .........................................................................53

Certificate of Compliance ..................................................................54

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adalian*,
   500 B.R. 402 (Bankr. M.D. Pa. 2013) ...............................................................31

*In re Beaubouef*,
   966 F.2d 174 (5th Cir. 1992) ............................................................................38

*In re Berger*,
   244 F.3d 134 (5th Cir. 2000) (unpublished) ......................................................38

*Bocanegra v. Vicmar Servs., Inc.*,
   320 F.3d 581 (5th Cir. 2003) ............................................................................19

*In re Bradley*,
   501 F.3d 421 (5th Cir. 2007) ............................................................................19

*In re Brown*,
   2022 WL 17254467 (Bankr. E.D. Tex. Nov. 28, 2022) .....................................34

*In re Buescher*,
   491 B.R. 419 (Bankr. E.D. Tex. 2013) ..............................................................38

*In re Buzzelli*,
   246 B.R. 75 (Bankr. W.D. Pa. 2000) .................................................................24

*In re Caneva*,
   550 F.3d 755 (9th Cir. 2008) ............................................................................31

*In re Chunton*,
   654 B.R. 418 (Bankr. E.D.N.Y. 2023) ........................................................39, 51

*In re Claybrook*,
   385 B.R. 842 (Bankr. E.D. Tex. 2008) ............................................29, 32, 48, 49

*In re Coastal Plains, Inc.*,
   179 F.3d 197 (5th Cir. 1999) ..........................................................................2, 26

*In re Connors*,
   283 F.3d 896 (7th Cir. 2002) ............................................................................36

*In re Cowin*,
   864 F.3d 344 (5th Cir. 2017) ................................................................18

*In re Crow*,
   2019 WL 6335963 (B.A.P. 10th Cir. Nov. 26, 2019) .........................18

*In re De Ronde*,
   509 B.R. 223 (Bankr. S.D. Iowa 2012) ........................................21, 37

*In re DeChristofano*,
   1999 WL 458969 (Bankr. E.D. Pa. July 2, 1999) ...............................30

*In re Dennis*,
   330 F.3d 696 (5th Cir. 2003) ...............................................................29

*Diaz v. United States*,
   223 U.S. 442 (1912) .............................................................................27

*In re Duncan*,
   562 F.3d 688 (5th Cir. 2009) .................................................34, 35, 50

*In re Faber*,
   330 B.R. 235 (Bankr. N.D. Ind. 2005) ...............................................24

*In re Fhuere*,
   667 B.R. 904 (Bankr. D. Utah 2025) ...................................................31

*In re Fulghum Const. Corp.*,
   20 B.R. 925 (Bankr. M.D. Tenn. 1982) ...............................................47

*In re Gartner*,
   326 B.R. 357 (Bankr. S.D. Tex. 2005) ................................................30

*Gobindram v. Bank of India*,
   538 B.R. 629 (E.D.N.Y. 2015) ............................................................41

*In re Goff*,
   579 F. App'x 240 (5th Cir. 2014) (unpublished) ..........................30, 36

*In re Gray*,
   2016 WL 1039559 (Bankr. S.D.N.Y. Mar. 15, 2016) .........................49

x

*Grogan v. Garner*,
    498 U.S. 279 (1991)................................................................................2

*In re Hall*,
    174 B.R. 210 (Bankr. E.D. Va. 1994).................................................49

*In re Happel*,
    394 B.R. 915 (Bankr. E.D. Wis. 2008)...............................................41

*In re Henley*,
    480 B.R. 708 (Bankr. S.D. Tex. 2012) ...............................................28

*In re Howard*,
    55 B.R. 580 (Bankr. E.D.N.C. 1985)..................................................24

*In re Hunn*,
    51 B.R. 981 (Bankr. M.D. Fla. 1985)..................................................24

*In re Hunt*,
    605 B.R. 758 (Bankr. N.D. Tex. 2019)...............................................33

*In re Ishahak*,
    130 B.R. 16 (Bankr. E.D.N.Y. 1991) .................................................24

*In re Johns*,
    2024 WL 4314832 (Bankr. N.D. Tex. Sept. 25, 2024) ......................34

*In re King*,
    272 B.R. 281 (Bankr. N.D. Okla. 2002)............................................41

*In re Krause*,
    546 F.3d 1070 (9th Cir. 2008) ...........................................................18

*In re Landin*,
    2016 WL 3049626 (Bankr. W.D. Tex. May 20, 2016) ................29, 34

*Litton Loan Servicing, L.P. v. Schubert*,
    631 B.R. 868 (N.D. Ohio 2021)..........................................................26

*In re Longoria*,
    400 B.R. 543 (Bankr. W.D. Tex. 2009). Bankruptcy.........................21

*In re Lufkin,*
  393 B.R. 585 (Bankr. E.D. Tenn. 2008) ...............................................28

*In re MacPherson,*
  129 B.R. 259 (M.D. Fla. 1991) ..........................................................21

*In re Mandel,*
  2021 WL 3642331 (5th Cir. Aug. 17, 2021) (per curiam) ................30

*In re Martin-Trigona,*
  732 F.2d 170 (2d Cir. 1984) ...............................................................24

*In re Matloff,*
  2024 WL 1193562 (5th Cir. Mar. 20, 2024) (per curiam) ................19

*In re McClendon,*
  765 F.3d 501 (5th Cir. 2014) ...............................................................19

*Meridian Bank v. Alten,*
  958 F.2d 1226 (3d Cir. 1992) ..............................................................48

*Miller v. Sam Hous. State Univ.,*
  986 F.3d 880 (5th Cir. 2021) ...............................................................26

*In re Nordstrom,*
  381 B.R. 766 (Bankr. C.D. Cal. 2008) ...............................................26

*Office of the Comptroller Gen. of Republic of Bol. Ex el. Gen.*
  *Command of the Bolivian Air Force v. Tractman,*
  107 B.R. 24 (S.D.N.Y. 1989) ..............................................................33

*In re Packer,*
  816 F.3d 87 (5th Cir. 2016) .................................................................28

*In re Padilla,*
  379 B.R. 643 (Bankr. S.D. Tex. 2007) ...............................................23

*In re Porter,*
  7 B.R. 354 (Bankr. E.D. Pa. 1980) ....................................................23

*In re Pratt,*
  411 F.3d 561 (5th Cir. 2005) ...............................................................38

*In re Rajabali*,
   365 B.R. 702 (Bankr. S.D. Tex. 2007) ...............................................50

*In re Ray*,
   2012 WL 3744721 (Bankr. S.D. Tex. Aug. 28, 2012) ......................36

*In re Reed*,
   700 F.2d 986 (5th Cir. 1983) ............................................................35

*In re Robson*,
   154 B.R. 536 (Bankr. E.D. Ark. 1993) ..............................................24

*In re San Patricio Cnty. Cmty. Action Agency*,
   575 F.3d 553 (5th Cir. 2009) ............................................................19

*In re Scott*,
   172 F.3d 959 (7th Cir. 1999) ............................................................31

*In re Sholdra*,
   249 F.3d 380 (5th Cir. 2001) ............................................................38

*In re Simmons*,
   810 F.3d 852 (1st Cir. 2016) .............................................................37

*In re Sims*,
   148 B.R. 553 (Bankr. E.D. Ark. 1992) ..............................................41

*In re Spiegel*,
   662 B.R. 666 (Bankr. N.D. Ill. 2024) ...........................................26, 27

*In re Steffensen*,
   534 B.R. 180 (Bankr. D. Utah 2015) .................................................31

*In re Strbac*,
   235 B.R. 880 (B.A.P. 6th Cir. 1999) .................................................49

*United States v. Cluck*,
   87 F.3d 138 (5th Cir. 1996) ................................................................2

*Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*,
   801 F.3d 512 (5th Cir. 2015) ............................................................19

*In re Wells*,
    426 B.R. 579 (Bankr. N.D. Tex. 2006)................................................42

*In re Womble*,
    108 F. App'x 993 (5th Cir. 2004) (unpublished)...................30, 32, 33

*In re Womble*,
    289 B.R. 836 (Bankr. N.D. Tex. 2003)........................................29, 32

*In re Wright*,
    644 B.R. 796 (Bankr. D. Neb. 2022) ............................................40

**Statutes**

11 U.S.C. ch. 7 ..............................................................................6, 24, 34

11 U.S.C. §§ 523 and 727 ...................................................................8, 19

11 U.S.C. § 727 ...............................................................................*passim*

11 U.S.C. § 727(a) ................................................................................34

11 U.S.C. § 727(a)(3)........................................................................*passim*

11 U.S.C. §§ 727(a)(3), and (6)(A)........................................................16

11 U.S.C. § 727(a)(4)........................................................................17, 41

11 U.S.C. § 727(a)(4)(A) ..................................................................*passim*

11 U.S.C. § 727(a)(6)............................................................................18

11 U.S.C. § 727(a)(6)(A) ..............................................................4, 24, 42

11 U.S.C. § 727(a)(6)(C) ............................................................16, 23, 25

28 U.S.C. §1291 ..................................................................................2

28 U.S.C. § 2075 ................................................................................21

Bankruptcy Act of 1898, Pub. L. No. 55-541, § 7, 30 Stat. 544, 548
    (1898)................................................................................................22

Bankruptcy Act of 1898 § 7(a)(1)..........................................................22

Bankruptcy Act of 1938, Pub. L. No. 75-696, § 14(e), 52 Stat. 840, 851 (1938) ..................................................................................23

Fed. R. Bankr. P. 2004 ..............................................................*passim*

Fed. R. Bankr. P. 4002 ..............................................................*passim*

Fed. R. Bankr. P. 4002(2) ...................................................................24

Fed. R. Bankr. P. 4002(a)(2).................................................................21

Fed. R. Bankr. P. 8002(a)(1)...................................................................1

Fed. R. Bankr. P. 9005 .................................................................25, 27

Fed. R. Civ. P. 61 .....................................................................*passim*

Tex. Prop. Code §§ 162.001-.002 .........................................................34

## Other Authorities

75 Cong. Rec. 8727 .............................................................................23

S. Rep. No. 989, 95th Cong., 2d Sess. 44, 75 (1978) ...........................24

**Jurisdictional Statement**

On September 4, 2024, the Bankruptcy Court for the Eastern District of Texas, Sherman Division (the "Bankruptcy Court") issued the *Omnibus Findings of Fact and Conclusions of Law* at Docket No. 238 in Adv. No. 20-04057 and Adv. No. 20-04059 (the "Bankruptcy Court Opinion"), and entered the *Order Dismissing Sanctions Motions as Moot* at Docket No. 240 in Adv. No. 20-04057 and Adv. No. 20-04059 (the "Sanctions Order") and the *Judgment* at Docket No. 241 in Adv. No. 20-04057 and Adv. No. 20-04059 (the "Bankruptcy Court Judgment").[1]

On September 18, 2024, Appellants timely filed notices of appeal under Rule 8002(a)(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking review of these rulings.[2]

On July 23, 2025, the United States District Court for the Eastern District of Texas (the "District Court") issued its *Opinion and Order* (the "District Court Opinion" and together with the Bankruptcy Court Opinion, the "Opinions") and *Final Judgment* (the "District Court Judgement" and together with the Bankruptcy Court Judgement, the "Judgments") affirming the Bankruptcy Court Judgment in part and reversing in part.[3]

---

[1] ROA.19855, 19906, 19908.
[2] ROA.19911.
[3] ROA.22919-946.

Appellants timely appealed the District Court Judgement to the extent it affirmed the Bankruptcy Court Judgment.[4] This Court has jurisdiction under 28 U.S.C. §1291 because the District Court Judgement is a final judgment.

## Introduction

"[A] debtor has no constitutional or 'fundamental' right to a discharge in bankruptcy," and the "[Bankruptcy Code] limits the opportunity for a completely unencumbered new beginning to the honest but unfortunate debtor." *Grogan v. Garner*, 498 U.S. 279, 286 (1991) (quotation omitted). To be entitled to the significant rights afforded by the Bankruptcy Court, debtors must comply with their corresponding obligations as the Bankruptcy Code's "fresh start" policy "requires that the debtor honestly comply with the requirements of the [Bankruptcy] Code." *United States v. Cluck*, 87 F.3d 138, 140 (5th Cir. 1996). Chief among a debtor's duties are those aimed at ensuring the exchange of information because, as this Court has recognized, the *"integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets."* *In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999) (quotation omitted). The Opinions in this case effectively render toothless certain of the safeguards against unfairness and therefore cannot be allowed to stand.

---

[4] ROA.22947.

2

Indeed, for well over a century, bankruptcy law has required debtors to attend and testify at hearings to determine the dischargeability of their debts. Today, this deeply enshrined obligation is contained in Rule 4002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), which ensures that creditors will have a fair opportunity to meet a burden that often relies on the debtor's testimony. The District Court correctly concluded that Triplett—who intentionally disregarded this requirement by deliberately refusing to attend trial during Appellants' case in chief—violated Bankruptcy Rule 4002.[5] The Court further concluded, again correctly, that Appellants did not waive this error by proceeding with the trial.[6]

The District Court, however, applied the harmless error standard in Rule 61 of the Federal Rules of Civil Procedure (the "Federal Rules") to excuse Triplett's blatant gamesmanship because it had not affected a substantial right.[7] But there is significant authority for the proposition that Triplett's intentional violation of Bankruptcy Rule 4002 by itself precluded the discharge of Appellants' claims. Simply put, courts must, at the very least, impose some sort of penalty for a debtor's violation of this rule. Given the history and purpose of Bankruptcy Rule 4002, it strains credulity to suggest that a "substantial right" (i.e., the right to have Triplett testify when called at his dischargeability trial) was not "affected." Ultimately, by

---

[5] ROA.22924-25.
[6] ROA.22925.
[7] ROA.22925.

using Federal Rule 61 to require Appellants to articulate precisely why Triplett's disregard of his duties should matter, the District Court Opinion encourages debtors everywhere to flout their obligations and force creditors to demonstrate how sometimes amorphous harm satisfies the harmless error standard. This Court must not allow the reasoning of the District Court Opinion and the perverse incentives it creates to impact the bankruptcy courts in this Circuit.

The District Court's handling of the merits of Appellants' 11 U.S.C. § 727 claims was similarly flawed. In its analysis of section 727(a)(3), the District Court concluded that the statute was ambiguous before adopting a flawed interpretation that has been roundly rejected by other courts, including this Court.[8] Additionally, while the District Court acknowledged (as it must) that Triplett made false statements for purposes of section 727(a)(4)(A), it explained these away based on the District Court's *wholly unsupported* belief that Triplett's misstatements were merely the product of his confusion.[9] The District Court engaged in a likewise strained analysis of Triplett's blatant violation of court orders in order to rescue him from the operation of section 727(a)(6)(A).[10]

In short, the Opinions work together to undermine the mechanisms in place designed to ensure that bankruptcy discharge is reserved for only honest yet

---

[8] ROA.22928-31.
[9] ROA.22935-37.
[10] ROA.22938-42.

unfortunate debtors.  Reversal is thus necessary to ensure that the erosion of the Bankruptcy Code effected by the Opinions does not spread throughout this Circuit.

## Statement of the Issues

**Issue 1:**     Did the District Court err in concluding that although Triplett violated Bankruptcy Rule 4002, he was nevertheless entitled to a discharge of Appellant's claims?

**Issue 2:**     Did the District Court err in holding that Triplett's refusal to attend his discharge trial during Appellants' case in chief did not affect Appellants' substantial rights?

**Issue 3**:     Did the District Court misinterpret and misapply 11 U.S.C. § 727(a)(3) in affirming the Bankruptcy Court Judgment notwithstanding (a) evidence that Triplett failed to provide tax returns or sufficient records to deconstruct commingled accounts, and (b) the Bankruptcy Court's implicit finding that Appellants established a prima facie case?

**Issue 4**:     Did the District Court err in affirming the Bankruptcy Court Judgment under 11 U.S.C. § 727(a)(4)(A) based on the District Court's unsupported belief that Triplett's many misstatements and omissions were simply the product of his confusion?

5

**Issue 5**:   Did the District Court err in affirming the Bankruptcy Court Judgment under 11 U.S.C. § 727(a)(6) in light of Triplett's repeated violations of the Bankruptcy Court's orders?

**Issue 6**:   Did the District Court err in holding that the Bankruptcy Court's improper burden shifting was harmless because the Bankruptcy Court probably would have found Triplett established affirmative defenses?

**Statement of the Case**

## I.    Factual Background

On September 1, 2019 (the "Petition Date"), Triplett commenced a bankruptcy case by filing a voluntary petition for relief under Chapter 7 of the Title 11 of the United States Code (the "Bankruptcy Case") in the Bankruptcy Court.[11] As of the Petition Date, two lawsuits initiated by Appellant Jeremy Haltom against Triplett for, *inter alia*, breach of contract and fraud were pending in Texas state court, while Appellant Keith Black had already been awarded judgment on similar claims by a Texas state court.[12] The filing of the Bankruptcy Case stayed Haltom's state court cases and Black's collection efforts.

Triplett failed to file his Statement of Financial Affairs ("SOFA"), Schedules A through J (collectively, the "Schedules"), Statement of Current Monthly Income,

---

[11] ROA.11.
[12] ROA.12, 2391.

and other required documents on the Petition Date, prompting the issuance of a *Notice of Missing Documents and Notice that the Case May Be Dismissed If Documents Are Not Filed by October 3, 2019*.[13] Finally, on October 15, 2019 (two days after the Bankruptcy Court-imposed deadline), Triplett filed his SOFA, Schedules, and Statement of Monthly Income but failed to file his Pay Records.[14]

On October 18, 2019, Triplett appeared for his Section 341 Meeting of Creditors, at which he was questioned by trial counsel for Appellants concerning his SOFA and Schedules.[15] Finding Triplett's responses to the questions asked of him at the Section 341 Meeting of Creditors evasive and his SOFA, Schedules, and Statement of Monthly Income glaringly false, several of Triplett's other creditors, Shawn Valk and Ron Valk (collectively, the "Valks"), filed a November 18, 2019 *Motion for Examination Under Bankruptcy Rule 2004 of the Debtor* and compelling Triplett to produce certain identified documents (the "Motion for 2004"), which was joined by Appellants.[16]

On December 12, 2019, Appellants filed their respective Proofs of Claim in the Bankruptcy Case.[17] Black's proof of claim was in the amount of $186,176.70,

---

[13] ROA.11.
[14] ROA.12.
[15] ROA.13.
[16] ROA.13-14.
[17] ROA.2388, 20006.

and Haltom's proof of claim was in the amount of $262,840.66—both caused, *inter alia*, by Triplett's fraud.[18]

On December 13, 2019, the Valks filed a *Motion to Extend Deadline for Filing Complaints Under 11 U.S.C. §§ 523 and 727* (the "Motion to Extend") to accommodate the Bankruptcy Rule 2004 Examination of Triplett.[19] The Motion to Extend was joined by Appellants.[20] On January 28, 2020, the Bankruptcy Court heard the Motion for 2004 and Motion to Extend, and ruled in favor of the Valks and Appellants.[21] The Court informed Triplett that any delay by him to cooperate and assist the Plaintiff in obtaining the requested financial information and records would likely be cause for an additional extension of the Section 523 and 727 deadlines.[22]

On January 31, 2020 the Bankruptcy Court issued its *Order to Extend Deadline for Filing Complaints under U.S.C. §§ 523 and 727*, extending the deadline until March 26, 2020.[23] This Order also contemplated Debtor's timely cooperation and assistance to the Appellants and the Valks in connection with their written discovery and third-party subpoenas.[24]

---

[18] ROA.2389, 20007.
[19] ROA.14.
[20] ROA.14.
[21] ROA.14.
[22] ROA.14.
[23] ROA.14.
[24] ROA.20226.

On February 3, 2020, the Bankruptcy Court entered its Order granting the Motion for a Bankruptcy Rule 2004 Examination, allowing the Valks to conduct an examination of Triplett on a date mutually agreeable between the parties, for up to ten (10) hours on the various subject areas set forth in their motion. The order also required Triplett to obtain from original sources documents identified in the Order, to produce other documents identified in the Order that are in his possession and not previously produced, and it granted the Valks and Appellants subpoena powers to compel Triplett's attendance at a Bankruptcy Rule 2004 examination and production by Triplett and third parties (including Triplett's financial institutions and credit card companies) of the identified documents (the "2004 Order").[25] Further, the 2004 Order directed Triplett to "cooperate with all discovery requests from the Valks, Haltom, and Black in good faith to ensure that the Valks, Haltom, and Black receive the documents in a timely manner."[26]

On February 28, 2020, due to Triplett's failure to provide complete information and his concealment of financial accounts, the Valks and Appellants filed an *Emergency Motion for Second Extension of Deadline for Filing Complaints Under 11 U.S.C. §§ 523 and 727* ("Second Motion to Extend").[27] On March 6, 2020,

---

[25] ROA.14.
[26] ROA.31.
[27] ROA.32-33, 2402.

the Court held a hearing on the Second Motion to Extend.[28] On March 16, 2020, the Court entered its *Order Granting Creditors' Emergency Motion for Second Extension of Deadline for Filing Complaints Under 11 U.S.C. §§ 523 and 727* ("Second Extension Order"), wherein the Court ordered Triplett to again produce all documents identified in the 2004 Order, with the admonishment that any failure to produce the documents, materials and information requested by the Valks and Appellants and identified in Exhibit A of the 2004 Order would constitute a violation of the 2004 Order and the Second Extension Order.[29]

Despite the Court's admonishment, on or around March 5, 2020, Triplett produced only a few relevant documents for a few limited time periods.[30] Thus, Triplett again failed to provide the Valks and Appellants with complete information and records regarding his finances, assets, and income.[31] As such, Appellants and the Valks were required to conduct extensive third-party and non-party discovery.[32] The third-party and non-party subpoenas led to the discovery of frequent transfers of funds between Triplett (individually, as well as d/b/a DFW Design & Remodeling and Preferred Platinum Construction), his husband Jose Doniceth Escoffie ("Escoffie"), Copper Creek Distributors, Inc. ("Copper Creek"), and other unknown

---

[28] ROA.13061.
[29] ROA.2416.
[30] ROA.13063:18-13067:1.
[31] ROA.13063:18-13067:1.
[32] ROA.13063:24-13067:1.

persons.[33] Moreover, the subpoenas led to the discovery that Triplett controlled and operated Copper Creek during all relevant time periods, right up to the date of his bankruptcy filing.[34] Further, Triplett and Escoffie had been living out of the business account of Copper Creek and Triplett's dba entities, as well as utilizing Copper Creek's funds to pay tens of thousands of dollars for several personal expenses.[35]

Triplett represented at the 341 Meeting, and in his bankruptcy Schedules and Statement of Monthly Income that he has virtually nothing to do with Copper Creek, except for being an employee.[36] However, contrary to these representations, the records produced in response to the Valks' subpoenas reflect just the opposite.[37] In fact, over a two-year period, Triplett funneled hundreds of thousands of dollars from his dba entities and own accounts into Copper Creek's accounts by way of his management and control over the assets of Copper Creek.[38]

Triplett's sworn statements, representations, filings, and answers in the bankruptcy were decidedly false, as evidenced by various financial records obtained through discovery.[39] Moreover, even though the Court admonished him, Triplett continued to violate the Court's orders by hindering discovery and concealing the

---

[33] ROA.13063:24-13067:1.
[34] *See* ROA.8565-82, 8607; *see also* ROA.13063:24-13067:1; see also ROA.10057:4-17.
[35] *See* ROA.8565-82, ROA.8607.
[36] ROA.2558, 13065:19-25.
[37] ROA.13065:19-13066:4.
[38] ROA.13065:19-13066:4.
[39] ROA.13065:19-13067:11.

true nature of his income and assets.[40] This prompted both Black and Haltom to initiate the Adversary Proceeding against Triplett.[41]

## II.    Procedural History

On May 15, 2020, Keith Black initiated Adversary No. 20-04057, and Jeremy Haltom initiated Adversary No. 20-04057, each by filing a *Complaint to Object to Discharge And / Or To Determine Dischargeability of Debt* (the "Complaints").[42]

On May 18, 2020, Triplett appeared, via Zoom, for his Bankruptcy Rule 2004 Examination and deposition.[43] Within approximately five to ten minutes from the commencement of the Bankruptcy Rule 2004 examination, Triplett made it clear that he would not be deposed in accordance with the Court's March 5, 2020, ruling, when he stated: "For five hours today and tomorrow. And that's it. When the clock reaches five hours, I'm done for the day. That's the judge's order."[44] After the second day of the Bankruptcy Rule 2004 examination concluded, it was clear that Triplett (i) flat out refused to comply with the Second Extension Order, which required that he sit for the Bankruptcy Rule 2004 Examination for as long as it takes; (ii) refused to procure and produce all financial information and records ordered by the Court to be produced in the 2004 Order and acknowledged as much in his testimony at the

---

[40] ROA.13065:19-13067:11.
[41] ROA.144, 10236.
[42] ROA.144, 10236.
[43] ROA.2438.
[44] ROA.2424.

Bankruptcy Rule 2004 Examination; (iii) evaded and refused to answer relevant questions in the Bankruptcy Rule 2004 Examination; and (iv) unnecessarily delayed the Bankruptcy Rule 2004 Examination.

On June 2, 2020, Appellants were forced to file their *Motion to Compel Completion of 2004 Examination of Defendant* (the "First Motion to Compel"), in which they sought to compel Triplett to complete his Bankruptcy Rule 2004 Examination, compel Triplett (yet again) to produce certain requested documents, and compel Triplett to answer certain relevant questions which he repeatedly refused to answer.[45] After hearing the First Motion to Compel and Defendant's objection thereto, the Bankruptcy Court granted the First Motion to Compel in part and ordered Defendant to re-appear and continue to give testimony and be deposed by the 2004 Creditors.[46]

After concluding the Bankruptcy Rule 2004 Examination, and because Triplett continued to disregard and disobey the Court's orders that he make reasonable effort to obtain and produce certain documents within his possession, custody, and/or control, Appellants filed their *Motion to Compel Discovery and Request for Sanctions* (the "Second Motion to Compel") on September 29, 2020.[47] In the Second Motion to Compel, Appellants sought to compel Triplett to comply

---

[45] ROA.2419.
[46] ROA.2438.
[47] ROA.2441.

with his discovery obligations and further sanction Triplett for his repeated refusals to comply with the Bankruptcy Court's order.[48]

On November 16, 2020, the Bankruptcy Court held its first hearing (the "First Hearing") on the Second Motion to Compel.[49] There, the Bankruptcy Court rendered an interim ruling at the conclusion of the First Hearing that Haltom was required to state in writing the remaining items that had not been produced by Triplett.[50] Then, after a reasonable period, Triplett was required to comply and certify under oath that all documents had been provided.[51] The Bankruptcy Court then rescheduled the hearing on the Second Motion to Compel to December 4, 2020 (the "Second Hearing").[52]

On November 16, 2020, and in accordance with the Court's interim ruling, counsel for Haltom sent Triplett's counsel a letter (the "November 16 Letter") regarding the specific discovery items that remained outstanding.[53] The November 16 Letter provided a deadline of November 23, 2020, to produce the documents.[54] Prior to the deadline, Triplett produced only documents related to his Square, Inc. account.[55]

---

[48] ROA.2446-47.
[49] ROA.13479.
[50] ROA.13480:15-13482:18.
[51] ROA.13480:15-13482:18.
[52] ROA.13480:15-13482:18.
[53] ROA.19417.
[54] ROA.19417.
[55] ROA.12790.

14

On December 4, 2020, the Court held the Second Hearing on the Second Motion to Compel, Triplett's objections thereto, and the 2004 Creditors' reply in further support of the Second Motion to Compel.[56] When called to testify regarding whether he had complied with the Bankruptcy Code and the Court's orders to produce all materials requested and within his access, control, and/or possession, Triplett asserted his Fifth Amendment right and refused to respond.[57]

Having considered Triplett's refusal to certify he had produced all required documents, Judge Rhoades granted the Second Motion to Compel in part, sanctioned Triplett in the amount of $500.00, and ordered the sanction award to be paid to counsel for Appellants.[58] On January 20, 2021, and consistent with the oral ruling, the Court entered its *Order Granting in Part and Denying in Part Creditors' Motion to Compel Discovery and Request for Sanctions* (the "Sanctions Order").[59]

On June 28, 2022, Triplett filed a *Motion for Sanctions* against each of the Appellants (collectively, the "Death Penalty Sanctions Motion").[60] Triplett sought primarily the dismissal of the Adversary Proceedings based on Appellants' allegedly improper discovery during Triplett's bankruptcy and for various lawsuits instituted in state and federal courts.[61]

---

[56] ROA.21690.
[57] ROA.21710:1-21713:22, 21716:18-21722:8.
[58] ROA.13416:19-13417:7.
[59] ROA.13419.
[60] ROA.12015.
[61] ROA.12081.

The Bankruptcy Court held a joint trial on Appellants' Complaints commencing on April 15, 2024 and concluding on April 18, 2024.[62] On September 4, 2024, the Bankruptcy Court issued its judgment, wherein it denied Appellants' causes of action arising under 11 U.S.C. §§ 727(a)(3), (4)(A), and (6)(A).[63]

Appellants timely appealed the Bankruptcy Court Judgment to the District Court.[64] On July 23, 2025, the District Court issued the District Court Opinion and entered the District Court Judgment affirming the Bankruptcy Court Judgment.[65] This appeal followed.[66]

### Summary of the Argument

The District Court's decision to affirm the Bankruptcy Court Judgment notwithstanding Triplett's violation of Bankruptcy Rule 4002 was error. The history of Bankruptcy Rule 4002 and its relationship to the Bankruptcy Code (including section 727(a)(6)(C)) demonstrate that a debtor who shirks his obligation to testify at discharge proceedings must be denied a discharge or at a minimum face some form of penalty. But the District Court discounted Triplett's deliberate refusal to attend trial during Appellants' case in chief because, according to the District Court, it had not "affected" a "substantial right."[67] This is incorrect. For over a century,

---

[62] ROA.9588, 9696, 9866, 10079.
[63] ROA.10167.
[64] ROA.10223.
[65] ROA.22919-46.
[66] ROA.22947.
[67] ROA.22926.

creditors like Appellants have been entitled to call debtors to testify at discharge proceedings, and by engaging in gamesmanship, Triplett unquestionably affected this substantial right.  Even if this Court accepts the District Court's suggestion that debtors can intentionally shirk their obligations unless creditors can pinpoint harm stemming therefrom, Triplett's scheme *did* harm Appellants' presentation of their case.  Accordingly, the Bankruptcy Court's treatment of Bankruptcy Rule 4002 is reversible error.

The District Court's analysis of section 727(a)(3) was likewise erroneous. Many courts, including this Court, have interpreted section 727(a)(3) as imposing an affirmative duty on debtors to create documents.  The District Court, however, concluded that section 727(a)(3), although ambiguous, contained no such duty, which thus excused Triplett's undisputed failure to provide timely filed tax returns for multiple years.[68] Triplett also failed to provide sufficient records to unravel the commingling of personal and business funds in his bank account.  Contrary to the District Court's belief, the fact that one of those businesses was a sole proprietorship does not excuse the absence of sufficient records to distinguish business funds (which included construction trust funds).

Appellants are entitled to reversal of the Bankruptcy Court Judgment as it regards section 727(a)(4), as well.  While apparently acknowledging that Triplett

---

[68] ROA.22928-29.

made multiple misstatements, the District Court nevertheless concluded Appellants had not met their burden.  This was based on the District Court's own fact finding (made without any reference to the record) that Triplett's consistent pattern of making misstating or omitting facts was merely the product of his confusion.[69] The District Court likewise erred in simply discounting or otherwise explaining away Triplett's near constant violation of court orders, which required denial of discharge under section 727(a)(6).[70]

Accordingly, the District Court thus erred in affirming the Bankruptcy Court Judgment.

### Standard of Review

When considering a district court's affirmance of a bankruptcy court's decision, this Court reviews (i) conclusions of law *de novo*; (2) findings of fact under the "clearly erroneous" standard; and (3) mixed questions of law and fact *de novo*. *In re Cowin*, 864 F.3d 344, 349 (5th Cir. 2017).  More specifically here, a bankruptcy court's interpretation and application of Bankruptcy Rules is subject to de novo review.  *In re Krause*, 546 F.3d 1070, 1073 n.5 (9th Cir. 2008); *see also In re Crow*, 2019 WL 6335963, at \*5 (B.A.P. 10th Cir. Nov. 26, 2019).  Further, "[f]indings of fact in support of a discharge decision are reviewed for clear error while the decision

---

[69] ROA.22935-37.
[70] ROA.22938-42.

18

itself is reviewed de novo." *In re Bradley*, 501 F.3d 421, 434 n.7 (5th Cir. 2007); *In re Matloff*, 2024 WL 1193562, at *2 (5th Cir. Mar. 20, 2024) (per curiam) ("[D]ischarge decisions—whether the case turns on Section 523 or 727—are legal determinations subject to de novo review on appeal.").

This Court conducts *de novo* review by independently assessing the issues, giving "no deference" to the bankruptcy court's conclusions and instead "analyz[ing] them anew." *In re San Patricio Cnty. Cmty. Action Agency*, 575 F.3d 553, 557 (5th Cir. 2009). "A trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003); *see also In re McClendon*, 765 F.3d 501, 504 (5th Cir. 2014) (noting that the bankruptcy court's factual findings are subject to reversal where the reviewing court has "the definite and firm conviction that a mistake has been made" (quotation omitted)). A trial court's evidentiary ruling that constitutes a clear abuse of discretion affecting a party's substantial right requires reversal. *See Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 527 (5th Cir. 2015).

**Argument**

## I.     The Courts Below Have Rendered Bankruptcy 4002 Worthless

Triplett was absent on the crucial first day of trial—when Appellants were required to present their case in chief.[71]  Given his unexpected absence, Appellants requested a continuance of the trial.[72] The Bankruptcy Court denied the request for continuance, improperly blaming Appellants for failing to secure Triplett's attendance by subpoena, and explicitly threatened to dismiss their claims for want of prosecution.[73]  For its part, the District Court correctly concluded "[t]here is no question that Rule 4002 required debtor to attend on the first day and testify when called as a witness," and that Appellants have not waived this violation by electing to go forward.[74] The District Court, however, then erred by placing the burden on Appellants to effectively explain why Triplett's violation of 4002 should matter and faulting Appellants for failing to subpoena Triplett—which the District Court had earlier recognized was unnecessary.[75]

### A.     There Can Be No Serious Debate that Triplett Violated Bankruptcy Rule 4002

The Bankruptcy Rules "have the force and effect of law" because "[a]lthough not statutory, the Supreme Court promulgated the Federal Bankruptcy Rules

---

[71] ROA.9590-91.
[72] *See* ROA.9592; ROA.9595.
[73] ROA.9594-9608.
[74] ROA.22924-25.
[75] ROA.22924-25.

pursuant to authority granted by Congress under 28 U.S.C. § 2075." *In re Longoria*, 400 B.R. 543, 549–50 (Bankr. W.D. Tex. 2009).  Bankruptcy Rule 4002(a)(2) provides, "In addition to performing other duties prescribed by the Code and rules, **the debtor shall . . . attend the hearing on a complaint objecting to discharge and testify, if called as a witness**." (emphasis added).  *Collier on Bankruptcy* explains that Bankruptcy Rule 4002(a)(2) exists because a debtor's failure to attend a hearing on an objection to discharge makes it difficult for the objecting party to meet the burden of proof, and because "such attendance is compelled by the rules, and nonattendance itself may be grounds for denial of the discharge." 9 COLLIER ON BANKRUPTCY ¶ 4002.03.

As the District Court recognized, a debtor's obligation under Bankruptcy Rule 4002 to attend his discharge trial is absolute and does not depend on whether such attendance has been compelled by subpoena.[76] *See  In re De Ronde*, 509 B.R. 223, 228 (Bankr. S.D. Iowa 2012); *In re MacPherson*, 129 B.R. 259, 261 (M.D. Fla. 1991). The District Court was also right that Triplett's gamesmanship in failing to appear for his own case-in-chief did not fulfill his Bankruptcy Rule 4002 obligation because he was not present to testify when creditors sought to call him as a witness, which the rule unambiguously requires.[77]

---

[76] ROA.22924.

[77] ROA.22925.

The District Court thus correctly concluded that the Bankruptcy Court erred in forcing Appellants to proceed in Triplett's absence.

## B. The District Court Erred by Disregarding Triplett's Blatant Abrogation of His Bankruptcy Rule 4002 Obligations

Having found error on the part of the Bankruptcy Court, the District Court nevertheless proceeded to commit its own. According to the District Court, the harmless error rule operates to render Triplett's violation of Bankruptcy Rule 4002 meaningless unless Appellants could show harm. Not only is this the wrong framework through which to view the issue, but the District Court's own application of it is self-defeating.

### 1. The Grant of a Discharge to Triplett Notwithstanding His Deliberate Failure to Testify Was Not Harmless

The District Court declined to reverse the Bankruptcy Court notwithstanding the clear violation of Bankruptcy Rule 4002 because it believed the Appellants had not been prejudiced. Not so. The Bankruptcy Court's grant of a discharge was obviously prejudicial to Appellants.

For well over a century, bankruptcy law has acted to prevent debtors from thwarting discharge proceedings by refusing to participate. Under the Bankruptcy Act of 1898, section 7(a)(1), titled "Duties of Bankrupts," provided that the debtor "shall…attend the first meeting of his creditors, if directed by the court to do so, *and the hearing upon his application for a discharge, if filed*." Bankruptcy Act of 1898,

Pub. L. No. 55-541, § 7, 30 Stat. 544, 548 (1898) (emphasis added). This was then strengthened with amendments contained in the Bankruptcy Act of 1938 withholding discharge from debtors who flout this duty:

> If the bankrupt fails to appear at the hearing upon the objections to his application for discharge, or having appeared refuses to submit himself to examination…he shall be deemed to have waived his right to a discharge, and the court shall enter an order to that effect.

Bankruptcy Act of 1938 (Chandler Act), Pub. L. No. 75-696, § 14(e), 52 Stat. 840, 851 (1938) (same). As the legislative history reflects, Congress intended 75 CONG. REC. 8727 (letter from Professor James A. McLaughlin) ("In general our theory has been to increase the efficiency of the administration and provide that objections to discharges be more frequently and vigorously prosecuted."). The predecessor to the modern Bankruptcy Rules also reflected this sentiment, providing in former Bankruptcy Rule 402 that "[i]n addition to performing other duties prescribed by these rules, the bankrupt shall… attend at the hearing on a complaint objecting to his discharge and, if called as a witness, testify with respect to the issues raised."

With the enactment of the Bankruptcy Code, section 14 of the Bankruptcy Act became section 727. *See In re Porter*, 7 B.R. 354, 355 (Bankr. E.D. Pa. 1980). Section 727 now provides that "[t]he court shall grant the debtor a discharge, unless…the debtor has refused, in the case… on a ground other than the properly invoked privilege against self-incrimination, to…testify." 11 U.S.C. § 727(a)(6)(C). Bankruptcy Rule 4002 puts this provision into practice. *See, e.g.*, *In re Padilla*, 379

23

B.R. 643, 657 (Bankr. S.D. Tex. 2007) ("The Rules implement the Bankruptcy Code."). The long-standing prohibition on allowing debtor gamesmanship to defeat dischargeability proceedings thus survived the enactment of the Bankruptcy Code.[78] Indeed, multiple courts have held that a debtor's violation of Bankruptcy Rule 4002, alone, is sufficient to deny discharge.[79]

Viewed in light of the both the plain language of the Bankruptcy Rules and the Code as well as their purpose, the Bankruptcy Court erred not just in forcing

---

[78] Indeed, the legislative history reflects that section 727 made only a "modest" change by clarifying that "discharge could be denied to a debtor 'only ... if he refuses to testify after having been granted immunity.'" *In re Martin-Trigona*, 732 F.2d 170, 173 n.7 (2d Cir. 1984) (quotation omitted); *see also* S. Rep. No. 989, 95th Cong., 2d Sess. 44, 75 (1978) (noting Congress sought to eliminate the "Scylla and Charibdis" choice of losing the right to discharge or right against self-incrimination and that it intended to maintain the debtor's duty to attend any hearing on discharge).

[79] *See, e.g.*, *In re Faber*, 330 B.R. 235, 240 (Bankr. N.D. Ind. 2005) (opining that it is constrained by the law with respect to a debtor-defendant's failure to appear at a default judgment hearing and that the Trustee/plaintiff has established a prima facie basis for the revocation of the debtor's/defendant's discharge pursuant to 11 U.S.C. § 727(a)(6)(A)); *In re Robson*, 154 B.R. 536, 539 (Bankr. E.D. Ark. 1993) ("Based upon the circumstantial evidence of the debtors' movements, the continuing fraud being perpetrated upon creditors, violations of Orders and the direct violations of the duties imposed under Rule 4002, the Court finds that the debtors' failure to appear at the duly noticed objection to discharge hearing was intentional. Accordingly, the discharge will be denied for failure to appear at the hearing."); *In re Ishahak*, 130 B.R. 16, 20 (Bankr. E.D.N.Y. 1991) ("A debtor's intentional disregard for the obligation to attend a hearing on an objection to discharge is in itself sufficient to deny the debtor's discharge."); *In re Hunn*, 51 B.R. 981 (Bankr. M.D. Fla. 1985) ("The defendant chose not to appear, in direct violation of Rule 4002 as well as her own manifest interests, and did not rebut the inferences raised by the plaintiff. Therefore, *we must enter a judgment denying the defendant's discharge*." (emphasis added)); *In re Howard*, 55 B.R. 580, 583 (Bankr. E.D.N.C. 1985) (stating that "Howard's intentional disregard for his obligation under Bankruptcy Rule 4002(a)(2) to attend the trial of the objection to his discharge is in itself sufficient to deny the debtor's discharge"); *accord In re Buzzelli*, 246 B.R. 75, 99 n.3 (Bankr. W.D. Pa. 2000) (stating that the Court frankly is of the view that, the debtor's unjustified failure to appear at trial…constitutes a separate ground for denial of his Chapter 7 discharge via 11 U.S.C. § 727(a)(6)(A)" given the debtor's notice of the hearing on the discharge proceedings and the necessity of his attendance).

24

Appellants to proceed in Triplett's absence, but by holding a trial at all rather than immediately denying discharge based on the plain language of Bankruptcy Rule 4002 and section 727(a)(6)(C). This is reversible error, regardless of the standard applied.

## 2. Appellants Had a Substantial Right to Call Triplett to Testify at His Discharge Trial

As framed by the District Court, it would take no action with respect to the Bankruptcy Court's obvious error because it "did not affect substantial rights" and was therefore "harmless" within the meaning of Federal Rule of Civil Procedure 61 (as applied by Bankruptcy Rule 9005).[80] The District Court reasoned that because the Bankruptcy Court permitted Appellants to later examine Triplett and offered a short continuance (after earlier threatening to dismiss the case for want of prosecution when faced with such a request), no "substantial right" had been "affected."[81] However, under Federal Rule 61, "errors and defects" are reversible where they "affect any party's substantial rights." *See* Fed. R. Civ. P. 61. Based on its plain language, Federal Rule 61 does not require the complete denial of a substantial right or that the result would have been different but for the error, as the District Court appeared to require.

---

[80] ROA.22922-23; ROA.22926.
[81] ROA.22926.

25

As the long history of Bankruptcy Rule 4002 demonstrates, Appellant's ability to call a debtor to testify at his dischargeability trial is a "substantial right." While perhaps not a total denial, the Bankruptcy Court's actions unquestionably affected this substantial right. *See Miller v. Sam Hous. State Univ.*, 986 F.3d 880, 891 (5th Cir. 2021) ("Substantial rights are affected if the district court's decision was 'arbitrary or clearly unreasonable.'"); *see also Litton Loan Servicing, L.P. v. Schubert*, 631 B.R. 868, 877 (N.D. Ohio 2021) (observing that creditors have substantial rights with respect to certain aspects of bankruptcy proceedings).

After all, this Court has repeatedly recognized that the bankruptcy system depends on the fair and accurate exchange of information. *See, e.g.*, *In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999) ("[T]he integrity of the bankruptcy system depends on full and honest disclosure by debtors…." (quotation omitted)); *see also In re Nordstrom*, 381 B.R. 766, 770 (Bankr. C.D. Cal. 2008) ("In return for the safeguards and relief provided by the Code, … Rule 4002 impose[s] certain responsibilities on a debtor."). The District Court's application of Federal Rule 61, however, undermines the Bankruptcy Code by creating perverse incentives for debtors—why bother to comply with their clear obligations when they can simply ignore them and force creditors to overcome the harmless error standard? *Cf. In re Spiegel*, 662 B.R. 666, 687 (Bankr. N.D. Ill. 2024) ("Were the court to condone [violations] through the harmless error standard, it would encourage debtors to not

26

just be more cavalier with their duties, but to actively avoid those duties with no repercussion.").

This case perfectly illustrates the problems with the District Court's "no harm, no foul" approach. *Cf. id.* ("Other than in the instances directly governed by Bankruptcy Rule 9005, the court is disinclined to sanction a no harm, no foul' approach to Bankruptcy Code compliance."). For one, Triplett's violation of Bankruptcy Rule 4002 forced Appellants to exclusively rely on Exhibit 44—which was admitted by agreement—for their case in chief, which the Bankruptcy Court criticized for being merely "argument" and less "substantive" than Triplett's rebuttal evidence (consisting of his self-serving trial testimony that he only chose to provide after the closure of Appellants' case).[82] *Cf. Diaz v. United States*, 223 U.S. 442, 451–52 (1912) (finding it was "more than an impertinence" but "gross error" to interfere with a stipulation regarding the admissibility of evidence).

More fundamentally, particularly with complex proceedings like a trial, harm may be difficult to pinpoint but nevertheless is present. While Appellants may have had the ability to question Triplett or been offered some indeterminate continuance (with the specter of dismissal for want of prosecution looming), that does not eliminate the significant disruption to Appellants' presentation of their case. And by forcing Appellants to define their harm with scientific precision, the District

---

[82] *See* ROA.9608, 9623-24, 10168.

Court has unintentionally transformed Federal Rule 61 into a means by which debtors can escape their deeply enshrined bankruptcy obligations.

## II.     The District Court Misapplied 11 U.S.C. § 727 of the Bankruptcy Code.

### A.     Appellants Met Their Burden to Demonstrate a Prima Facie Case

#### 1.     The Failure to Deny Discharge Under 11 U.S.C. § 727(a)(3) Was Error

A court may deny a debtor a discharge under 11 U.S.C. § 727(a)(3) if the debtor has destroyed or failed to keep records from which his financial condition may be ascertained. *In re Packer*, 816 F.3d 87, 93–94 (5th Cir. 2016).  "[A] debtor's financial records need not contain 'full detail,' but 'there should be written evidence' of the debtor's financial condition." *Id.* (quotation omitted).  In essence, Section 727(a)(3) has two elements: "(1) the debtor failed to maintain and preserve adequate records; and (2) such failure makes it impossible to ascertain his or her financial condition and material business transactions." *In re Henley*, 480 B.R. 708, 781 (Bankr. S.D. Tex. 2012).  A plaintiff does not have the burden to prove the failure to maintain records was unreasonable or unjustified—instead, "[o]nce these elements are satisfied, the debtor then has the burden of justifying the failure to maintain adequate records." *Id.*; *cf. In re Lufkin*, 393 B.R. 585, 593 (Bankr. E.D. Tenn. 2008) ("Intent is not an element under § 727(a)(3).").

Courts applying this section have withheld discharge where, for example, a debtor used business accounts for personal expenses and failed to keep adequate

28

records to differentiate between business and personal expenses. *See, e.g.*, *In re Landin*, 2016 WL 3049626, at \*9 (Bankr. W.D. Tex. May 20, 2016).

Independently, courts have refused to discharge debtors who failed to file and produce tax returns, which are "the 'quintessential documents' in a personal bankruptcy." *See In re Claybrook*, 385 B.R. 842, 852 (Bankr. E.D. Tex. 2008) (quotation omitted); *see also In re Dennis*, 330 F.3d 696, 703 (5th Cir. 2003).

Here, the undisputed evidence shows that Triplett:

(1) failed to file tax returns for the years 2017 through 2023;

(2) failed to keep sufficient records regarding his business entities, including Preferred Platinum and Copper Creek; and

(3) failed to maintain sufficient business records notwithstanding the use of the same bank accounts for both business and personal uses.

Like the Bankruptcy Court, the District Court improperly ignored this evidence based on a misreading of the statute while also improperly shifting Triplett's burden to Appellants.

### a. The District Court Incorrectly Interpreted Section 727(a)(3) to Accommodate Gamesmanship by Debtors

It is undisputed that Triplett did not timely file a 2017 tax return or file returns at all for tax years 2018 to 2023 as well.[83]  This alone satisfies Appellants' burden under Section 727(a)(3).[84] The District Court, however, discounted this failure based

---

[83] *See* ROA.10195, 10040, 22928.

[84] *See, e.g.*, *In re Womble*, 289 B.R. 836, 858 (Bankr. N.D. Tex. 2003) ("[A] debtor's failure to file timely tax returns—especially for several years in a row—is a blatant example of a failure to

on a creative, albeit flawed, interpretation of section 727(a)(3). It reasoned that while the word "keep" section 727(a)(3) could be read as requiring the creation of a document, it rejected that interpretation of the word based on the principle of *noscitur a sociis* and because to hold otherwise would confer "unintended breadth" to the statute.[85] The District Court's conclusion that section 727(a)(3) is ambiguous and does not create an obligation to create records runs contrary to significant authority setting forth the correct interpretation.

This Court has repeatedly interpreted the statute to forbid discharge where the debtor failed to "maintain" and preserve adequate records. *See In re Mandel*, 2021 WL 3642331, at *5–7 (5th Cir. Aug. 17, 2021) (per curiam) ("Under § 727(a)(3), a plaintiff must show…the debtor failed to maintain and preserve adequate records…."). [86] Other Circuits have similarly concluded that in using the word "keep," section 727(a)(3) places an affirmative obligation on debtors to create

---

maintain adequate records."); *In re Gartner*, 326 B.R. 357, 377 (Bankr. S.D. Tex. 2005) (holding that the debtor's "failure to file tax returns provides another basis for denying … discharge under section 727(a)(3) because it prevents creditors and trustees from obtaining important financial information."); *In re DeChristofano*, 1999 WL 458969, at *1 (Bankr. E.D. Pa. July 2, 1999) ("[A] debtor's failure to file a significant number of tax returns is a key element in many cases in which discharges have been denied pursuant to § 727(a)(3).").

[85] ROA.22929.

[86] *See also, e.g.*, *In re Goff*, 579 F. App'x 240, 244–46 (5th Cir. 2014) (unpublished) (affirming summary judgment that the debtor "failed to maintain adequate records under 11 U.S.C. § 727(a)(3)"); *In re Womble*, 108 F. App'x 993, 995–96 (5th Cir. 2004) (unpublished) (affirming "based upon [the debtor's] failure to maintain adequate records").

adequate records. *See, e.g.*, *In re Caneva*, 550 F.3d 755, 762– (9th Cir. 2008) ("[T]he statute imposes an affirmative duty on the debtor to keep and preserve recorded information that will allow his creditors to ascertain his financial condition and business transactions."); *In re Scott*, 172 F.3d 959, 969 (7th Cir. 1999) (same).

Unlike the District Court's interpretation of "keep" and "preserve" as imposing the same duty, the correct construction of section 727(a)(3) "avoids surplusage in the statutory text, but also furthers the well-recognized aim of § 727(a)(3)." *In re Steffensen*, 534 B.R. 180, 199 (Bankr. D. Utah 2015) (rejecting the same reading of the statute adopted by the District Court both on the plain language and because it would be an "'absurd' result and one not consonant with the Code's aim of portraying a debtor's financial condition accurately and clearly"); *see also Scott*, 172 F.3d at 969 ("In this context, 'keep' and 'preserve' are not synonyms.").

The District Court also erred in excusing the untimely filing of Triplett's 2017 tax returns. As other courts have noted, the "relatively short time frames [for initiating dischargeability proceedings] increase the need for timely required disclosures by a debtor," and thus "belated [tax return] filings are insufficient to satisfy the requirements of § 727(a)(3) regarding the keeping of records." *In re Adalian*, 500 B.R. 402, 409 (Bankr. M.D. Pa. 2013); *see also In re Fhuere*, 667 B.R. 904, 920 (Bankr. D. Utah 2025) ("A debtor's failure to timely file tax returns—especially for several years in a row—is a blatant example of a failure to maintain

31

adequate records." (quotation omitted)); *In re Womble*, 289 B.R. 836, 858 (Bankr. N.D. Tex. 2003) (same); *In re Claybrook*, 385 B.R. 842, 852 (Bankr. E.D. Tex. 2008) (denying discharge where, inter alia, the debtor failed to file timely tax returns).

Given the foregoing, the District Court erred in refusing to reverse the Bankruptcy Court notwithstanding clear evidence that Triplett violated section 727(a)(3) by failing to provide timely filed tax returns. *Cf., e.g.*, *In re Womble*, 108 F. App'x 993, 995–96 (5th Cir. 2004) (per curiam) (affirming denial of discharge where, among other things, the debtor failed to file tax returns for his entities).

### b.    Triplett Failed to Provide Sufficient Documentation to Discern Between Business and Personal Funds

Triplett testified repeatedly that he commingled business and personal funds and expenses.[87] Yet, as Triplett admitted, it was virtually impossible to separate his personal financials from those of his businesses using the information he maintained.[88]    Indeed, the Bankruptcy Court specifically found that Triplett's "missing records included invoices, time records, spreadsheets, and most records for Debtor's sole proprietorships DFW Design & Remodeling and Preferred Platinum Construction."[89]

---

[87] ROA.8566, 8581-82.
[88] *See* ROA.10115-19.
[89] ROA.10196.

"Where there is a complete failure to distinguish between personal and business expenses of an individual debtor, making it impossible to determine the debtor's true financial condition, there exists grounds to deny the discharge under § 727(a)(3)." *In re Hunt*, 605 B.R. 758, 783 (Bankr. N.D. Tex. 2019); *accord In re Womble*, 108 F. App'x 993, 996 (5th Cir. 2004) (unpublished) (agreeing that "where personal and business expenses are intertwined, the business transactions cannot be fully ascertained without tracing the… proceeds of closely held entities"); *see also Office of the Comptroller Gen. of Republic of Bol. Ex el. Gen. Command of the Bolivian Air Force v. Tractman*, 107 B.R. 24, 27 (S.D.N.Y. 1989) ("[S]ection 727(a)(3)'s complete disclosure requirement extends beyond the property of the estate to include all 'business transactions' which shed light on the financial condition of the debtor."). That is precisely the case here, and for this independent reason, discharge was inappropriate.

The District Court discounted this evidence, however, because the Debtor did provide *some* bank statements relating to Preferred Platinum and Copper Creek.[90] Specifically, it reasoned that the fact Preferred Platinum was a sole proprietorship "mitigates the commingling problem."[91] Rather than mitigating the issue, the fact that Preferred Platinum was a "DBA" of Triplett only heightens the need for detailed

---

[90] ROA.22932.
[91] ROA.22932.

33

records so that parties, like Appellants, can differentiate personal funds from business funds in commingled accounts. *See, e.g.*, *In re Landin*, 2016 WL 3049626, at *9 (Bankr. W.D. Tex. May 20, 2016). After all, Preferred Platinum was in the business of construction and, allegedly, would undertake projects with scheduled draws (although Triplett neglected to maintain even basic information, like contracts, regarding those transactions).[92] This meant that Triplett would receive "trust funds" within the meaning of Texas Property Code section 162.001 and stood as a trustee with respect to such funds. *See* TEX. PROP. CODE §§ 162.001, .002; *see also In re Johns*, 2024 WL 4314832, at *9 (Bankr. N.D. Tex. Sept. 25, 2024) (denying discharge where, inter alia, debtor failed to maintain sufficient records to distinguish between personal and trust funds); *In re Brown*, 2022 WL 17254467, at *4–6 (Bankr. E.D. Tex. Nov. 28, 2022) (explaining that construction trust funds only become property of the estate to a limited extent).

### c. The Bankruptcy Court Necessarily Found that Appellants Met Their Burden

Under Section 727(a) of the Bankruptcy Code, a court may deny discharge to a chapter 7 debtor if one of the enumerated grounds for the denial of the discharge applies. A plaintiff objecting to discharge under this section bears the initial burden of establishing a prima facie case that one of the grounds for nondischarge exists. *In*

---

[92] ROA.9980, 10004-07.

*re Duncan*, 562 F.3d 688, 696 (5th Cir. 2009).  If the plaintiff meets this burden, "the burden shifts to the debtor to present evidence that he is innocent of the charged offense." *Id.*  "While the burden of persuasion rests at all times on the creditor objecting to discharge, it is axiomatic that the debtor cannot prevail if he fails to offer credible evidence after the creditor makes a prima facie case." *In re Reed*, 700 F.2d 986, 992 (5th Cir. 1983).

For its part, the Bankruptcy Court correctly stated these principles but did not follow them.[93]  More specifically, the Bankruptcy Court concluded that Appellants failed to "sustain and prove by a preponderance of the evidence" that the discharge exceptions were met.[94] Yet, the Bankruptcy Court (and the District Court) also clearly ruled on the basis of Triplett's rebuttal evidence, which would only be relevant if the Bankruptcy Court had found that Appellants had, in fact, met their burden.[95]  For example, with respect to Section 727(a)(3), the District Court relied upon the Bankruptcy Court's conclusion that Triplett "made significant efforts to obtain, produce, and disclose records" and "sincerely attempted to meet the disclosure requirements."[96] Their reliance on this type of evidence directly

---

[93] ROA.10207.
[94] ROA.10204, 10206-09.
[95] ROA.10207, 22933-34.
[96] ROA.10203.

contradicts the Bankruptcy Court's conclusion that Appellants did not satisfy their burden.

More specifically, although the Bankruptcy Court's own findings demonstrate that Triplett failed to maintain the required information, the Bankruptcy Court nevertheless held Appellants did not meet their burden apparently because it felt Triplett had "sincerely attempted" to meet his disclosure requirements.[97] There are two issues with this. For one, whether a failure to maintain records was justified is an affirmative defense, not an element of Appellants' section 727(a)(3) claim. *See In re Goff*, 579 F. App'x 240, 246 (5th Cir. 2014) (unpublished) (describing justification as an "affirmative defense" under section 727(a)(3)); *see also In re Connors*, 283 F.3d 896, 901 (7th Cir. 2002) ("[I]ntent to defraud is not a required element of a § 727(a)(3) violation."). Thus, the Bankruptcy Court erred in holding that Appellants had not met their burden based on its belief that Triplett had "sincerely attempted" to obtain the missing information. *Cf. In re Ray*, 2012 WL 3744721, at *4 (Bankr. S.D. Tex. Aug. 28, 2012) (noting that "Section 727(a)(3) does not consider intent, but rather whether the actions were justified under the circumstances").

Additionally, whether a debtor made a "sincere attempt" is irrelevant—instead, Section 727(a)(3)'s standard is "an objective one," meaning that "[a] debtor's records may be judged deficient under section 727(a)(3) even if the debtor

---

[97] ROA.10203.

36

did not intend to conceal financial information, or harbored an honest belief that he did not need to keep records." *In re Simmons*, 810 F.3d 852, 858 (1st Cir. 2016).

The District Court largely glossed over this point, devoting only a footnote to it in the District Court Opinion.[98] More specifically, the District Court reasoned that to the extent this evidence was relevant, the Bankruptcy Court "probably would have found debtor justified in failing to preserve [the documents] if it had analyzed the Valks' destruction of the records as an affirmative defense," meaning any error in burden shifting was harmless.[99] For one, this sort of speculation about what would have happened had the Bankruptcy Court correctly applied the law should not serve as the basis to brush aside this blatant error.[100] Moreover, as explained below, Triplett fell well short of demonstrating his justification defense such that a finding to the contrary by the Bankruptcy Court would have been error.

---

[98] ROA.22931.

[99] ROA.22931.

[100] As explained above, Triplett's violation of Bankruptcy Rule 4002 necessarily required the denial of discharge. The District Court apparently disagreed, believing instead the Bankruptcy Court was faced with a choice: "it may enter a default judgment denying discharge, or it may require the creditors to establish their claims under the applicable burden of proof." ROA.22924. But the authority the District Court cited for this proposition did not allow a debtor to violate Bankruptcy Rule 4002 yet testify in his own defense. *See In re De Ronde*, 509 B.R. 223 (Bankr. S.D. Iowa 2012) (debtor failed to appear at all during trial). Therefore, even assuming the District Court's correctly that the Bankruptcy Court would have found Triplett established his affirmative defense, the error in treating Appellants as though they had not met their burden is still harmful as Triplett's testimony could not be used to establish his affirmative defense to Appellants' prima facie case.

## 2.    Triplett's False Oaths Were Made Knowingly and Intentionally

A plaintiff prevails under section 727(a)(4)(A) by showing that (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *In re Berger*, 244 F.3d 134, at *2 (5th Cir. 2000) (unpublished).  "An omission of an asset can constitute a false oath." *In re Pratt*, 411 F.3d 561, 566 (5th Cir. 2005).

The requisite intent can be shown by establishing that the debtor acted with reckless disregard for the truth, which can be proven by circumstantial evidence. *See, e.g.*, *In re Sholdra,* 249 F.3d 380, 382 (5th Cir. 2001) ("[S]tatements [made] with fraudulent intent—or reckless indifference to the truth...can be proven by circumstantial evidence."); *In re Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992) ("[T]he existence of more than one falsehood, together with [the debtor's]...failure to take advantage of the opportunity to clear up all inconsistencies and omissions when he filed his amended schedules, constituted reckless indifference to the truth and, therefore, the requisite intent to deceive.").  Typically, only the debtor can testify directly concerning his or her intent and "rare will be the debtor who willingly provides direct evidence of a fraudulent intent."  *In re Buescher*, 491 B.R. 419, 434 (Bankr. E.D. Tex. 2013) (quotation omitted).  "Instead, the existence of a fraudulent intent is most often betrayed by an examination of a course of conduct." *Id.*  While

a series of misstatements in the petition and schedules can amount to a reckless disregard for the truth, "[e]ven a single false oath or account is sufficient to deny a debtor's discharge." *In re Chunton*, 654 B.R. 418, 422–23 (Bankr. E.D.N.Y. 2023).

Here, the record establishes that Triplett made multiple false statements. For example, in Schedule A/B, he failed to disclose an ownership interest in Preferred Platinum Construction.[101] But the Bankruptcy Court itself found that Triplett was the owner of Preferred Platinum Construction.[102] Triplett also failed to disclose an interest in Copper Creek in Schedule A/B, but in the questionnaire provided to Triplett by his counsel, Joyce Lindauer, Triplett listed Copper Creek as his own dba.[103] Triplett also testified during his Bankruptcy Rule 2004 examination that he was not an employee of Copper Creek,[104] which directly contradicts his questionnaire responses, where he listed Copper Creek as one of two sources of income.[105] Specifically, he indicated in his questionnaire that he performed work for Copper Creek for which he was compensated $25,000.00 in gross income.[106]

Additionally, Triplett made false statements in Schedule I and his SOFA regarding his and Mr. Escoffie's monthly salaries. Specifically, in his SOFA, Triplett

---

[101] ROA.4124.
[102] ROA.10194.
[103] ROA.4124, 5940.
[104] ROA.10174.
[105] ROA.5975.
[106] ROA.5976.

listed his total gross income as $180,000.00.[107] However, the total income calculated from Triplett's bank statements is $304,000.00.[108]Triplett admitted as such during trial.[109] Triplett's false statements also include his failure to list several of his bank accounts on his SOFA, which he admitted during trial,[110] along with misrepresentations regarding his Section 341 meeting of creditors and in the Bankruptcy Rule 2004 Examination. Importantly, Triplett acknowledged under oath that his schedules were incomplete and incorrect.[111]

Triplett's pattern of making material misstatements and errors evidences a reckless and cavalier disregard for the bankruptcy process and establishes the requisite fraudulent intent. *In re Wright*, 644 B.R. 796, 803 (Bankr. D. Neb. 2022). And although Triplett attempted to shift the blame by claiming he relied on his counsel, he was fully aware that these statements were made under penalty of perjury.[112] Triplett ultimately admitted that he only gave his Schedules and SOFA a "cursory review" and did not read every word.[113] Yet, "many courts around the country [] have held that the false oath sworn when a debtor signs a bankruptcy petition without reading it fully constitutes a reckless indifference to the truth under

---

[107] ROA.4130.
[108] *See* ROA.5574-5634.
[109] ROA.10013-37.
[110] ROA.10065-74.
[111] ROA.9937-38.
[112] ROA.9937-38, 10083-86, 10201.
[113] ROA.10150.

Section 727(a)(4)(A)." *Gobindram v. Bank of India*, 538 B.R. 629, 640–41 (E.D.N.Y. 2015). There is no "safe harbor" that allowed Triplett to abdicate his responsibilities and rely solely on counsel. *See, e.g.*, *In re Happel*, 394 B.R. 915, 920 (Bankr. E.D. Wis. 2008) ("Reliance on counsel in completing the statement of financial affairs and schedules is no defense to material misrepresentations unless such reliance was reasonable and in good faith.").

Triplett's admission that he undertook only a "cursory," rather than diligent, review of his bankruptcy materials alone demonstrates the requisite intent. *See In re King*, 272 B.R. 281, 290, 303 (Bankr. N.D. Okla. 2002) (finding requisite intent under Section 727(a)(4) where debtor testified to a "cursory review" of his schedules); *In re Sims*, 148 B.R. 553, 557 (Bankr. E.D. Ark. 1992) (holding that a debtor's "glancing over" his bankruptcy petition's description of his assets and transfers "constitutes a cavalier and reckless disregard for truth which is inconsistent with the relief to be afforded the honest debtor"). And even then, the District Court failed to identify any evidence in record supporting its conclusion that Triplett's misstatements "can be explained as confused but good-faith attempts to disclose as much as possible" or that even if Appellants were technically correct, Triplett "could have been understandably confused as to exactly what type of income he was required to report."[114]

---

[114] ROA.22935-36.

41

Accordingly, the District Court erred in affirming the Bankruptcy Court's ruling under Section 727(a)(4)(A).

### 3. Triplett Failed to Obey the Bankruptcy Court's Orders

To succeed on a claim under § 727(a)(6)(A), a party must prove: "1) the Court issued an order directed at the debtor; 2) the order was lawful; 3) the order was not one requiring a response to a material question or to testify; and 4) the debtor refused to obey the order." *In re Wells*, 426 B.R. 579, 608–09 (Bankr. N.D. Tex. 2006) (quotation omitted).

Triplett violated:

- The 2004 Order;

- The Order Granting Creditors' Emergency Motion for Second Extension of Deadline for Filing Complaints Under 11 U.S.C. §§ 523 and 727;

- The Order Granting Creditors' Motion to Compel Debtor to Complete 2004 Examination; and

- The Order Granting in Part/Denying in Part Creditors' Motion to Compel Discovery and Request for Sanctions' including as later reconsidered.

The 2004 Order specifically required Triplett to produce documents responsive to Appellants' requests, as well as submit to a Bankruptcy Rule 2004 Examination.[115] Despite Appellants' repeated requests for cooperation, Triplett refused to produce responsive documents, providing Appellants only an incomplete

---

[115] ROA.2395-2400.

42

list of bank accounts.[116] After Triplett failed to timely respond in full to Appellants' requests for information and documents, Appellants were forced to seek a further extension of the deadlines to file complaints to object to Triplett's discharge under section 727 of the Bankruptcy Code. To that end, Appellants each filed a Second Deadline Extension Motion.[117]  On March 5, 2020, the Court held a hearing on the Second Deadline Extension Motion, at which Triplett failed to appear despite prior order of the Court that he appear personally at every hearing.[118]

At the March 5, 2020 hearing, after walking through Triplett's continued service evasion tactics, continued refusal to produce the materials he was ordered to produce, and the inconsistencies between information contained in the Schedules and the information revealed by documents obtained through discovery, Judge Rhoades asked: "Isn't this grounds for denial of discharge?" and suggested: "So it sounds like you've got some grounds to me, already, to file a motion – a complaint seeking denial of discharge, right?"[119] Judge Rhoades then ordered Defendant yet again to produce all materials Defendant was previously ordered to produce and stated that "[f]ailure to produce those documents will constitute, or will potentially constitute cause to deny discharge. We're not doing this any more. Not again."[120]

---

[116] ROA.8046.
[117] ROA.2402.
[118] ROA.13061-62, 13068:17-13069:18.
[119] ROA.8061:10-16.
[120] ROA.8066:19-8067:18.

Judge Rhoades issued a written order on March 16, 2020, memorializing her ruling at the hearing on the Second Deadline Extension Motion and ordering Triplett to appear for additional questioning in connection with the Bankruptcy Rule 2004 Examination to "continue from day to date, until completed by Creditors."[121] Though when he appeared for his deposition, Triplett blatantly disregarded Judge Rhoades' order, stating that he would only be deposed "[f]or five hours today and tomorrow. And that's it. When the clock reaches five hours, I'm done for the day. That's the judge's order."[122]. Also, during the Bankruptcy Rule 2004 Examination, Triplett confirmed he had taken no actions and made no inquiries to procure the financial information and records ordered by the Court and reflected in the 2004 Order.[123] In fact, Triplett testified that he found it "unreasonable" to call the financial institutions he has banked with to get full account numbers and other account information for each of his accounts.[124]

However, Triplett and his counsel understood that the Bankruptcy Court's order required Triplett to obtain the relevant information from those financial institutions. Indeed, when asked at trial if the 2004 Order required Triplett to call his banks or the IRS to get the requested information, Triplett's counsel Joyce Lindauer

---

[121] ROA.8071-72.
[122] ROA.2424.
[123] ROA.8081.
[124] ROA.8081-83.

testified "Yes."[125] When asked if Mr. Triplett made those calls as the 2004 order required, Lindauer replied "No."[126] Despite finding it "unreasonable" to make those calls during the Bankruptcy Rule 2004 Examination, Triplett stated at trial that he had actually contacted his banks prior to filing bankruptcy regarding his account information, confirming that the task was feasible for him to accomplish.[127] However, Triplett testified that he did not reach out to the banks subsequent to filing for bankruptcy or in an effort to comply with the 2004 Order. Specifically, Triplett testified that "prior to filing the bankruptcy, I did go to great lengths to call the banks….Now, did I go do that a subsequent time, no I didn't."[128]

Mr. Triplett went on to testify at trial that he "made every effort possible to comply ***based on the advice of my counsel*** and what to do, yes."[129] But when his counsel was asked if she and Triplett complied with the discovery requests sent by Appellants following the Bankruptcy Court's order, Lindauer testified that "***I would not say we fully complied***."[130]

Moreover, both Lindauer's and Triplett's trial testimony made clear that Triplett's refusal to comply with the Bankruptcy Court's orders was not inadvertent or a mistake. Rather, it was a conscious choice made by Triplett and Lindauer. When

---

[125] ROA.9814.
[126] ROA.9814.
[127] ROA.9878-79.
[128] ROA.9878-79.
[129] ROA.9880 (emphasis added).
[130] ROA.9816 (emphasis added).

asked what she did to ensure he complied with the 2004 Order—which required Triplett to take any reasonable action to obtain the requested information—Lindauer testified that she and Triplett "did not go the trouble to subpoena the bank records or the credit card statements, because [trial counsel for Appellants] told [Lindauer] that [trial counsel for Appellants] did not trust what Don [Triplett] would get and turn over" and would thus subpoena the non-parties for those documents themselves.[131] Lindauer's testimony plainly indicates that Triplett intentionally refused to obtain the information that the 2004 Order required him to obtain because Appellants' trial counsel found him untrustworthy and planned to themselves subpoena non-parties that possessed the requested documents and information.

Triplett confirmed this reasoning during his trial testimony, testifying that he did not procure documents responsive to Appellants' requests because Ms. Lindauer told him not to spend the money to do so.[132] Triplett further testified that he did not procure documents responsive to Appellants' requests because he was told that "even if I gave [the requested documents] to [Appellants], they weren't going to use them."[133] Triplett also admitted that he refused to contact the bank to procure the requested information because he would have had to pay "this much per research hour and this much per page" for the bank to recreate the statements from Triplett's

---

[131] ROA.9812-13.
[132] ROA.9880-82.
[133] ROA.9884.

46

closed account(s).[134] Based on the potential cost, Triplett did not call the banks to procure the requested bank statements, in direct violation of the Bankruptcy Court's orders.[135]

The Bankruptcy Court issued several orders for Triplett to comply with Appellants' discovery requests.[136] Triplett admittedly refused to do so, and his refusal was a purposeful decision based on his impressions of Appellants' trial counsel's plan to subpoena non-parties for related information. However, whether Appellants' trial counsel planned to subpoena nonparties bears no impact on Triplett's obligation to obey the Bankruptcy Court's orders to produce the requested documents. "No court at any level can allow attorneys to disregard or modify lawful orders at their convenience….Only a stay or superseding court order could alter, amend or suspend the explicit terms of the [court's] order." *In re Fulghum Const. Corp.*, 20 B.R. 925, 929 (Bankr. M.D. Tenn. 1982) (imposing sanctions on a defendant who failed to produce a list as ordered by the court because "the trustee never asked for the list and excused noncompliance").

The Bankruptcy Court did not issue a superseding order or a stay on its several orders to Triplett to cooperate in the discovery process. As such, Triplett's refusal to obey the Bankruptcy Court's orders based on Appellants' subpoena powers was not

---

[134] ROA.9878-79.
[135] ROA. 9878-79.
[136] *See* ROA.10173-75.

inadvertent, not a mistake, and not a proper ground for refusing the Bankruptcy's Court Order. The Bankruptcy Court erred by holding otherwise.

**B.    Triplett Failed to Carry His Section 727(a)(3) Burden of Showing Justification for Failure to File Tax Returns and His Section 727(a)(4)(A) Burden of Showing His False Oaths Were Unintentional**

**1.    Triplett Did Not Provide Evidence of Justification for His Failure to File Tax Returns**

The interpretation of Section 727(a)(3), including what is "justified," is a question of law, whereas its application is a question of fact. *See Meridian Bank v. Alten*, 958 F.2d 1226, 1229–30 (3d Cir. 1992).  Courts conducting this inquiry do so in light of the totality of the circumstances, including "the education, experience, and sophistication of the debtor; the volume of the debtor's business; the complexity of the debtor's business; the amount of credit extended to the debtor or his business; and any other circumstances that should be considered in the interest of justice." *In re Claybrook*, 385 B.R. 842, 851–52 (Bankr. E.D. Tex. 2008) (quotation omitted). "[A]ny explanation given by the Debtor to explain any deficiency in his records must be evaluated both for its credibility and reasonableness under the circumstances of this Debtor's affairs and degree of sophistication and for the materiality of any insufficiency." *Id.* (quotation omitted).

48

The Bankruptcy Court found that Triplett mistakenly believed his 2017 tax return had been filed, and filed it upon discovering this mistake.[137]  It further found that Triplett had not filed tax returns for the year 2018 and onward because Triplett claimed that he had been instructed by counsel not to and that he lacked the necessary information to complete them, although he subsequently gained such information and intends to file them.[138]  Neither of these points constitutes a sufficient justification under Section 727(a)(3).  For example, in *In re Claybrook*, the court rejected the debtor's explanations for failing to file tax returns, including that she lacked the necessary documents to do so because they were either in the plaintiff's possession or had been destroyed by him.  385 B.R. at 850–52.

Courts have also found a lack of justification where, as here, a debtor blames the failure to file returns on the advice of some unidentified counsel. *See, e.g.*, *In re Strbac*, 235 B.R. 880, 884–85 (B.A.P. 6th Cir. 1999) (debtor's claim he acted on accountant's advice in failing to file taxes did not constitute reasonable justification); *In re Gray*, 2016 WL 1039559, at *6 (Bankr. S.D.N.Y. Mar. 15, 2016); *In re Hall*, 174 B.R. 210, 215 (Bankr. E.D. Va. 1994) (tax protester's subjective belief that there is no obligation to file tax returns).  And even if, as Triplett claims, his failure to file his 2017 was due to a simple mistake, "even negligence will suffice to justify denial

---

[137] ROA.10200.
[138] ROA.10200.

of a discharge under § 727(a)(3)." *In re Rajabali*, 365 B.R. 702, 712 (Bankr. S.D. Tex. 2007). And Triplett's explanation is also contradicted by his failure to file tax returns for each of the next six years as well.[139]

Additionally, Triplett is a sophisticated party and has served as bookkeeper for multiple entities.[140]  The record shows that he used his experience as seasoned bookkeeper and businessman to meticulously avoid creating paper trails that might otherwise explain the dispositions of thousands of dollars in the years preceding his bankruptcy.  For example, Triplett began using QuickBooks, an accounting software, for his businesses in 2008, yet he inexplicably ceased using that software in 2017, after which his record keeping became significantly less transparent.[141] Ultimately, the only information Triplett was able to produce was a seemingly random collection of bank statements, far less than the documents he allegedly reviewed in lieu of QuickBooks.[142]

### 2.    Triplett Failed to Carry His Burden of Showing His False Statements and Omissions Were Unintentional

Once a plaintiff makes a prima facie showing under Section 727(a)(4)(A), the burden shifts to the debtor to produce evidence rebutting that showing, such as by proving the statements were not intentionally false. *See Duncan*, 562 F3d at 696; *see*

---

[139] *See* ROA.22928.
[140] ROA.9958-59, 9961.
[141] ROA.9962-64.
[142] ROA.9967-68.

*also In re Chunton*, 654 B.R. 418, 422 (Bankr. E.D.N.Y. 2023) ("Once a plaintiff produces evidence of a false statement, the burden shifts to the debtor to produce a 'credible explanation,' absent which, 'a court may infer fraudulent intent.'" (quotation omitted)). As discussed above, Triplett's misrepresentations were, at least, made with reckless disregard given his "cursory" review of his bankruptcy filings.

## Conclusion

Appellants respectfully request that the Court reverse the District Court's Judgment affirming the Bankruptcy Court's Judgment and render judgment for Appellants or, in the alternative, remand the case to Bankruptcy Court for a new trial. Appellants also request such other and further relief to which they are entitled.

Dated: November 12, 2025

Respectfully submitted,

**PORTER HEDGES LLP**

*/s/ Eric M. English*

Eric M. English (TX 24062714)
Adriana T. Young (TX 24138188)
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone:  (713) 226-6000
Facsimile:   (713) 226-6248
eenglish@porterhedges.com
adrianatyoung@porterhedges.com

***COUNSEL FOR APPELLANTS***

## Certificate of Service

I hereby certify that the foregoing Appellants' Brief was filed with the Court in electronic format on November 12, 2025 and an electronic copy of the brief was served on counsel of record, as listed below on the same date:

Gregory W. Mitchell
**FREEMAN LAW, PLLC**
7011 Main Street
Frisco, Texas 75034

*/s/ Eric M. English*
Eric M. English

## Certificate of Compliance

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32 because this document contains 11,315 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font or larger.

*/s/ Eric M. English*
Eric M. English