No. 25-40520

---

IN THE

# United States Court of Appeals

FOR THE FIFTH CIRCUIT

---

In re:
DONALD R. TRIPLETT, JR.,
Debtor.

---

KEITH BLACK AND JEREMY HALTOM,
Appellants,

v.

DONALD R. TRIPLETT, JR.,
Appellee.

---

**APPELLANTS' RECORD EXCERPTS IN SUPPORT OF
APPELLANTS' BRIEF**

---

Eric M. English
Adriana T. Young
**PORTER HEDGES LLP**
1000 Main Street, 36th Floor
Houston, TX 77002
(713) 226-6000
eenglish@porterhedges.com
ayoung@porterhedges.com

*Counsel for Appellants
Keith Black and Jeremy Haltom*

## TABLE OF CONTENTS

| TAB | DOCUMENT |
|-----|----------|
| 1. | Civil Docket Sheet for Case No. 4:24-cv-00838-JCB, *Black et al. v. Triplett, Jr.* (ROA.1– 3). |
| 2. | Notice of Appeal to the United States Court of Appeals for the Fifth Circuit (ROA.22947–22949). |
| 3. | Memorandum Opinion and Order of the United States District Court for the Eastern District of Texas, Sherman Division, Black et al. v. Triplett, Jr. (E.D. Tex.) (ROA.22916–22946). |
| 4. | Omnibus Findings of Fact and Conclusions of Law of the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division, *In re Triplett (Jr.)* (Bankr. E.D. Tex.) (ROA.8–56). |

Dated: November 12, 2025

Respectfully submitted,

**PORTER HEDGES LLP**

*/s/ Eric M. English*
Eric M. English (TX 24062714)
Adriana T. Young (TX 24138188)
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone:  (713) 226-6000
Facsimile:   (713) 226-6248
eenglish@porterhedges.com
ayoung@porterhedges.com

*COUNSEL FOR APPELLANTS*

**Certificate of Service**

I hereby certify that the foregoing Appellants' Brief was filed with the Court in electronic format on November 12, 2025 and an electronic copy of the brief was served on counsel of record, as listed below on the same date:

Gregory W. Mitchell
**FREEMAN LAW, PLLC**
7011 Main Street
Frisco, Texas 75034

*/s/ Eric M. English*
Eric M. English

# TAB 1

Jump to Docket Table

# U.S. District Court
# Eastern District of TEXAS [LIVE] (Sherman)
# CIVIL DOCKET FOR CASE #: 4:24-cv-00838-JCB

Black et al v. Triplett, Jr.
Assigned to: District Judge J. Campbell Barker
Case in other court:  5CA, 25-40520
                         USBC District of Texas, A19-42570
                         USBC DISTRICT OF TEXAS, BK20-04059
Cause: 28:0158 Notice of Appeal re Bankruptcy Matter (BA

Date Filed: 09/19/2024
Date Terminated: 07/23/2025
Jury Demand: None
Nature of Suit: 422 Bankruptcy Appeal (801)
Jurisdiction: Federal Question

**Appellant**

**Keith Black**

represented by

**Eric M English**
Porter & Hedges LLP - Houston
1000 Main Street
36th Floor
Houston, TX 77002-6336
713-226-6612
Email: eenglish@porterhedges.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Appellant**

**Jeremy Haltom**

represented by

**Eric M English**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Appellee**

**Donald R Triplett, Jr.**

represented by

**Gregory Wayne Mitchell**
The Mitchell Law Firm, L.P.
1100 West Campbell Road
Suite 200
Richardson, TX 75080
972-463-8417
Fax: 972-432-7540
Email: greg@mitchellps.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
| --- | --- | --- |

25-40520.1

| 09/19/2024 | 1 (p.4) | NOTICE OF APPEAL FROM BANKRUPTCY COURT. Bankruptcy Court case number BK20-04059. File received, filed by Keith Black, Jeremy Haltom. (Attachments: # 1 (p.4) Omnibus Findings of Fact and Conclusion of Law, # 2 (p.102) Order Dismissing Sanctions Motions as Moot, # 3 (p.122) Judgment, # 4 (p.19915) Docket Sheet, # 5 (p.22780) Bankruptcy Cover Sheet, # 6 (p.22785) Transmittal Letter)(baf) (Entered: 09/20/2024) |
| --- | --- | --- |
| 09/19/2024 | | DESIGNATION of Record on Appeal re 1 (p.4) Bankruptcy Appeal. (baf) (Entered: 09/20/2024) |
| 09/19/2024 | | Electronic case file is in Bankruptcy Court. Please refer to the Bankruptcy Pacer site @ https://ecf.txeb.uscourts.gov to view/retrieve the record. (baf) (Entered: 09/20/2024) |
| 10/29/2024 | 2 (p.102) | DESIGNATION of Record on Appeal by Keith Black, Jeremy Haltom re 1 (p.4) Bankruptcy Appeal,. (Britten, Shannon) (Entered: 10/29/2024) |
| 10/30/2024 | 3 (p.122) | Bankruptcy Record on Appeal Transmitted to District Court.COMPLETE RECORD Filed. (Attachments: # 1 (p.4) 20-4057 Part 1, # 2 (p.102) 20-4057 Part 2, # 3 (p.122) 20-4059 Part 1, # 4 (p.19915) 20-4059 Part 2)(Britten, Shannon) (Entered: 10/30/2024) |
| 10/30/2024 | 4 (p.19915) | Additional Attachments to Main Document: 3 (p.122) Transmission of Bankruptcy Record on Appeal.. (Attachments: # 1 (p.4) 19-42570 doc 227)(Britten, Shannon) (Entered: 10/30/2024) |
| 11/21/2024 | 5 (p.22780) | JOINT MOTION to Consolidate Cases - *Appellants Keith Black and Jeremy Haltom's Unopposed Joint Motion to Consolidated* by Keith Black, Jeremy Haltom. (Attachments: # 1 (p.4) Proposed Order)(English, Eric) (Attachment 1 replaced on 11/22/2024) (baf). (Entered: 11/21/2024) |
| 11/27/2024 | 6 (p.22785) | UNOPPOSED MOTION for Extension of Time to File - *Keith Black and Jeremy Haltom's Unopposed Joint Motion to Extend Time for Filing of Appellants' Opening Brief* by Keith Black, Jeremy Haltom. (Attachments: # 1 (p.4) Proposed Order)(English, Eric) (Entered: 11/27/2024) |
| 11/27/2024 | 7 | ORAL ORDER granting 6 (p.22785) unopposed joint motion to extend time to file appellants' opening brief. The deadline for appellants to file their opening brief is extended to December 2, 2024. Ordered by District Judge J. Campbell Barker on 11/27/2024. (ndc) (Entered: 11/27/2024) |
| 12/02/2024 | 8 (p.22790) | Appellant's BRIEF by Jeremy Haltom. (English, Eric) (Entered: 12/02/2024) |
| 12/03/2024 | 9 (p.22846) | ORDER OF CONSOLIDATION. The Court grants 5 (p.22780) Motion to Consolidate Cases. **The present case, No. 4:24-cv-00838, is the lead case, and all parties are instructed to file any future motions in this case.** Signed by District Judge J. Campbell Barker on 12/3/2024. (wea) (Entered: 12/03/2024) |
| 01/01/2025 | 10 (p.22847) | Appellee's BRIEF by Donald R Triplett, Jr. Appellant Reply Brief due by 1/15/2025. (Mitchell, Gregory) (Entered: 01/01/2025) |
| 01/15/2025 | 11 (p.22883) | Appellant's BRIEF by Keith Black, Jeremy Haltom. (English, Eric) (Entered: 01/15/2025) |
| 05/02/2025 | 12 (p.22916) | ORDER SETTING HEARING: Argument on Bankruptcy Appeal set for 6/6/2025 at 02:00 PM in Ctrm Bnkrpcy (Plano) before District Judge J. Campbell Barker. |

25-40520.2

| | | |
|---|---|---|
| | | Signed by District Judge J. Campbell Barker on 5/2/2025. (knp) (Entered: 05/02/2025) |
| 06/04/2025 | 13 | ORAL ORDER: The hearing set for 6/6/2025 is moved to 3:00 PM. Ordered by District Judge J. Campbell Barker on 6/4/2025. (ndc) (Entered: 06/04/2025) |
| 06/06/2025 | 14 (p.22917) | Minute Entry for proceedings held before District Judge J. Campbell Barker: Argument on Bankruptcy Appeal held on 6/6/2025 from 02:55 - 04:07 pm Attorney Appearances: Plaintiff - Eric English, Adriana Young; Defense - Gregory Mitchell. No exhibits. (Court Reporter - Ruth Weese) (ndc) (Entered: 06/06/2025) |
| 07/23/2025 | 15 (p.22919) | MEMORANDUM OPINION AND ORDER. For the reasons set forth above, the bankruptcy court's judgment is affirmed in part and reversed in part. As to debtor's discharge and all of the issues pertaining to the discharge, the judgment is affirmed. The court reverses the denial of creditors' motion for sanctions and remands for further consideration in accordance with this opinion. Signed by District Judge J. Campbell Barker on 7/23/2025. (baf) (Entered: 07/23/2025) |
| 07/23/2025 | 16 (p.22946) | FINAL JUDGMENT. The court, having rendered its decision by separate opinion and order, enters judgment that the bankruptcy court's decision is affirmed in part and reversed in part. This matter is remanded back to that court. The clerk of this court is directed to close the case. Signed by District Judge J. Campbell Barker on 7/23/2025. (baf) (Entered: 07/23/2025) |
| 08/22/2025 | 17 (p.22947) | NOTICE OF APPEAL as to 15 (p.22919) Memorandum & Opinion,, Order, 16 (p.22946) Judgment, by Keith Black, Jeremy Haltom. Filing fee $ 605, receipt number ATXEDC-11045176. (English, Eric) (Entered: 08/22/2025) |
| 09/05/2025 | 18 (p.22950) | DESIGNATION of Record on Appeal by Keith Black, Jeremy Haltom re 17 (p.22947) Notice of Appeal (English, Eric) (Entered: 09/05/2025) |
| 09/08/2025 | | **USCA Case Number 25-40520:**<br><br>NOTICE of Docketing Notice of Appeal from USCA re 17 (p.22947) Notice of Appeal filed by Jeremy Haltom, Keith Black. (baf) (Entered: 09/26/2025) |

# TAB 2

## THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 7 |
| | § | |
| Donald R. Triplett, Jr., | § | Bankruptcy Case No. 19-42570 |
| | § | |
| Debtor. | § | |
| | § | |
| | § | |
| | § | |
| Keith Black | § | Civil Case No. 4:24-cv-00837-JCB |
| Plaintiff, | § | |
| | § | |
| | § | (Consolidated with Civil Case No. 4:24-cv- |
| v. | § | 00838-JCB) |
| | § | |
| Donald R. Triplett, Jr., | § | Adversary No. 20-04057 |
| Defendant. | § | |
| | § | |
| | § | |
| Jeremy Haltom | § | Civil Case No. 4:24-cv-00838-JCB |
| Plaintiff, | § | |
| | § | |
| | § | (Consolidated with Civil Case No. 4:24-cv- |
| v. | § | 00837-JCB) |
| | § | |
| Donald R. Triplett, Jr., | § | Adversary No. 20-04059 |
| Defendant. | § | |

## KEITH BLACK AND JEREMY HALTOM'S NOTICE OF APPEAL TO
## THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

Pursuant to Federal Rules of Appellate Procedure 3 and 6(b), notice is given that Keith

Black and Jeremy Haltom, who were Plaintiffs in Adversary Nos. 20-04057 and 20-04059,

respectively, in the bankruptcy court; Appellants in Case No. 4:24-cv-00838 (consolidated with

Case No. 4:24-cv-00837) in the district court; and are Appellants in this bankruptcy appeal, hereby

jointly appeal to the United States Court of Appeals for the Fifth Circuit from (1) the Memorandum

Opinion and Order of the United States District Court for the Eastern District of Texas entered in

on July 23, 2025 [Case No. 4:24-cv-00838, Docket No. 15], and (2) the Final Judgment the United

17390327

25-40520.22947

States District Court for the Eastern District of Texas entered in this case on July 23, 2025 [Case

No. 4:24-cv-00838, Docket No. 16].

Dated: August 22, 2025.

Respectfully submitted,

**Porter Hedges LLP**


By:    */s/ Eric M. English*       
        Eric M. English (TX 24062714)
        Jordan T. Stevens (TX 24106467)
        Adriana T. Young (TX 24138188)
        1000 Main Street, 36th Floor
        Houston, Texas 77002
        Telephone:  (713) 226-6000
        Facsimile:   (713) 226-6248
        eenglish@porterhedges.com
        jstevens@porterhedges.com
        adrianatyoung@porterhedges.com

        **ATTORNEYS FOR APPELLANTS
        KEITH BLACK AND JEREMY
        HALTOM**

17390327

25-40520.22948

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing instrument was filed with the Court and served by electronic transmission to all registered ECF users appearing in the case on August 22, 2025.

<u>*/s/ Eric M. English*</u>
Eric M. English

17390327

25-40520.22949

# TAB 3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

—————

Nos. 4:24-cv-00837, 4:24-cv-00838

—————

**Keith Black et al.,**
*Appellants,*

v.

**Donald R. Triplett, Jr.,**
*Appellee.*

—————

# OPINION AND ORDER

Creditors Keith Black and Jeremy Haltom appeal the bankruptcy court's grant of discharge to debtor Donald Triplett and the bankruptcy court's denial of their motions to sanction debtor. For the reasons below, the judgment of the bankruptcy court is affirmed with respect to the discharge but reversed and remanded with respect to the sanctions motions.

## I. Background

Debtor's line of work is construction and remodeling. He has owned or been associated with various entities, including Preferred Platinum Construction, DFW Design and Remodeling, and Copper Creek Distributors. Creditors have done business with debtor in the past.

These parties have long been in litigation. In 2017, creditor Haltom initiated two causes of action against debtor in state court for breach of contract and fraud. In 2018, creditor Black initiated another. In 2019, creditor Black received a final judgment in his favor for close to $200,000. Doc. 8 at 14. Debtor then petitioned for Chapter 7 bankruptcy in Sherman before Judge Rhoades. *In re Triplett*, No. 4:19-bk-42570, Doc. 1 (Bankr. E.D. Tex. Sept. 19, 2019). He indicated in the petition that his creditors numbered in the 100s. *Id.* at 6. The bankruptcy court stayed the pending state-court litigation.

- 1 -

25-40520.22919

In October of 2019, debtor appeared for his § 341 meeting of the creditors, at which the Valks (creditors' associates) questioned him. Then the Valks filed a Rule 2004 motion for examination, seeking to depose debtor. Doc. 3-1 at 2247.[1] To accommodate the potential Rule 2004 examination, the Valks, Black, and Haltom then filed a motion to extend their deadline for filing complaints under §§ 523 and 727 to object to discharge. Doc. 8 at 16. Judge Rhoades granted the motion to extend and then, in February of 2020, granted the Rule 2004 motion. In its Rule 2004 order, the bankruptcy court ordered debtor to appear for a 10-hour, two-day Rule 2004 examination and to take reasonable steps to produce a host of documents, listed in exhibit A of that order, which related to his financial condition. Doc. 3-1 at 868–70.

Then discovery difficulties arose. Creditors assert that debtor failed to provide complete information and that he was concealing financial accounts. Doc. 8 at 17. So they and the Valks filed a second motion to extend the deadline for filing complaints under §§ 523 and 727. *Id.* The bankruptcy court held a hearing on that second motion and granted it. Doc. 3-2 at 474 (R. 7935). In its order on the second motion to extend, the bankruptcy court ordered debtor to "produce . . . all documents, materials, and information requested by Creditors, and which are identified in Exhibit 'A' attached to the Court's [Rule 2004 order]." *Id.* at 480 (R. at 7941). The court also lengthened the time of debtor's deposition to an indefinite duration: "until completed by Creditors." *Id.*

Creditors then initiated the adversary proceedings that are now on appeal before this court. *Black v. Triplett*, No. 4:20-ap-04057, Doc. 1 (Bankr. E.D. Tex. May 15, 2020); *Haltom v. Triplett*, No. 4:20-ap-04059, Doc. 1 (Bankr. E.D. Tex. May 15, 2020). Those proceedings were before Judge Searcy rather than Judge

---

[1] For Doc. 3-1 citations, the page number cited is the same as the page number of the record on appeal. For Docs. 3-2, 3-3, and 3-4, the citation will include a parenthetical with the page number of the record on appeal—e.g., (R. at 2247).

- 2 -

Rhoades. Creditors asserted three grounds for denying discharge under 11 U.S.C. § 727:

1. that debtor concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information from which his financial condition or business transactions might be ascertained, violating § 727(a)(3);

2. that debtor knowingly and fraudulently made false oaths or accounts in connection with the case, violating § 727(a)(4)(A); and

3. that debtor refused to obey lawful court orders in the case, violating § 727(a)(6)(A).

*See, e.g.*, Doc. 3-1 at 2228–30.

On May 18 and May 19, 2020, debtor sat for the Rule 2004 examination. Unsatisfied with that two-day deposition, creditors filed a motion to compel him to complete the Rule 2004 examination by sitting for another deposition and producing the documents they were seeking. Doc. 3-2 at 952 (R. at 8413). Judge Rhoades granted that motion in part, authorizing creditors to depose debtor for another six hours, which they did on August 8, 2020. *Id.* at 970 (R. at 8431). After that six-hour deposition, still unsatisfied with debtor's cooperation, creditors filed a second motion to compel, seeking still-undisclosed documents and asking the court to sanction debtor for noncompliance. Doc. 3-1 at 2310. Judge Rhoades held two hearings on that second motion to compel. At the second hearing, when called to answer whether he had complied with court orders to produce financial documents, debtor invoked his Fifth Amendment right to remain silent. Doc. 3-3 at 3167 (R. at 13262).[2] Because debtor refused to testify, the bankruptcy court drew the adverse inference that he had not fully complied with court orders and granted the second motion to

---

[2] Debtor testified that his other counsel, who was representing him in a criminal prosecution, advised him to invoke his Fifth Amendment right. Doc. 3-2 at 2317–18 (R. at 9778–79).

25-40520.22921

compel insofar as it requested sanctions of $500. *Id.* at 3193–94 (R. at 13288–89).

In June of 2022, in the adversary proceedings before Judge Searcy, debtor filed motions for death-penalty sanctions against creditors, seeking dismissal of the adversary proceedings. His motions were based on creditors' allegedly improper discovery during his bankruptcy and other lawsuits that they had filed against him in state and federal courts. *See, e.g.*, *id.* at 1789 (R. at 11884). In the motions, debtor told a story about how he uncovered the Valks' tax fraud, how he brought a whistleblower suit, and how all the litigation and bankruptcy were the result of the Valks' retaliatory scheme against him. He argued that the Valks recruited Haltom and Black, creditor–appellants here, to bring the lawsuits against him that ultimately led to his bankruptcy petition. He also alleged that the Valks had possession of many of his financial records and destroyed them to prevent him from fulfilling his bankruptcy disclosure requirements. In response to debtor's death-penalty-sanctions motions, creditors filed their own motions for sanctions, seeking to strike debtor's motions and to require him to reimburse their attorney fees incurred in connection with his motions. *See, e.g.*, Doc. 3-4 at 306 (R. at 13661).

The adversary proceedings went to a joint, four-day trial in April of 2024. Doc. 3-2 at 1996–2573 (R. at 9457–10034). Debtor was absent on the first day, preventing creditors from questioning him during their case-in-chief, *id.* at 1998 (R. at 9459), but he showed up thereafter, *id.* at 2237 (R. at 9698). Because of debtor's absence and creditors' need to put on a case-in-chief, the parties agreed to have exhibit 44—a "compilation of excerpts of Triplett's prior testimony"—read into the record. Doc. 8 at 50. Debtor's case-in-chief consisted of testimony from two of debtor's previous attorneys (David Stephan and Joyce Lindauer) and from debtor himself. Creditors extensively cross-examined debtor on the last two days of trial. *See* Doc. 3-2 at 2339–2547 (R. at 9800–10008).

- 4 -

25-40520.22922

Judge Searcy found that creditors failed to carry their burden of proving by a preponderance of the evidence (1) that debtor failed to keep and preserve adequate records, (2) that debtor knowingly made a false statement under oath, and (3) that debtor willfully refused to obey a court order. *See id.* at 2610–2617 (R. at 10071–10078). Accordingly, the bankruptcy court found in favor of debtor, granting him discharge of his obligations. *Id.* at 2622, 2628 (R. at 10083, 10089). The court dismissed debtor's motions for death-penalty sanctions as moot and also dismissed creditors' motions for sanctions as moot. *Id.* at 2626–27 (R. at 10087–88).

Creditors then filed their notices of appeal. This court consolidated the two appeals, received full briefing, and heard oral argument. Creditors raise seven issues on appeal. In short, they argue that the bankruptcy court erred by failing to penalize debtor for his absence on day one, erred by failing to deny discharge on the three § 727 grounds, erred by improperly burden shifting, erred by giving too little evidentiary weight to exhibit 44, and erred by denying their sanctions motions as moot.

## II. Analysis

### A. Standard of review

"A district court may affirm, reverse or modify a bankruptcy court's ruling, or remand the case for further proceedings." *In re Black*, No. 2:16-cv-13200, 2017 WL 3034348, at *5 (E.D. La. July 18, 2017).[3] This court reviews the bankruptcy court's findings of fact for clear error, its conclusions of law de novo, and its application of law to the facts de novo. *In re Bass*, 171 F.3d 1016, 1021 (5th Cir. 1999). The court reviews evidentiary decisions for abuse of discretion. *In re Jacobsen*, No. 4:10-cv-00117, 2010 WL 11538235, at *1 (E.D. Tex. Dec. 27, 2010), *aff'd*, 432 F. App'x 341 (5th Cir. 2011) (unpublished). Error that does not affect substantial rights

---

[3] While the quoted language no longer appears in Rule 8013 of the Federal Rules of Bankruptcy Procedure, "logic still compels the same conclusion with respect to the appellate powers of the District Court." *In re Jones v. Pennymac Loan Servs., LLC*, No. 7:24-cv-00200, 2025 WL 786524, at *2 n.2 (S.D.N.Y. Mar. 12, 2025).

25-40520.22923

does not warrant reversal. *See* Fed. R. Bankr. P. 9005; Fed. R. Civ. P. 61; *In re Age Ref., Inc.*, 801 F.3d 530, 543 & n.42 (5th Cir. 2015).

## B. Debtor's absence on the first day of trial

Federal Rule of Bankruptcy 4002 requires the debtor to "attend the hearing on a complaint objecting to discharge and, if called, testify as a witness." Fed. R. Bankr. P. 4002(a)(2). Many courts have made clear that Rule 4002 imposes a legal duty on debtors to attend the discharge trial in an adversary proceeding—subpoena or no—and that failure to attend may warrant denial of discharge. *See, e.g.*, *In re Alboghdady*, No. 1:23-bk-10022, 2024 WL 1628836, at *3 (Bankr. E.D. Va. Apr. 15, 2024); *In re De Ronde*, 509 B.R. 223, 228 (Bankr. S.D. Iowa 2012); *In re MacPherson*, 129 B.R. 259, 261–62 (M.D. Fla. 1991). The bankruptcy court has discretion on how to handle an absent debtor: it may enter a default judgment denying discharge, or it may require the creditors to establish their claims under the applicable burden of proof. *In re De Ronde*, 509 B.R. at 228.

Creditors argue that the bankruptcy court erred by forcing them to proceed with their case-in-chief without debtor present in violation of Rule 4002. Doc. 8 at 27–31. They claim that the bankruptcy court blamed them for not subpoenaing debtor, denied their request for a continuance, and put them to the "binary choice" of either proceeding in debtor's absence or having their claims dismissed for want of prosecution. *Id.*; *see also* Doc. 11 at 12–14. They suggest that this alone warrants reversal and denial of discharge. Debtor responds by arguing that Rule 4002 is not applicable law, that debtor ultimately did attend trial and thus did not violate Rule 4002, and that creditors waived any Rule 4002 objection by proceeding with their case-in-chief. Doc. 10 at 10–15.

There is no question that Rule 4002 required debtor to attend on the first day and testify when called as a witness. Contrary to debtor's assertion, that rule does apply to adversary proceedings such as this one. *See, e.g.*, *In re Alboghdady*, 2024 WL 1628836, at *2-3 ("The Plaintiff timely filed its Complaint in this adversary proceeding . . . . Bankruptcy Rule 4002(a)(2) requires the debtor

- 6 -

25-40520.22924

to attend the hearing on a complaint objection to his or her discharge and to testify if called as a witness."). Debtor's presence for his own case-in-chief did not satisfy that obligation because he was not present to testify when creditors sought to call him as a witness, which the rule unambiguously requires.

Nor did creditors waive their objection under the rule by electing to go forward. Going forward with the case-in-chief is one of the two ways contemplated by the caselaw for a creditor to preserve its objection to debtor's absence. *See, e.g.*, *In re MacPherson*, 129 B.R. at 261. As creditors point out, the bankruptcy court blamed them for debtor's absence, Doc. 3-2 at 2003 (R. at 9464), thereby making it clear that they were not getting a default judgment. By moving the bankruptcy court to sanction debtor for his absence, creditors raised the issue sufficiently for the court to have been able to rule on it. *See* Doc. 3-2 at 1998 (R. at 9459).

However, that does not mean that they are entitled to relief. As alluded to above, the harmless-error rule applies in the bankruptcy context as well as in any other civil case. *See* Fed. R. Bankr. P. 9005 ("Fed. R. Civ. P. 61 applies in a bankruptcy case."); Fed. R. Civ. P. 61 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."). And it applies to the district court's review of the bankruptcy proceeding as well as to the bankruptcy proceeding itself. *See, e.g.*, *In re Carapella*, 115 B.R. 365, 368 (M.D. Fla. 1990) (finding bankruptcy court's error, if any, harmless), *aff'd sub nom.*, *Carapella v. United States*, 925 F.2d 1474 (11th Cir. 1991); *see also McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984) ("it is well-settled that the appellate courts should act in accordance with the salutary policy embodied in Rule 61").

The bankruptcy court's error did not prejudice creditors' substantial rights. They acknowledge in their briefing that Judge Searcy gave them the option to call debtor for their rebuttal case if debtor subsequently attended the trial. Doc. 8 at 30; *see* Doc. 3-2 at 2031 (R. at 9492) ("Mr. Triplett will presumably be here on — in some form for your case in rebuttal, should you choose to put

- 7 -

him on. And so if he is, great, you know, you can ask him whatever you need to and we'll see how that goes."). But creditors did not choose to call debtor for their rebuttal case because they were able to thoroughly cross-examine him during his case-in-chief. At oral argument on appeal, this court asked creditors whether there were any specific questions that they would have asked debtor on direct examination that they were unable to ask him during cross-examination. They identified none. Instead, they argued that debtor's absence harmed them by, in essence, putting them on Judge Searcy's bad side. That is insufficient to show prejudice.

Creditors also argue that Judge Searcy erred by "apparently not treating testimony elicited by [them] during Triplett's case in chief as [their] evidence." Doc. 8 at 30. This court finds no support in the record for that allegation.

The conclusion that debtor's absence did not affect substantial rights is underscored by the fact that creditors elected to go forward with their case-in-chief rather than requesting a continuance. Creditors argue that Judge Searcy threatened to dismiss their case for want of prosecution unless they proceeded then and there in debtor's absence. But the record suggests otherwise. The bankruptcy court expressly offered them a "short continuance," so that they could have "the opportunity to have a little bit of time to try to get him here." Doc. 3-2 at 2013–14 (R. at 9474–75). Creditors' counsel declined and stated, "I think, Your Honor, we have plenty of information . . . to go forward solely on prior testimony." *Id.* at 2015 (R. at 9476). To be sure, debtor was allegedly evading service, and his counsel would not accept substitute service of a subpoena. *Id.* at 2007, 2013 (R. at 9468, 9474). But still, if creditors truly expected their substantial rights to be affected, then one would expect them to make every effort to compel debtor's attendance. They did not.

Accordingly, as to debtor's Rule 4002 violation, the court finds that creditors have not demonstrated any error that affected their substantial rights and therefore that they have not demonstrated any error warranting reversal.

- 8 -

## C. Grounds for denial of discharge under § 727

The following four issues raised by creditors relate to the merits of the bankruptcy court's discharge decision. Creditors' burden-shifting issue is addressed in subsection II.C.1 because it pertains only to § 727(a)(3).

The bankruptcy code requires discharge unless a statutory exception applies. 11 U.S.C. § 727(a). When determining dischargeability of a debt, the provisions of § 727(a) are construed strictly against the parties seeking to prevent discharge (i.e., the creditors) and liberally in favor of the debtor. *Laughlin v. Nouveau Body & Tan, L.L.C.*, 602 F.3d 417, 421 (5th Cir. 2010). The objecting creditor bears the initial burden of producing evidence establishing a prima facie case that the particular exception applies. *See In re Duncan*, 562 F.3d 688, 695–96 (5th Cir. 2009). Once the creditor carries that initial burden of production, the burden of production shifts to the debtor to "present evidence that he is innocent of the charged offense." *Id.* at 696. However, "the burden of persuasion rests at all times on the creditor objecting to discharge," *In re Reed*, 700 F.2d 986, 992 (5th Cir. 1983), and to carry that burden the creditor must prove each element of the exception by a preponderance of the evidence, *see In re Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992) (citing *Grogan v. Garner*, 498 U.S. 279 (1991)).

### 1. Concealment of or failure to preserve recorded information, § 727(a)(3)

Section 727(a)(3) provides that the court must grant discharge unless

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

To prevail on the typical failure-to-preserve claim, the objecting creditor must establish two elements: "(1) the debtor failed to maintain and preserve adequate records; and (2) such failure

- 9 -

25-40520.22927

makes it impossible to ascertain his or her financial condition and material business transactions." *In re Henley*, 480 B.R. 708, 781 (Bankr. S.D. Tex. 2012). Justification is an affirmative defense— the burden of proving it lies with the debtor. *In re Goff*, 579 F. App'x 240, 246 (5th Cir. 2014) (unpublished). To determine whether the failure was justified, a court considers several factors, such as "the education, experience, and sophistication of the debtor; the volume of the debtor's business; the complexity of the debtor's business; the amount of credit extended to the debtor or his business; and any other circumstances that should be considered in the interest of justice." *In re Sauntry*, 390 B.R. 848, 855 (Bankr. E.D. Tex. 2008). "The bankruptcy court has 'wide discretion' in analyzing these shifting burdens, and its determination is reviewed for clear error." *In re Duncan*, 562 F.3d at 697.

The bankruptcy court, Judge Searcy, found that creditors "failed to sustain their burden and prove by a preponderance of the evidence that [debtor] destroyed or failed to keep such records from which his financial condition and business transactions may be ascertained sufficient to deny him a discharge under 11 U.S.C. § 727(a)(3)." Doc. 3-2 at 2612 (R. at 10073). Creditors argue that this was error because of debtor's failure to file tax returns and failure to maintain sufficient business records. Doc. 8 at 32–35; Doc. 11 at 14–21. The need for business records was heightened, they suggest, because debtor commingled business and personal funds in the same accounts. They argue that without some way to distinguish between those funds, ascertaining debtor's financial condition is impossible. As to the tax returns, while debtor created a return for 2017, he failed to file it until after the bankruptcy proceedings began. He did not create or file returns for the years after 2017.

The bankruptcy court did not clearly err. Start with the argument that failure to create and failure to file tax returns are grounds for denying discharge under § 727(a)(3). By the subsection's plain language, it is not clear that it requires a debtor to create or file tax returns at all. The subsection uses the following

25-40520.22928

verbs: concealed, destroyed, mutilated, falsified, failed to keep, and failed to preserve. Failure to create and failure to file tax returns could not fall within concealing, destroying, mutilating, or falsifying. Those are active; failure to create and failure to file are passive. That leaves failure to keep and failure to preserve.

Neither failure to keep nor failure to preserve encompasses the failure to *create* tax returns in the first instance. The word preserve unambiguously requires the object, here the recorded information, to already exist. If the tax returns do not exist, then one cannot preserve them or fail to do so. Similarly, while the meaning of the word keep is ambiguous between keeping an existing object and the act of recording (e.g., keeping a journal), the better reading of failure to keep in the statute also requires the record to already exist. That is because every other verb in the statute—concealed, destroyed, mutilated, falsified, failed to preserve—presupposes the record's existence. It would therefore give "unintended breadth" to the subsection if the court were to read it to require the debtor to actively create records rather than simply to keep them once they already exist. *Yates v. United States*, 574 U.S. 528, 543 (2015) (discussing "the principle of *noscitur a sociis*—a word is known by the company it keeps").

Nor do the failure to keep and the failure to preserve encompass the failure to *file* existing tax returns. In this context, preserve means "to keep safe from injury, harm, or destruction"; "to keep alive, intact, or free from decay"; or "to keep up and reserve for personal or special use." *Preserve*, Merriam-Webster, https://www.merriam-webster.com/dictionary/preserve (last visited July 20, 2025). And, read in the context of the other verbs in the subsection, keep means "to retain in one's possession or power" or "to have in control." *Keep*, Merriam-Webster, https://www.merriam-webster.com/dictionary/keep (last visited July 20, 2025). Under those definitions, one can easily keep and preserve existing tax returns without filing them—one only needs to hold onto them and prevent their destruction. So the failure to

- 11 -

25-40520.22929

file them does not equate to the failure to preserve or failure to keep them.

Perhaps a factfinder could determine that debtor's creation of, but not actually filing, his 2017 return amounted to the concealment of that return. In other words, one could argue that debtor did not simply *fail to file* his 2017 return but actively *concealed* it. However, the bankruptcy court's factual findings belie that argument. Concealment requires intent to conceal. *In re Chadwick*, 335 B.R. 694, 702 (W.D. Wis. 2005). The bankruptcy court found that, while debtor did not initially file his 2017 return, he did so "as soon as this mistake was discovered." *Id.* at 2608 (R. at 10069). Generally, it found that debtor "made significant efforts" and "sincerely attempted to meet the disclosure requirements necessitated by a bankruptcy filing." Doc. 3-2 at 2611 (R. at 10072). Those findings preclude a finding of intentional concealment. The bankruptcy court was far better situated than this court to make those factual determinations and the corollary factual determination that debtor did not conceal his 2017 return. It did not clearly err.

The court is aware that other courts applying § 727(a)(3) have denied discharge where the debtor failed to file tax returns for multiple years. *See, e.g.*, *In re Gartner*, 326 B.R. 357, 377 (Bankr. S.D. Tex. 2005). The court is also aware that the Fifth Circuit has called tax returns "quintessential documents" of personal bankruptcy, *In re Dennis*, 330 F.3d 696, 703 (5th Cir. 2003), though that case involved the affirmance of a bankruptcy court's finding that the debtor did keep adequate records. Even if § 727(a)(3) requires creation and filing of tax returns, debtor did not fail to do so with respect to his 2017 tax return. And even though he did not prepare tax returns after 2017, that does not mean that his failure to do so made it impossible to ascertain his financial condition because, in addition to the 2017 return, creditors obtained access to volumes of bank statements, the other "quintessential documents" of personal bankruptcy. *In re Hobbs*, 333 B.R. 751, 757–58 (Bankr. N.D. Tex. 2005); *see also infra* p. 13–14. The bankruptcy court was not

- 12 -

required to find that the absence of tax returns after 2017, or the late filing of the 2017 returns, prevented creditors from ascertaining debtor's financial condition.

Beyond tax returns, creditors argue that debtor failed to keep sufficient business records for his companies, especially where he commingled business and personal funds. Doc. 8 at 34–35; Doc. 11 at 18–21. For example, they point to the bankruptcy court's finding that debtor's "missing records included invoices, time records, spreadsheets, and most records for Debtor's sole proprietorships DFW Design & Remodeling and Preferred Platinum Construction." Doc. 8 at 34 (quoting Doc. 3-2 at 2604 (R. at 10065)). But creditors omit, from the same paragraph in the bankruptcy court's findings, the reason given by defendant for those missing records: the Valks caused them to be destroyed. Doc. 3-2 at 2603–04 (R. at 10064–65). To be sure, the bankruptcy court did not explicitly find that the records *had* been destroyed at the Valks' command. Instead, it found testimony to that effect "credible" and the events "plausible." *Id.* at 2604 (R. at 10065). However, there was seemingly uncontroverted evidence that the Valks were responsible for the missing records. Willie Parker, one of the two Valk employees accused of destroying the records, testified that Ron Valk told him to "get rid of that computer." Doc. 3-3 at 1183 (R. at 11278). The bankruptcy court was not required to find that debtor was at fault for failing to keep records that plausibly were destroyed by another party.[4]

Even if we ignore the wrongfully destroyed records, the bankruptcy court still did not clearly err by finding that the recorded information debtor did keep was adequate. Specifically, as alluded to above, scores of bank statements were preserved. Bank statements are part of "the core of what is necessary to ascertain the

---

[4] To the extent that the question of fault goes to the affirmative defense of justification rather than the elements of creditors' claims, the bankruptcy court probably would have found debtor justified in failing to preserve the invoices, time records, spreadsheets, and other records if it had analyzed the Valks' destruction of the records as an affirmative defense. So any legal error in burden-shifting as to the destroyed records was harmless.

- 13 -

25-40520.22931

debtor's financial condition." *In re Hobbs*, 333 B.R. at 757 (quoting *In re Nemes*, 323 B.R. 316, 325 (Bankr. E.D.N.Y. 2005)). The crucial time period for records in this case was from approximately September of 2017 to September of 2019—the two years before the bankruptcy filing. *See In re Hahn*, 362 B.R. 542, 548 (Bankr. S.D. Fla. 2007) (citing *In re Losinski*, 80 B.R. 464, 474 (Bankr. D. Minn. 1987)). Creditors were able to obtain bank records for all three of the entities whose records they claim are scarce—Preferred Platinum, Copper Creek Distributors, and DFW Design & Remodeling—for much of the relevant time period and beyond. The record on appeal contains volumes of them. *See, e.g.*, Doc. 3-1 at 4558–4612, 5465–5518 (Preferred Platinum); Doc. 3-2 at 756–857 (R. at 8217–8318) (Copper Creek Distributors); Doc. 3-2 at 1487–89 (R. at 8948–50) (DFW Design & Remodeling).

Creditors do not contest debtor's assertion that they obtained all of the bank statements for Preferred Platinum and Copper Creek Distributors for the relevant time period. *Compare* Doc. 10 at 17–18 *with* Doc. 11 at 18–21. Instead, they argue that bank statements alone are insufficient, at least as to Preferred Platinum, because debtor commingled business and personal funds in his Preferred Platinum business account. However, as debtor points out, Preferred Platinum is a sole proprietorship. That means that under the general rule, debtor's "personal assets and [his] business assets are legally a single financial estate." *Trs. of Amalgamated Ins. Fund v. Sheldon Hall Clothing, Inc.*, 862 F.2d 1020, 1024–25 (3d Cir. 1988) (citing *SEC v. W.L. Moody & Co.*, 374 F. Supp. 465, 472 (S.D. Tex. 1974), *aff'd,* 519 F.2d 1087 (5th Cir. 1975)). That at least mitigates the commingling problem. And if the bank statements for Preferred Platinum were sufficient to evidence debtor's financial condition, then the records for Copper Creek—debtor's husband's company—likely were as well.

Moreover, as to DFW Design & Remodeling, though the bank statements end in 2016, debtor testified that the company ceased to operate in 2016 or 2017. Doc. 3-2 at 502 (R. at 7963). That would likely put its existence outside of the relevant two-year time

25-40520.22932

period, and the absence of records pertaining to it would not make it impossible to ascertain debtor's financial condition as of the date he filed for bankruptcy. *Cf. In re Hobbs*, 333 B.R. at 757 ("The inability to produce or locate the financial records of her company, in itself, will not deprive Defendant the opportunity for a fresh start, particularly when the company has been dissolved for almost three years before the bankruptcy petition was filed." (citing *In re More*, 138 B.R. 102, 105–06 (Bankr. M.D. Fla. 1992))). The bankruptcy court reasonably deemed them unnecessary.

Creditors frame the bankruptcy court's decision differently: they argue that the bankruptcy court decided that they failed to carry their burden *because* debtor's failure to keep adequate records was justified in light of his "significant efforts to obtain, produce, and disclose records." Doc. 8 at 35–36; *see* Doc. 3-2 at 2611 (R. at 10072). If that was the reason the bankruptcy court concluded that debtor did not fail to keep adequate records, then the bankruptcy court would have erroneously placed upon creditors the burden of disproving debtor's affirmative defense of justification.

However, as discussed above, whether defendant made significant efforts is relevant to whether he concealed recorded information. Similarly, it is relevant to whether he destroyed the recorded information, which the bankruptcy court explicitly concluded he did not. This court reads the bankruptcy court's conclusions of law to rely on debtor's "significant efforts" only insofar as debtor's efforts were relevant. In other words, the bankruptcy court did not rely on debtor's significant efforts in concluding that he did not fail to keep or preserve recorded information—only in concluding that he did not conceal or destroy the information. There was ample evidence in the record from which the bankruptcy court could reasonably have concluded that debtor did not fail to keep or preserve the necessary financial information.

Factfinding was the bankruptcy court's role. That court did not commit clear error by finding that creditors failed to prove

- 15 -

that defendant engaged in any of the conduct or omissions pro-
scribed by § 727(a)(3) in such a way as to make it impossible to
ascertain his financial condition or business transactions. Credi-
tors' § 727(a)(3) arguments do not warrant reversal.

### 2. False oaths, § 727(a)(4)(A)

Section 727(a)(4)(A) provides another basis for denying dis-
charge: where "the debtor knowingly or fraudulently, in or in con-
nection with the case . . . made a false oath or account." The ele-
ments of this exception are (1) the debtor made a statement under
oath; (2) the statement was false; (3) he knew the statement was
false; (4) he made the statement with fraudulent intent; and
(5) the statement related materially to the bankruptcy case. *In re
Beaubouef*, 966 F.2d at 178. "An omission of an asset can consti-
tute a false oath." *In re Pratt*, 411 F.3d 561, 566 (5th Cir. 2005).
The requisite intent to deceive can be established by showing that
the debtor made the statement or omission with reckless indiffer-
ence to the truth. *In re Beaubouef*, 966 F.2d at 178. Statements
made in the petition, schedules, meeting of creditors, and Rule
2004 examination are all made under oath. 3 Norton Bankruptcy
Law and Practice § 86:11 (3d ed. 2025).

At trial, creditors argued that debtor made several false oaths.
The bankruptcy court found that creditors "failed to sustain their
burden and prove by a preponderance of the evidence that
[debtor] made a false statement under oath regarding such matters
sufficient to deny him a discharge under 11 U.S.C.
§ 727(a)(4)(A)." Doc. 3-2 at 2614–15. (R. at 10075–76). On appeal,
creditors argue that they proved several false oaths made by
debtor and therefore that reversal is warranted. They claim that
debtor failed to disclose an ownership interest in Preferred Plati-
num and Copper Creek Distributors on his schedule A/B, that he
falsely testified that he was not an employee of Copper Creek Dis-
tributors, that he underreported both yearly and monthly income
for both himself and his spouse, and that he failed to list bank ac-
counts on his statement of financial affairs. Each is addressed in
turn.

- 16 -

First, creditors claim that debtor failed to report ownership interests in Preferred Platinum and Copper Creek Distributors on his schedule A/B, a form he filled out under oath. Doc. 8 at 38–39; Doc. 11 at 24. This is how he filled out the relevant portion:

19. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture

☐ No
☑ Yes. Give specific information about them...........

| Name of entity: | % of ownership: | |
|---|---|---|
| DFW Design & Remodeling, INC --Insolvent | 90% | $0.00 |
| TV Arrowhead LLC (1 asset -Lake House) Sold -Funds went to the Trustee | 50% | $325,000.00 |
| Preferred Platinum Construction | | $0.00 |
| Copper Creek Distributors, Inc. | | $0.00 |
| DFW Design & Remodeling | 100% | $0.00 |
| DFW Design Flooring and More | 100% | $0.00 |
| iTri4Life | 100% | $0.00 |
| Platunum Storage GL, LLC | 100% | $0.00 |
| Preferred Platinum Storage Construction | 100% | $0.00 |

Doc. 3-1 at 3993. Creditors claim that he made false oaths when he left the "% of ownership" lines blank for the two entities. Regarding Preferred Platinum, that entity is his d/b/a—he is Preferred Platinum. Debtor could have been reasonably unsure how to answer the ownership-interest question when his d/b/a was the object of the ownership. So the bankruptcy court could have reasonably found that his omission of an ownership percentage, if disclosure of one was even required, was not made with fraudulent intent, knowledge of falsity, or reckless disregard for the truth. And regarding Copper Creek Distributors, the bankruptcy court found that he was not the owner of that company at all; instead, debtor testified that it belonged to his husband, Jose Escoffie. Doc. 3-2 at 2602–03 (R. at 10063–64). Listing it here or in questionnaires to Lindauer (his bankruptcy counsel) can be explained as confused but good-faith attempts to disclose as much information as possible in the limited space afforded by bankruptcy forms. Finding that these "% of ownership" omissions were not intentionally false statements was not clear error.

Second, creditors claim that debtor made a false oath during his Rule 2004 examination when he testified that he was not an employee of Copper Creek, "which directly contradicts his questionnaire responses, where he listed Copper Creek as one of two sources of income." Doc. 8 at 39. This argument lacks merit. One

- 17 -

25-40520.22935

can receive income from a company without being an employee — such as by working as a subcontractor, which he stated he did in the instrument that creditors cite. *See* Doc. 3-1 at 5845 ("Self Employed sub work from Copper Creek").

Third, creditors claim that debtor made false income-related disclosures. For monthly income, they point out that debtor listed his monthly income as $1,461.50 in his questionnaire filled out for Lindauer but as $1,300 in his sworn schedule I form. Similarly, he listed Escoffie's monthly income as $2,186 in the questionnaire but $2,100 in the schedule I. Doc. 8 at 39 (first citing Doc. 3-1 at 5838; and then citing Doc. 3-2 at 305 (R. at 7766)). And for yearly income in 2018, they point out that the amount debtor listed in his sworn statement of financial affairs ($180,000) is significantly lower than the amount of income calculated from his bank statements ($304,000). *Id.* (first citing Doc. 3-1 at 3999; and then citing Doc. 3-2 at 2434 (R. at 9895)).

Debtor argues that the 2018 income reported in his statement of financial affairs was lower than the amount of deposits reflected by the bank statements because not every deposit into a bank account constitutes income. Doc. 10 at 22. Creditors counter that even if the cash flow came from loans, reimbursements, or insurance settlements, debtor still had a duty to list them as income because the Bankruptcy Code defines income broadly for purposes of the statement of financial affairs. Doc. 11 at 22. Assuming creditors are technically correct about what debtor should have listed, that still does not establish that the bankruptcy court clearly erred in failing to find fraudulent intent. Debtor could have been understandably confused as to exactly what type of income he was required to report. *Cf. Dranichak v. Rosetti*, 493 B.R. 370, 380 (N.D.N.Y. 2013) ("the Court finds that confusing 'net income' with 'gross income,' as Debtor appears to have done, was merely a neglectful mistake"). Again, the bankruptcy court found that debtor "sincerely attempted to meet the disclosure

- 18 -

requirements necessitated by a bankruptcy filing." Doc. 3-2 at 2611 (R. at 10072).[5] The record does not clearly reflect otherwise.

Regarding the disparities in monthly incomes, it is again not clear that debtor possessed the fraudulent intent or even reckless-ness necessary for denying discharge under § 727(a)(4)(A). The differences were minor enough ($86 for Escoffie, $161.50 for debtor) that they could have been the result of imprecise calcula-tion—not fraud. There was no clear error as to debtor's income-related statements.

Fourth and last, creditors claim that debtor made a false oath by omitting bank accounts from his statement of financial affairs. Doc. 8 at 39. They claim that he admitted it during trial. *Id.* (citing Doc. 3-2 at 2473 (R. at 9934)). However, that exchange during trial indicates that debtor, if his testimony is believed, earnestly thought that he was properly filling out the forms:

> And as I'm reading the document, it basically indicates—it's trying to establish your financial assets, not your bank accounts. And I believe that Ms. Lindauer provided the bank accounts that had balances in them. That's what I—that's how I read this. And, again, I'm not an attorney. But as I read the document, I don't believe that this document is asking in this location for every bank account that I've ever had.

Doc. 3-2 at 2473 (R. at 9934). The bankruptcy court was entitled to believe this testimony and conclude that creditors failed to prove fraudulent intent.

To the extent that debtor made any false statements under oath, the factual record did not require the bankruptcy court to find fraudulent intent or reckless disregard of the truth—an ele-ment of creditors' claim. Their § 727(a)(4)(A) argument does not require reversal.

---

[5] While this language comes from a paragraph in the bankruptcy court's § 727(a)(3) analysis, it is equally applicable to this issue.

- 19 -

25-40520.22937

### 3. Refusal to obey a court order, § 727(a)(6)(A)

Section 727(a)(6)(A) provides the final relevant basis for denying discharge: where "the debtor has refused, in the case . . . to obey any lawful order of the court, other than an order to respond to a material question or to testify." The elements of that exception are (1) the court issued an order directed at the debtor; (2) the order was lawful; (3) the order was not one requiring a response to a material question or to testify; and (4) the debtor refused to obey the order. *In re Wells*, 426 B.R. 579, 608–09 (Bankr. N.D. Tex. 2006). "A debtor forfeits his discharge for refusing to obey a court order only in cases of willful disobedience, and not merely for inadvertence or mistake." *In re Meredith*, No. 3:04-ap-01110, 2005 WL 5468745, at *7 (Bankr. M.D. La. Dec. 29, 2005) (citing *In re Jones*, 490 F.2d 452, 456 (5th Cir. 1974)), *aff'd*, 231 F. App'x 321 (5th Cir. 2007) (unpublished).

At trial, creditors pointed to four of Judge Rhoades's orders that debtor allegedly violated. With respect to each, the bankruptcy court concluded that creditors "failed to sustain their burden and prove by a preponderance of the evidence that [debtor] willfully refused to obey a lawful order of this Court sufficient to deny him a discharge under 11 U.S.C. § 727(a)(6)(A)." Doc. 3-2 at 2616–17 (R. at 10077–78).

On appeal, creditors reassert debtor's noncompliance with the same four orders:

- the Rule 2004 order, Doc. 3-1 at 868;
- the order granting creditors' second motion to extend the deadline for filing complaints under §§ 523 and 727, Doc. 3-2 at 479 (R. at 7940);
- the order granting creditors' motion to compel debtor to complete the Rule 2004 examination, Doc. 3-2 at 970 (R. at 8431); and
- the order granting in part and denying in part creditors' motion to compel discovery and request for sanctions, Doc. 3-3 at 3193 (R. at 13288).

- 20 -

Doc. 8 at 41–42. Creditors make essentially two arguments: first, that debtor refused to sit for his Rule 2004 examination when ordered and as ordered; and second, that debtor refused to produce the documents required by the orders. *See* Doc. 8 at 41–47; Doc. 11 at 25–29.

Debtor does not appear to have refused to sit for the Rule 2004 examination. Creditors point to his assertion (at the beginning of the examination) that he would stay "[f]or five hours today and tomorrow. And that's it. When the clock reaches five hours, I'm done for the day. That's the judge's order." Doc. 3-2 at 483 (R. at 7944). That is indeed what the Rule 2004 order mandated. Doc. 3-1 at 869. Creditors point out that the requirement had been changed by the bankruptcy court's order granting their second motion to extend, which required him to sit "from day to day, until completed by creditors." Doc. 3-2 at 480 (R. at 7940). But in spite of his initial comment, he ultimately did sit for three days. Doc. 3-2 at 481–535 (R. at 7942–96) (May 18, 2020); Doc. 3-2 at 575–630 (R. at 8036–91) (May 19, 2020); Doc. 3-2 at 972–1026 (R. at 8433–87) (August 8, 2020). At trial, he explained the "five hours" statement as being based on an honest misunderstanding of Judge Rhoades's orders, specifically that he was unaware that the judge had "changed her mind." Doc. 3-2 at 2313 (R. at 9774). Judge Searcy was entitled to believe this testimony and find that any failure to comply with the Rule 2004 order was not willful. Even if not, the bankruptcy court could have found that he actually complied with the second order by sitting for the examination until completed by creditors.

Creditors also point out that debtor "did not sit for the Bankruptcy Rule 2004 Examination until over a month after the date ordered by the Bankruptcy Court." Doc. 11 at 28. By making that argument, they blame debtor for an extension that they requested. *In re Triplett*, No. 4:19-bk-42570, Doc. 116 at 6 (Bankr. E.D. Tex. Mar. 25, 2020) (seeking postponement from April 7, 2020, to May 18, 2020, to "allow the Creditors to comply with the Second Order to Extend, which requires the 2004 Examination take place in

- 21 -

25-40520.22939

person at the Court's physical location"). Thus, creditors' arguments about the Rule 2004 examination do not warrant reversal.

They also argue that debtor failed to produce responsive documents after being ordered repeatedly to do so. The Rule 2004 order required debtor to "take any reasonable actions necessary" for creditors to obtain certain documents—listed in exhibit A of that order—and to "produce" any such documents that were "in his possession or control." Doc. 3-1 at 869–70. The subsequent order, granting creditors' second motion to extend, ordered debtor to produce "all documents, materials, and information requested by Creditors, and which are identified in Exhibit 'A' attached to the [Rule 2004 order]." Doc. 3-2 at 479–80 (R. at 7940–41). In short, creditors correctly argue that debtor did not himself produce every document listed in exhibit A. Debtor's counsel, Lindauer, made as much clear at trial:

> Q. So if the 2004 order says you are to produce all documents in Exhibit A that are in your control, does control mean that if you can call the bank to get the information or you can call the IRS to get information, that you are to do that?
>
> A. Yes.
>
> Q. Did Mr. Triplett do that?
>
> A. No. Because you told him not to do it because you said you did not trust the information he would get himself.

*Id.* at 2222 (R. at 9683).

However, as that quoted exchange also shows, Lindauer testified that she and debtor were informed that creditors were going to directly subpoena the requested information from the banks, whether debtor produced it or not. And in his Rule 2004 examination, debtor testified that he believed it to be reasonable to "search high and low" and produce anything in his possession, but not to "go to any expense" to obtain documents that the other party could obtain through subpoena. *Id.* at 489 (R. at 7950). A reasonable factfinder could surely conclude that, in such

25-40520.22940

circumstances, debtor did not fail to "take any reasonable actions necessary" to ensure that creditors obtained the information. He did not need to incur expenses to procure something that would not be used anyway.

Insofar as the second order differed in its requirements—i.e., by not having a "reasonable actions" qualifier—the bankruptcy court still could have found that debtor produced all of the documents required by the second order. When asked about debtor's compliance with the production requirements, Lindauer testified the following:

> But once you told us—or Mr. Reed told us that you all were going to subpoena all of these records yourselves and that if we subpoenaed them, you didn't want them because you didn't trust what we would get, then we didn't go to the trouble to subpoena them.

*Id.* at 2223 (R. at 9684). If creditors did indeed represent that they did not "want" and would not use the documents produced by debtor, then it would be reasonable to interpret the second order as no longer requiring debtor to produce them. They were no longer "requested by Creditors," an express term of the second order. *Id.* at 480 (R. at 7941). Or so Judge Searcy could have reasonably concluded.

Creditors emphasize Judge Rhoades's response made at a hearing after creditors' counsel walked through their version of the events. Judge Rhoades said, "it sounds like you've got some ground to me, already, to file a motion—a complaint seeking denial of discharge." *Id.* at 469 (R. at 7930). However, the factfinder charged with determining whether debtor willfully disobeyed a court order neither was Judge Rhoades nor is this court; it was Judge Searcy. For the same reason, none of Judge Rhoades's orders that were predicated on imperfect compliance with a previous order required Judge Searcy to find that debtor willfully

- 23 -

25-40520.22941

disobeyed a lawful court order.[6] The factual record does not clearly indicate that debtor did, so this court does not find reversal warranted on creditors' § 727(a)(6)(A) arguments.

In sum, none of creditors' arguments on the merits of the discharge, or the bankruptcy court's alleged burden shifting, warrants reversal.

### D. Exhibit 44

Next, creditors argue that the bankruptcy court erred in discounting exhibit 44. Doc. 8 at 50. Exhibit 44 was a compilation of pieces of evidence, largely debtor's prior testimony. The parties agreed for it to be admitted into evidence as part of creditors' case-in-chief. Creditors' issue is that the bankruptcy court characterized their counsel's commentary on Exhibit 44 as "argument" rather than evidence. *Id.* To the extent that it was argument, which creditors do not concede, they argue that any objection to it was waived upon agreement. *Id.*

The bankruptcy court's factual finding was as follows:

> The Court did not find the testimony presented by [creditors'] counsel's reading of Exhibit 44 illustrative of the merits of [creditors'] allegations, as [creditors'] counsel's presentation contained much *argument* not ordinarily admitted into *evidence* comprising a case in chief.

Doc. 3-2 at 2594 (R. at 10055). Although Exhibit 44 was evidence, the bankruptcy court was correct that, at points, creditors' attorney's commentary during the reading of exhibit 44 was more argument than disinterested paraphrasing. *See, e.g.*, *id.* at 2034 (R. at 9495) ("[H]e omitted his ownership interest in . . . Preferred

---

[6] The other two orders that creditors cite—the order granting creditors' motion to compel debtor to complete the Rule 2004 examination (Doc. 3-2 at 970 (R. at 8431)) and the order granting in part and denying in part creditors' motion to compel discovery and request for sanctions (Doc. 3-3 at 3193 (R. at 13,288))—did not impose further document-production duties. It is unclear in what way creditors think that debtor violated them. He paid the $500 sanction required by the latter order. It seems instead that creditors are using the orders as evidence that debtor violated the first two orders—the Rule 2004 order and the order granting their second motion to extend.

- 24 -

Platinum Construction. He omitted his ownership interest in Copper Creek."); *id.* at 2055 (R. at 9516) ("It's either he didn't have them because he didn't maintain them, or he's lying."). The bankruptcy court did not abuse its discretion in discounting such commentary, and creditors point to no indication that the court discounted the actual contents of the exhibit. Nor did agreeing to the admission of exhibit 44 waive any objection to creditors' counsel's editorializing during the reading.

Even if the bankruptcy court ignored exhibit 44 entirely and erred in so doing, that error was harmless. Exhibit 44 was introduced as a substitute for debtor's testimony that creditors would have elicited in their case-in-chief. Creditors acknowledged at oral argument that there were no questions that they would have asked debtor in their case-in-chief that they were unable to ask him on cross-examination. The bankruptcy court would not have reached a different result had it given more weight to exhibit 44 than creditors suggest it did. Accordingly, the bankruptcy court's evidentiary treatment of exhibit 44 does not justify reversal.

### E. Dismissal of motion for sanctions as moot

Finally, creditors argue that the bankruptcy court erred in dismissing their motions for sanctions as moot after it found for debtor on the merits. To summarize the events: debtor filed motions for death-penalty sanctions against creditors. Then, creditors filed motions for (among other things) monetary sanctions against debtor for their attorney fees incurred as a result of debtor's motions for death-penalty sanctions. Doc. 8 at 51–53. The basis for creditors' motions was Rule 9011, which authorizes a bankruptcy court to impose "an appropriate sanction on any attorney, law firm, or party" who commits a violation of 9011(b), including presenting a motion to the court "for any improper purpose." Fed. R. Bankr. P. 9011(b)(1), (c)(1). When the bankruptcy court found for debtor on the merits, it ruled that his death-penalty-sanctions motions were moot. When it so ruled, it also ruled that creditors' sanctions motions were moot.

25-40520.22943

Creditors are correct that their motions for sanctions were not mooted by the finding for debtor on the merits. The merits and the sanctions issue involve separate inquiries. *Cf., e.g.*, *Qureshi v. United States*, 600 F.3d 523, 525 (5th Cir. 2010) ("the court may, notwithstanding dismissal of the underlying action, impose sanctions"). Creditors' motions, essentially, were seeking damages for past conduct (debtor's filing of allegedly frivolous motions), not merely the cessation of ongoing conduct. The cessation does not moot the request for damages.

Debtor argues in response that his motion for death-penalty sanctions also sought attorney fees incurred in connection with the "voluminous amount of frivolous litigation initiated by [creditors] in multiple courts that would have reached millions of dollars." Doc. 10 at 35. In other words, debtor's motion was not moot either. Be that as it may, that is not a reason to affirm the bankruptcy court's dismissal of creditors' motion. Debtor did not appeal the denial of his motion for sanctions, so that is not before this court.

Whether sanctions were actually warranted against debtor is a much broader question, depending on the extent to which debtor was blameworthy for seeking death-penalty sanctions for creditors' conduct over the course of several years and several different litigation proceedings. Given the ambiguity of some of the bankruptcy court's findings on the underlying events, such as whether it actually found that the Valks caused the records to be destroyed, *see supra* subsection II.C.1, this court elects not to decide the merits of the sanctions motion or to express any opinion on it. Instead, that question is to be decided by the bankruptcy court on remand.

### III. Conclusion

For the reasons set forth above, the bankruptcy court's judgment is affirmed in part and reversed in part. As to debtor's discharge and all of the issues pertaining to the discharge, the judgment is affirmed. The court reverses the denial of creditors' motion for sanctions and remands for further consideration in accordance with this opinion.

- 26 -

*So ordered by the court on July 23, 2025.*

J. CAMPBELL BARKER
United States District Judge

25-40520.22945

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

———

Nos. 4:24-cv-00837, 4:24-cv-00838

———

**Keith Black et al.,**
*Appellants,*

v.

**Donald R. Triplett, Jr.,**
*Appellee.*

———

# FINAL JUDGMENT

The court, having rendered its decision by separate opinion and order, enters judgment that the bankruptcy court's decision is affirmed in part and reversed in part. This matter is remanded back to that court. The clerk of this court is directed to close the case.

*So ordered by the court on July 23, 2025.*

J. CAMPBELL BARKER
United States District Judge

- 1 -

25-40520.22946

# TAB 4

Case 4:24-cv-00520-ALM Document 14-24 Filed 09/04/24 Page 1 of 49 PageID #: 5
Case 22-34025-sgj11 Document 1-924 Filed 09/04/2024 Page 33 of 422
Document    Page 1 of 49



EOD
09/04/2024

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **DONALD R. TRIPLETT, JR.** | § | Case No. 19-42570 |
| xxx-xx-8753 | § | |
| | § | |
| Debtor | § | Chapter 7 |

| | | |
|---|---|---|
| KEITH BLACK | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 20-04057 |
| | § | |
| DONALD R. TRIPLETT, JR. | § | |
| | § | |
| Defendant | § | |

| | | |
|---|---|---|
| JEREMY HALTOM | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 20-04059 |
| | § | |
| DONALD R. TRIPLETT, JR. | § | |
| | § | |
| Defendant | § | |

## OMNIBUS FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court issues these omnibus findings of fact and law after conducting a joint

trial in the above adversary proceedings of the following:

25-40520.8

> A.    "First Amended Complaint Objecting to Discharge" filed by Plaintiff, Keith Black;[1] and
>
> B.    "First Amended Complaint Objecting to Discharge" filed by Plaintiff, Jeremy Haltom.[2]

These are referred to collectively as the "Trial Complaints."  Plaintiffs' Trial Complaints allege grounds exists to deny Defendant, Donald R. Triplett, Jr.,[3] a discharge pursuant to 11 U.S.C § 727(a)(6)(A), § 727(a)(4), and § 727(a)(3).  Defendant denies Plaintiffs' allegations.  Both parties appeared through counsel at the joint trial.

These findings dispose of all remaining issues pending before the Court in the above adversaries regarding Defendant's entitlement to a discharge pursuant to 11 U.S.C § 727.  These findings also dispose of all issues pending before the Court in the above adversaries contained in multiple motions filed by all parties as follows:

> A.    "Motion for Sanctions" filed by Defendant against Plaintiff, Keith Black;[4]
>
> B.    "Motion To Strike and For Sanctions Under Bankruptcy Rule 9011" filed by Plaintiff, Keith Black;[5]
>
> C.    "Motion for Sanctions" filed by Defendant against Plaintiff, Jeremy Haltom;[6] and

---

[1] *Black*, Adv. No. 20-4057, ECF No. 145.

[2] *Haltom*, Adv. No. 20-4059, ECF No. 147.

[3] Defendant, Donald R. Triplett, Jr., is at times referred to herein as the Debtor.

[4] *Black*, Adv. No. 20-4057, ECF No. 141.

[5] *Black*, Adv. No. 20-4057, ECF No. 189.

[6] *Haltom*, Adv. No. 20-4059, ECF No. 143.

25-40520.9

> D. "Motion To Strike and For Sanctions Under Bankruptcy Rule 9011" filed by Plaintiff, Jeremy Haltom.[7]

These are referred to collectively as the "Sanctions Motions." Though the Sanctions Motions were not heard at trial, Defendant repeatedly attempted to raise the issues they present despite the Court's clearly stated parameters.[8] Because the Court finds Defendant is entitled to a discharge pursuant to 11 U.S.C § 727, the Sanctions Motions are now moot.

## FINDINGS OF FACT[9]

### I. Previously Established Facts

Certain facts were previously established in these adversary proceedings as set forth in the Court's prior "Omnibus Order Denying Plaintiffs' Motions for Summary Judgment But Establishing Certain Material Facts"[10] under the guidelines of Local District Court Rule CV-56, as incorporated by Local Rule of Bankruptcy Procedure

---

[7] *Haltom*, Adv. No. 20-4059, ECF No. 190.

[8] The scope of the joint trial was to hear and determine the Trial Complaints only, not the Sanctions Motions. As explained on the record to the parties, this was to prevent distraction from and obfuscation by the parties of their respective evidentiary presentations on the merits of the Trial Complaints.

[9] Unless indicated specifically otherwise, all findings of fact are applicable to and made in both above styled adversary proceedings.

[10] *Black*, Adv. No. 20-4057, ECF No. 206; *Haltom*, Adv. No. 20-4059, ECF No. 207.

25-40520.10

7056(d).[11] Incorporated as part of these omnibus findings, the previously established

facts are as follows:

*Underlying Bankruptcy Case*

1.    The Court takes judicial notice of the docket in the underlying bankruptcy case.[12]

2.    Debtor filed a voluntary petition for Chapter 7 relief on September 19, 2019.[13]

3.    Debtor filed the petition without Schedules, Statements, and other required documents.[14]

4.    Mark A. Weisbart (the "Trustee") was assigned as the Chapter 7 Trustee on September 20, 2019.[15]

---

[11] Local District Court Rule CV-56 directs a movant to include a Statement of Undisputed Material Facts and to support such a statement with "appropriate citations to proper summary judgment evidence." It directs a respondent to ensure that any response "should be supported by appropriate citations to proper summary judgment evidence." The rule states:

> (c) **Ruling**. In resolving the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the response filed in opposition to the motion, as supported by proper summary judgment evidence. The court will not scour the record in an attempt to unearth an undesignated genuine issue of material fact.

Thus, any failure by a respondent to controvert the material facts set forth in any of the motions or to support such a challenge by references to proper summary judgment evidence, results in the facts as claimed and supported by admissible evidence by the movant "admitted to exist without controversy." E.D. TEX. LOCAL R. CV–56(c).

[12] *In re Triplett*, No. 19-42570.

[13] *In re Triplett*, No. 19-42570, ECF No. 1.

[14] *Id.*

[15] *In re Triplett*, No. 19-42570, ECF No. 4.

25-40520.11

5.     Debtor filed his Original Schedules,[16] Chapter 7 Statement of Current Monthly Income Form 122A-1,[17] and Statement of Financial Affairs ("SOFA") on October 15, 2019.[18]

6.     In his Schedules, Debtor valued his home at $210,000.00.[19]  He reported less than $50.00 in several checking accounts, and no interest in any retirement or investment accounts as of his petition date.[20]

7.     On his SOFA, Debtor identified a number of litigation proceedings to which he was a party in the year preceding his bankruptcy.[21]  This litigation included several lawsuits by and against the Debtor, Ron Valk, Shawn Valk, and the Valks' business, Platinum Construction.  The list of legal proceedings also included lawsuits brought by the Plaintiffs, Jeremy Haltom and Keith Black, against the Debtor.[22]

8.     These legal proceedings include the following:

   a. *Black v. DFW Design & Remodeling, LLC, et. al.*, No. DC-18-14952, 162nd Civil District Court, Dallas County.

   b. *Haltom v. DFW Design & Remodeling, LLC, et. al.*, No. DC-17-16085, 298th Civil District Court, Dallas County.

   c. *Haltom v. DFW Design & Remodeling, LLC, et. al.*, No.18-01418, 68 Civil District Court, Dallas County.

---

[16] *In re Triplett*, No. 19-42570, ECF No. 27.

[17] *In re Triplett*, No. 19-42570, ECF No. 28.

[18] *In re Triplett*, No. 19-42570, ECF No. 29.

[19] *In re Triplett*, No. 19-42570, 1, ECF No. 27.

[20] *Id.* at 3-4.

[21] *In re Triplett*, No. 19-42570, 3-7, ECF No. 32.

[22] *Id.*

5

d. *Valk v. Triplett, et. al.*, No. 1-18-0257, 382nd Judicial District Court, Rockwall County.

e. *Valk v. Triplett, et. al.*, No. 1-18-0096, 439th Judicial District Court, Rockwall County.

f. *Valk, et. al. v. Triplett*, No. 3:18-cv-01443-G, United States District Court for the Northern District of Texas.

g. *Triplett v. Valk, et. al.*, No. DC-18-05263, 162nd Civil District Court, Dallas County.

9. On Schedule C, Debtor claimed his home and various household items as exempt from creditors.[23]

10. On Schedule A/B, Debtor stated that Ron Valk owed him an unknown amount of money.[24]

11. Debtor filed an Amended SOFA and Amended Schedule A/B on October 17, 2019.[25]

12. The Trustee held the § 341 creditors meeting on November 13, 2019.[26]

13. Former Plaintiffs, Shawn Valk and Ron Valk (the "Valks"), filed a "Motion for Examination Under Rule 2004" (the "2004 Motion") on November 18, 2019.[27] On December 13, 2019, Jeremy Haltom and Keith Black both respectively filed a

---

[23] *In re Triplett*, No. 19-42570, 9-10, ECF No. 27.

[24] *Id*. at 5.

[25] *In re Triplett*, No. 19-42570, ECF Nos, 32, 33.

[26] *In re Triplett*, No. 19-42570.

[27] *In re Triplett*, No. 19-42570, ECF No. 50.

25-40520.13

"Joinder in Creditor Shawn Valk and Ron Valk's Motion for Examination Under Bankruptcy Rule 2004."[28]

14.     The Valks filed a "Motion to Extend Deadline for Filings Complaints under 11 U.S.C. §§ 523 and 727" on December 13, 2019,[29] which Mr. Haltom and Mr. Black joined on December 16, 2019.[30]  Debtor objected on December 27, 2019.[31] The Court granted the motion on January 31, 2020.[32]

15.     The Court granted the 2004 Motion filed by the Valks, and joined by Mr. Haltom and Mr. Black, on February 3, 2020.[33]  The Court ordered Debtor to "submit to a ten (10) hour examination that may be split into two different days (the "Examination"), to be taken by the Plaintiffs.[34]

16.     Plaintiff, Shawn Valk, filed a "Complaint for Declaratory Relief and to Determine the Allocation and Distribution of Funds Upon Winding Up of TV Arrowhead, LLC" on February 25, 2020.[35]  Plaintiffs, Ron Valk, Jeremy Haltom, and Keith Black, were not named parties in this proceeding.

17.     Plaintiffs filed a "Second Motion to Extend Time to File Complaint to Determine Dischargeability" on February 28, 2020.[36]  The Court granted the motion on March 16, 2020.[37]

---

[28] *In re Triplett*, No. 19-42570, ECF Nos. 63, 64.

[29] *In re Triplett*, No. 19-42570, ECF No. 62.

[30] *In re Triplett*, No. 19-42570, ECF Nos. 69, 73.

[31] *In re Triplett*, No. 19-42570, ECF No. 72.

[32] *In re Triplett*, No. 19-42570, ECF No. 97.

[33] *In re Triplett*, No. 19-42570, ECF No. 99.

[34] *Id*. at 2, ¶ 3.

[35] *In re Triplett*, No. 19-42570, ECF No. 103.

[36] *In re Triplett*, No. 19-42570, ECF No. 104.

[37]  *In re Triplett*, No. 19-42570, ECF No. 113.

25-40520.14

18. On May 18, 2020, an attorney for Plaintiffs conducted a 2004 Examination of Debtor.

    a. When questioned during the 2004 Examination about whether he received any 1099s for 2015, Debtor stated, "I probably got them, but your clients [Plaintiffs] destroyed my documents."[38]

    b. Debtor also denied being a member, agent, or employee of Copper Creek, which he described as "Doni's Company."[39]

19. Plaintiffs filed a joint "Motion to Compel Debtor to Complete 2004 Examination" (the "Motion to Compel") on June 2, 2020.[40] Debtor objected to the Motion to Compel on June 23, 2020.[41]

20. On July 14, 2020, the Court held a hearing on the Motion to Compel filed jointly by all Plaintiffs, which it then granted on July 21, 2020.[42] The Court ordered Debtor to "re-appear and continue to give testimony and be deposed for no longer than six (6) hours, on the record, by Creditors in connection with Triplett's Rule 2004 examination...If additional time is needed, Triplett shall appear, testify, and be deposed by Creditors in connection with Triplett's Rule 2004 examination for no longer than three (3) hours, on the record . . ."[43]

---

[38] *Black*, Adv. No. 20-4057, 4, Ex. L, ECF No. 170-12; *Valk*, Adv. No. 20-04058, 4, Ex. L, ECF No. 190-12; *Haltom*, Adv. No. 20-4059, 4, Ex. L, ECF No. 172-12.

[39] *Black*, Adv. No. 20-4057, 33, Ex. L, ECF No. 170-12; *Valk*, Adv. No. 20-04058, 33, Ex. L, ECF No. 190-12; *Haltom*, Adv. No. 20-4059, 33, Ex. L, ECF No. 172-12.

[40] *In re Triplett*, No. 19-42570, ECF No. 124.

[41] *In re Triplett*, No. 19-42570, ECF No. 130.

[42] *In re Triplett*, No. 19-42570, ECF No. 152. This order is later referred to herein as the "Order Granting Creditors' Motion to Compel Debtor to Complete 2004 Examination." *See* Ex. 20.

[43] *Id*. at 1-2, ¶ 2.

25-40520.15

21. Plaintiffs collectively filed a "Motion to Compel Discovery and Request for Sanctions" (the "Motion to Compel Discovery") on September 29, 2020.[44] Debtor objected to the Motion to Compel Discovery on October 20, 2020.[45]

22. On December 3, 2020, Debtor filed a "Motion to Stay Bankruptcy and Adversary Proceedings Pending Resolution of Criminal Proceedings and, Alternative, Motion for Protection."[46] The Court denied the motion on February 23, 2021.[47]

23. After a hearing on December 4, 2020, the Court entered an "Order Granting in Part/Denying in Part Creditors' Motion to Compel Discovery and Request for Sanctions."[48] The Court ordered Debtor to pay Plaintiffs $500.00 for reasonable attorneys' fees, and denied the remainder of the Motion to Compel Discovery.[49]

24. On August 3, 2021, the Trustee filed a "Motion to Sell Estate Claims,"[50] followed by an "Amended Motion to Sell" filed on August 12, 2021.[51] In this motion, the Trustee sought permission to sell certain claims owned by Debtor's estate against recipients of allegedly avoidable transfers to the Valks. These included the following:[52]

    a. Pending counterclaims and causes of action asserted by Debtor in *Ron Valk v. Jose Doniceth Escoffie et al.*, No. 1-18-0096, pending in the 439th Judicial District Court of Rockwall County, Texas.

---

[44] *In re Triplett*, No. 19-42570, ECF No. 171.

[45] *In re Triplett*, No. 19-42570, ECF No. 174.

[46] *In re Triplett*, No. 19-42570, ECF No. 195.

[47] *In re Triplett*, No. 19-42570, ECF No. 222.

[48] *In re Triplett*, No. 19-42570, ECF No. 196.

[49] *Id*.

[50] *In re Triplett*, No. 19-42570, ECF No. 247.

[51] *In re Triplett*, No. 19-42570, ECF No. 252.

[52] *Id*. at 2, ¶ 4.

25-40520.16

b. Pending claims and causes of action asserted by the Debtor, individually, and Debtor's d/b/a DFW Design & Remodeling, LLC in that certain action styled *Donald Triplett et al. v. Shawn Valk et al.*, Cause No. DC-18-05263, pending in the 162nd Judicial District Court of Dallas County, Texas.

c. Pending counterclaims and causes of action asserted by the Debtor, individually, and Debtor's d/b/a DFW Design & Remodeling, LLC in that certain action styled *Mike Anderson v. Don Triplett, et al.*, Cause No. DC 18-01339, pending in the 193rd Judicial District Court of Dallas County, Texas.

d. Potential avoidance actions 11 U.S.C. §§ 547, 554, and 550, and other claims and causes of action against the Debtor, his non-filing spouse Jose Doniceth Escoffie, and their respective and/or related entities under 11 U.S.C. §§ 547, 554, and 550.

e. Certain liens recorded by the Debtor, including: (1) Lien Affidavit against Ronald Valk d/b/a Platinum Construction and Platinum Storage Maple LLC in the real property records of Dallas County, Doc. 201700333379, (2) Lien Affidavit against Ronald Valk d/b/a Platinum Construction and Platinum Storage LLC in the real property records of Rockwall County, Doc. 20170000021975, and (3) Lien Affidavit against Ronald Valk d/b/a Platinum Construction and Platinum Storage Maple LLC in the real property records of Dallas County, Doc. 201700333378.

25. Debtor objected to the "Amended Motion to Sell" on August 25, 2021.[53] On August 30, 2021, the Court approved the Trustee's sale of these claims to Plaintiffs, Shawn Valk d/b/a Platinum Construction, and Ronald Valk d/b/a Platinum Construction.[54]

26. On October 26, 2021, the Trustee filed a Report of Sale of estate claims and rights to Shawn Valk d/b/a/ Platinum Construction and Ronald Valk d/b/a Platinum Construction, for $50,000.00.[55]

---

[53] *In re Triplett*, No. 19-42570, ECF No. 256.

[54] *Id*.

[55] *In re Triplett*, No. 19-42570, ECF No. 271.

25-40520.17

27.     The Trustee filed a Final Report on April 28, 2023.[56]

*Adversary Proceedings at Issue*

28.     On December 11, 2020, the Plaintiffs each filed a "Motion to Bifurcate Their Claims Under 11 U.S.C. § 727 From Their Claims Under 11 U.S.C. § 523 and Those Arising Under State Law" in their respective cases.[57]

29.     On January 26, 2021, the Court entered in each adversary proceeding an "Order Granting Plaintiffs' Motion to Bifurcate Claims; Granting in Part and Denying in Part Defendant's Motion to Stay Adversary Proceedings Pending Resolution of Criminal Proceedings; Severing Counts 8-9-10-11 of Complaint into Separate Adversary Proceeding; and Abating New Adversary Proceeding Regarding § 523 Claims."[58]

30.     Plaintiffs each filed a "Motion to Compel Deposition of Jose Doniceth Escoffie" on May 28, 2021, which led to a discovery dispute.[59]  Debtor objected to the motions on June 11, 2021.[60]  After the Court granted the motions in part, Plaintiffs each filed a subpoena on July 2, 2021,[61] followed by a "Motion to Hold Debtor in Contempt for Violating [Order Granting in Part Plaintiff's Motion to Compel Deposition of Jose Doniceth Escoffie]," filed on July 16, 2021.[62]  Debtor objected to these motions, and filed his "Motion to Hold Brandon Tittle, Plaintiffs' Counsel, in Contempt" (the "Debtor's Contempt Motion"), on July 28, 2021.[63]  Plaintiffs objected to Debtor's Contempt Motion on August 10, 2021.[64]  The Court denied both parties' motions on September 27, 2021.

---

[56] *In re Triplett*, No. 19-42570, ECF No. 314.

[57] *Black*, Adv. No. 20-4057, ECF No. 21; *Haltom*, Adv. No. 20-4059, ECF No. 21.

[58] *Black*, Adv. No. 20-4057, ECF No. 28; *Haltom*, Adv. No. 20-4059, ECF No. 28.

[59] *Black*, Adv. No. 20-4057, ECF No. 48; *Haltom*, Adv. No. 20-4059, ECF No. 48.

[60] *Black*, Adv. No. 20-4057, ECF No. 50; *Haltom*, Adv. No. 20-4059, ECF No. 50.

[61] *Black*, Adv. No. 20-4057, ECF No. 57; *Haltom*, Adv. No. 20-4059, ECF No. 57.

[62] *Black*, Adv. No. 20-4057, ECF No. 59; *Haltom*, Adv. No. 20-4059, ECF No. 59.

[63] *Black*, Adv. No. 20-4057, ECF No. 61; *Haltom*, Adv. No. 20-4059, ECF No. 62.

[64] *Black*, Adv. No. 20-4057, ECF No. 62; *Haltom*, Adv. No. 20-4059, ECF No. 63.

25-40520.18

31. On November 26, 2021, the Debtor objected to Plaintiffs' subpoena of Mr. Escoffie.[65]

32. Mr. Escoffie filed his own "Motion to Quash and/or Modify Subpoena to Nonparty" (the "Motion to Quash") that same day.[66]

33. On December 3, 2021, Plaintiffs filed a "Motion for Sanctions against Donald R. Triplett, Jr., For the Unauthorized Practice of Law," for allegedly drafting Mr. Escoffie's Motion to Quash.[67]

34. After a hearing on December 6, 2021, the Court entered an "Order Granting in Part Motions to Quash and/or Modify Subpoena to Nonparty for Deposition of Jose Doniceth Escoffie" on December 7, 2021, ordering Mr. Escoffie to participate in a deposition.[68]

35. On January 10, 2022, the Court entered an "Order Granting in Part and Denying in Part Plaintiff's Amended Motion for Sanctions Against Donald R. Triplett, Jr., For the Unauthorized Practice of Law."[69]

36. On February 14, 2022, the Plaintiffs each filed an "Emergency Motion for Protective Order," contending a twenty (20) day deposition notice submitted by Defendant was inappropriate.[70] The Court held a hearing on February 17, 2022, where Defendant withdrew the deposition notices, rendering the motions moot.

---

[65] *Black*, Adv. No. 20-4057, ECF No. 73; *Haltom*, Adv. No. 20-4059, ECF No. 75.

[66] *Black*, Adv. No. 20-4057, ECF No. 74; *Haltom*, Adv. No. 20-4059, ECF No. 76.

[67] *Black*, Adv. No. 20-4057, ECF No. 81; *Haltom*, Adv. No. 20-4059, ECF No. 83.

[68] *Black*, Adv. No. 20-4057, ECF No. 91; *Haltom*, Adv. No. 20-4059, ECF No. 93.

[69] *Black*, Adv. No. 20-4057, ECF No. 94; *Haltom*, Adv. No. 20-4059, ECF No. 96.

[70] *Black*, Adv. No. 20-4057, ECF No. 99; *Haltom*, Adv. No. 20-4059, ECF No. 101.

25-40520.19

37.    On February 18, 2022, the Valks filed another subpoena concerning Mr. Escoffie.[71]

38.    On March 6, 2022, Mr. Escoffie filed another "Motion to Quash and/or Modify Subpoenas to Nonparties."[72]

39.    On March 10, 2022, the Court entered an "Order Granting in Part Motion to Quash and/or Modify Subpoenas to Parties," ordering that the documents Plaintiffs sought via the subpoenas were discoverable and should be produced by Mr. Escoffie, subject to a number of conditions.[73]

40.    On April 11, 2022, the Plaintiffs each filed: (1) "Plaintiffs' Motion for Protective Order Against Subpoena Issued to Sonia Paleo Garcia;"[74] and (2) "Motion for Protective Order Against Subpoena Issued to Donald Southerland."[75]

41.    Sonia Paleo Garcia was a former employee of the Debtor subsequently employed by the Valks.[76]

42.    On April 15, 2022, the Court entered an "Order on Motions for Protective Orders," denying the motions made by the Plaintiffs on behalf of Ms. Garcia and Mr. Southerland.[77]

43.    On June 14, 2022, Defendant filed another "Motion for Sanctions" against Plaintiffs and their counsel, Brandon J. Tittle.[78]

---

[71] *Valk*, Adv. No. 20-5058, ECF No. 112.

[72] *Valk*, Adv. No. 20-5058, ECF No. 117.

[73] *Valk* , Adv. No. 20-5058, ECF No. 120.

[74] *Black*, Adv. No. 20-4057, ECF No. 113; *Haltom*, Adv. No. 20-4059, ECF No. 114.

[75] *Black*, Adv. No. 20-4057, ECF No. 114; *Haltom*, Adv. No. 20-4059, ECF No. 102.

[76] *Black*, Adv. No. 20-4057, 46, Ex. L, ECF No. 170-12.

[77] *Black*, Adv. No. 20-4057, ECF No. 121; *Haltom*, Adv. No. 20-4059, ECF No. 123.

[78] *Black*, Adv. No. 20-4057, ECF No. 128; *Haltom*, Adv. No. 20-4059, ECF No. 130.

25-40520.20

44.    On June 21, 2022, the Court entered an "Order Dismissing Defendant's Motion for Sanctions" because the motion did not contain the requisite negative notice language pursuant to LBR 7007.[79]

45.    On June 23, 2022, Defendant filed a "Motion to Compel Deponent Sonia Garcia and for Sanctions," which he amended on June 24, 2022.[80]  Plaintiffs each filed a "Motion to Quash Subpoena, or in the alternative Motion for Protective Order" on behalf of Ms. Garcia on June 24, 2022.[81]

46.    Debtor filed a second "Motion for Sanctions" against Plaintiffs and their counsel, Brandon J. Tittle, on June 28, 2022.[82]  The Court entered interim orders in each respective adversary deferring consideration of the motion until trial for these proceedings.[83]

47.    On June 29, 2022, the Court entered a "Sua Sponte Order on Discovery Motions Regarding Deposition of Sonia Paleo Garcia," ordering Plaintiffs to file amended complaints in each of their respective cases, and Debtor to file an amended answer in each case.[84]

48.    Plaintiffs filed a "First Amended Complaint to Object to Discharge" on July 12, 2022.[85]

---

[79] *Black*, Adv. No. 20-4057, ECF No. 129; *Haltom*, Adv. No. 20-4059, ECF No. 131.

[80] *Black*, Adv. No. 20-4057, ECF No. 130; *Haltom*, Adv. No. 20-4059, ECF No. 132.

[81] *Black*, Adv. No. 20-4057, ECF No. 137; *Haltom*, Adv. No. 20-4059, ECF No. 139.

[82] *Black*, Adv. No. 20-4057, ECF No. 141; *Haltom*, Adv. No. 20-4059, ECF No. 143.

[83] *Black*, Adv. No. 20-4057, ECF No. 162; *Haltom*, Adv. No. 20-4059, ECF No. 165.

[84] *Black*, Adv. No. 20-4057, ECF No. 142; *Haltom*, Adv. No. 20-4059, ECF No. 144.

[85] *Black*, Adv. No. 20-4057, ECF No. 145; *Haltom*, Adv. No. 20-4059, ECF No. 147.

25-40520.21

49.    Defendant filed his "First Amended Answer" on July 26, 2022.[86]

50.    On August 2, 2022, Defendant served deposition notices upon each of the Plaintiffs.[87]

51.    On August 4, 2022, the Plaintiffs each filed an "Emergency Motion for Protective Order" seeking to avoid depositions.[88]

52.    On August 8, 2022, the Court entered an "Order Granting and Denying in Part Discovery Motions and Imposing Sua Sponte Meet and Confer Requirement," finding Debtor was entitled to take depositions of each of the Plaintiffs, and again ordered Plaintiffs, Defendant, and their respective counsel to comply with the meet and confer requirement pursuant to Local Rule CV-7(h) and (i).[89]

53.    On August 13, 2022, Defendant filed an "Expedited Motion to Compel Deposition; Alternatively, Motion to Amend Scheduling Order."[90]  The Court granted the motion on August 18, 2022.[91]

54.    On August 14, 2022, Defendant filed a "Second Notice of Intention to Take Oral Deposition of Plaintiff Ron Valk."[92]

---

[86] *Black*, Adv. No. 20-4057, ECF No. 150; *Haltom*, Adv. No. 20-4059, ECF No. 152.

[87] *Black*, Adv. No. 20-4057, ECF No. 151; *Haltom*, Adv. No. 20-4059, ECF No. 153.

[88] *Black*, Adv. No. 20-4057, ECF No. 152; *Haltom*, Adv. No. 20-4059, ECF No. 154.

[89] *Black*, Adv. No. 20-4057, ECF No. 154; *Haltom*, Adv. No. 20-4059, ECF No. 156.

[90] *Black*, Adv. No. 20-4057, ECF No. 156; *Haltom*, Adv. No. 20-4059, ECF No. 158.

[91] *Black*, Adv. No. 20-4057, ECF No. 161; *Haltom*, Adv. No. 20-4059, ECF No. 163.

[92] *Valk*, Adv. No. 20-4058, ECF No. 182.

25-40520.22

55. On August 17, 2022, Defendant filed a: (1) "Motion to Compel Re-deposition of Deponent Shawn Valk";[93] and (2) "Motion for Sanctions" against Shawn Valk and Plaintiffs' counsel, Brandon J. Tittle.[94]

56. On August 18, 2022, the Court entered an "Interim Order Regarding Motion for Sanctions, Compelling Deposition of Sonia Garcia, and Sua Sponte Order Amending Scheduling Order in Case 20-4058."[95] The Court deferred hearing Defendant's sanctions motions until trial, again ordered Ms. Garcia to be deposed by Defendant, and extended the discovery deadline in Adv. No. 20-4058 to allow for the timely deposition of Ms. Garcia.

57. Plaintiffs filed summary judgment motions on September 11, 2022.[96]

58. On October 20, 2022, Defendant filed a "Motion to Strike Plaintiffs' Expert Witness," in which Defendant sought to have Mr. Donald Southerland struck as an expert witness.[97] The Court entered an "Omnibus Order Dismissing Motions to Strike Plaintiffs' Expert Witness" on November 7, 2022.[98]

59. On November 4, 2022, Plaintiffs filed the "Creditors' Motion to Strike and Motion for Sanctions."[99] The Court dismissed the motion on November 7, 2022 for failure to comply with the meet and confer requirement under [Local Rule] CV-7(h) and (i).[100]

---

[93] *Valk*, Adv. No. 20-4058, ECF No. 183.

[94] *Valk*, Adv. No. 20-4058, ECF No. 184.

[95] *Black*, Adv. No. 20-4057, ECF No. 163; *Haltom*, Adv. No. 20-4059, ECF No. 164.

[96] *Black*, Adv. No. 20-4057, ECF No. 170; *Haltom*, Adv. No. 20-4059, ECF No. 172.

[97] *Black*, Adv. No. 20-4057, ECF No. 172; 196; *Haltom*, Adv. No. 20-4059, ECF No. 174.

[98] *Black*, Adv. No. 20-4057, ECF No. 176; *Haltom*, Adv. No. 20-4059, ECF No. 178.

[99] *Black*, Adv. No. 20-4057, ECF No. 175; *Haltom* Adv. No. 20-4059, ECF No. 177.

[100] *Black*, Adv. No. 20-4057, ECF No. 177; *Haltom*, Adv. No. 20-4059, ECF No. 179.

25-40520.23

60.   On November 7, 2022, Defendant filed an "Amended Motion to Strike Plaintiffs' Expert Witness."[101]  The Court entered an order granting the motion on March 9, 2023.[102]

61.   On November 8, 2022, Plaintiffs again filed a "Motion to Strike and Motion for Sanctions."[103]  On May 3, 2023, the Court entered an "Omnibus Order Denying Plaintiffs' Motions to Strike and For Sanctions."[104]

62.   Defendant filed a "Motion for Summary Judgment" on November 13, 2022.[105]

63.   On December 12, 2022, Plaintiffs filed a "Motion to Strike and For Sanctions Under Bankruptcy Rule 9011 Against Donald R. Triplett, Jr."[106]  On May 4, 2023, the Court entered an "Interim Order Regarding Motions to Strike and For Sanctions Under Bankruptcy Rule 9011 Against Donald R. Triplett, Jr."[107]  The Court deferred hearing the motions until trial for the adversary proceedings.

64.   On March 22, 2023, the Court entered an "Omnibus Order Denying Defendant's Motions for Summary Judgment."[108]

65.   On May 5, 2023, Defendant filed another "Motion to Strike," this time concerning particular summary judgment evidence filed by Plaintiffs.[109]  The Court dismissed

---

[101] *Black*, Adv. No. 20-4057, ECF No. 178; *Haltom*, Adv. No. 20-4059, ECF No. 180.

[102] *Black*, Adv. No. 20-4057, ECF No. 192; *Haltom*, Adv. No. 20-4059, ECF No. 193.

[103] *Black*, Adv. No. 20-4057, ECF No. 179; *Haltom*, Adv. No. 20-4059, ECF No. 181.

[104] *Black*, Adv. No. 20-4057, ECF No. 196; *Haltom*, Adv. No. 20-4059, ECF No. 197.

[105] *Black*, Adv. No. 20-4057, ECF No. 182; *Haltom*, Adv. No. 20-4059, ECF No. 184.

[106] *Black*, Adv. No. 20-4057, ECF No. 189; *Haltom*, Adv. No. 20-4059, ECF No. 190.

[107] *Black*, Adv. No. 20-4057, ECF No. 198; *Haltom*, Adv. No. 20-4059, ECF No. 199.

[108] *Black*, Adv. No. 20-4057, ECF No. 194; *Haltom*, Adv. No. 20-4059, ECF No. 195.

[109] *Black*, Adv. No. 20-4057, ECF No. 199; *Haltom*, Adv. No. 20-4059, ECF No. 200.

25-40520.24

the motion for failure to meet notice requirements pursuant to LBR 7007 and LBR 9013.[110]

67.     On May 22, 2023, Defendant re-filed the "Motion to Strike."[111]

## II. Facts Established at Trial

68.     Mark Weisbart, the Chapter 7 Trustee of Defendant's bankruptcy case, is not a party to these proceedings.

69.     The Court has issued numerous written opinions in these cases, including the following:

   a. *Halton v. Triplett (In re Triplett),* Nos. 19-42570, 20-04059, 2022 Bankr. LEXIS 64, 2022 WL 96598 (Bankr. E.D. Tex. 2022);
   b. *Black v. Triplett (In re Triplett)*, Nos. 19-42570, 20-4057, 20-4058, 20-4059, 2022 Bankr. LEXIS 2256, 2022 WL 3364953 (Bankr. E.D. Tex. 2022);
   c. *Black v. Triplett (In re Triplett)*, 645 B.R. 196 (Bankr. E.D. Tex. 2022);
   d. *Black v. Triplett (In re Triplett)*, Nos. 19-42570, 20-04057, 20-04058, 20-04059, 2023 Bankr. LEXIS 1181, 2023 WL 3222677 (Bankr. E.D. Tex. 2023); and
   e. *Black v. Triplett (In re Triplett)*, Nos. 19-42570, 20-04057, 20-04058, 20-04059, 2023 Bankr. LEXIS 1871, 2023 WL 4785640  (Bankr. E.D. Tex. 2023).

70.     On July 27, 2023, the Court entered the "Omnibus Order Denying Defendant's Motions to Strike."[112]

71.     On October 4, 2023, the Court conducted a pre-trial conference after which it entered the "Final Scheduling Order" scheduling a joint trial to be held starting April 15, 2024 at 9:30 a.m.[113]  Prior to the start of trial, the parties were required to confer and submit a joint proposed pre-trial order by March 15, 2024.[114]  The

---

[110] *Black*, Adv. No. 20-4057, ECF No. 202; *Haltom*, Adv. No. 20-4059, ECF No. 203.

[111] *Black*, Adv. No. 20-4057, ECF No. 203; *Haltom*, Adv. No. 20-4059, ECF No. 204.

[112] *Black*, Adv. No. 20-4057, ECF No. 208; *Haltom*, Adv. No. 20-4059, ECF No. 209.

[113] *Black*, Adv. No. 20-4057, ECF No. 216; *Haltom*, Adv. No. 20-4059, ECF No. 217.

[114] *Id*.

25-40520.25

parties were also required by April 1, 2024 to file any objections to designated exhibits or depositions, to submit proposed findings of fact and conclusions of law, and to file any legal briefs.[115]

72.    The Court entered "Joint Pre-Trial Orders" on April 2, 2024.[116]  The parties only managed to make a single fact stipulation in the Joint Pre-Trial Orders, agreeing to the filing date of Defendant's voluntary petition.

73.    Prior to trial, both parties filed exhibit and witness lists as required.[117]  Plaintiffs' original exhibit list, as filed electronically, contained exhibits without labels.  For clarity of the record, Plaintiffs, at the Court's request, re-filed their exhibit list with properly labeled exhibits to which the Court refers where indicated in these findings.[118]  Similarly, Defendant's exhibit list omitted their proposed "Exhibit Y", a copy of which was subsequently filed as a supplement to Defendant's exhibit list.[119]

74.    Both parties filed objections to various of the opposing party's exhibits.  All these objections were heard, and resolved, as set forth on the trial record.  All evidentiary rulings on that trial record are here incorporated fully into these findings and conclusions.

75.    The following of Plaintiffs' exhibits were admitted:  1 through 26, and 30 through 44.  All other Plaintiffs' exhibits, if any, were either not offered or were not admitted.  No offer of proof was made by Plaintiffs of any exhibits excluded.

76.    The following of Defendant's proposed exhibits were admitted: C, E, F, G, H, I, L,T, U, HH, and II.  Separately, Exhibit J was admitted initially at trial but later stricken from the record after trial by separate order and is not part of evidence in the trial record.  All other Defendant's exhibits, if any, were either not offered or were not admitted.  No offer of proof was made by Defendant of any exhibits excluded.

---

[115] *Id.*

[116] *Black*, Adv. No. 20-4057, ECF No. 226; *Haltom*, Adv. No. 20-4059, ECF No. 227.

[117] *Black*, Adv. No. 20-4057, ECF Nos. 218 and 219; *Haltom*, Adv. No. 20-4059, ECF Nos. 219 and 220.

[118] *Black*, Adv. No. 20-4057, ECF No. 236; *Haltom*, Adv. No. 20-4059, ECF No. 237.

[119] *Black*, Adv. No. 20-4057, ECF No. 231; *Haltom*, Adv. No. 20-4059, ECF No. 232.

25-40520.26

77.    At the start of trial, Plaintiffs appeared and sought to call Defendant as their first witness. However, Defendant was not present in the courtroom and had not been subpoenaed by Plaintiffs. This failure to subpoena is astonishing considering the length of time these proceedings have been pending, their contentious nature, that trial was set approximately six months in advance, and that numerous filings were made by both parties in the days leading up to the start of trial. There can therefore be little doubt that both parties, and their counsel, were well and fully aware of the trial date.

78.    Plaintiffs had no witnesses to examine, other than Defendant who was not present, which fact prompted the Court to instruct the parties to confer regarding whether any agreement could be reached by which Plaintiffs could present cases in chief. After conferring, Defendant consented for admission of Plaintiffs' exhibits enumerated above. Defendant further consented for Plaintiffs' counsel to read into the record Exhibit 44, which Plaintiffs' counsel in fact did. No further evidence was offered by Plaintiffs.

79.    The Court did not find the testimony presented by Plaintiffs' counsel's reading of Exhibit 44 illustrative of the merits of Plaintiffs' allegations, as Plaintiffs' counsel's presentation contained much *argument* not ordinarily admitted into *evidence* comprising a case in chief.

80.    Defendant's presentation of rebuttal evidence was more substantive. However, Defendant's counsel repeatedly strayed outside the parameters delineated for trial by the Court.

81.    The Court first heard rebuttal testimony from David Stephan.

82.    David Stephan is an attorney originally licensed to practice law in 1988.

83.    David Stephan has personal familiarity with Plaintiffs and Defendant due in part to his membership in a triathlon club in which Plaintiffs and Defendant were also members.

84.    David Stephan has represented, at various times, Defendant and Plaintiffs.

85.    David Stephan, sometime during August 2017, revised Defendant's will to remove Shawn Valk as executor of Defendant's will. Shawn Valk was a named plaintiff in Adv. No. 20-4058 previously pending in this Court. Adv. No. 20-4058 was previously dismissed voluntarily by Ron and Shawn Valk.

25-40520.27

86.  Defendant asked David Stephan to revise his will because of unspecified business disputes which had arisen between Defendant and Shawn Valk.

87.  Defendant then, in October 2017, hired David Stephan to attempt to collect a large sum of money allegedly him owed by Ron Valk, Shawn Valk, or a company owned by them.

88.  This collection effort by Defendant was, according to David Stephan, the first of multiple litigation suits between the parties.

89.  David Stephan assisted Defendant in obtaining bankruptcy counsel, and Defendant ultimately hired Joyce Lindauer as his bankruptcy attorney.

90.  David Stephan is one of Defendant's largest creditors, with an unsecured debt scheduled of $135,000.00.  Yet, Mr. Stephan testified he continues to provide legal representation to Defendant.

91.  The Court second heard rebuttal testimony from Joyce Lindauer.

92.  Joyce Lindauer is an attorney originally licensed to practice law in 1984 and currently practices bankruptcy law.

93.  Defendant was referred to her for bankruptcy advice.

94.  After consultation with Joyce Lindauer, Defendant was advised to consider filing bankruptcy and provided with a questionnaire to fill out and return.[120]  Joyce Lindauer testified that all new clients are given a questionnaire and various information forms to fill out and return.  Once those forms and questionnaire are returned, Mrs. Lindauer reviews them and asks for further and clarifying information.  All the information provided is used to prepare the necessary papers for a client's bankruptcy filing, including schedules and statements.  This process was used by Mrs. Lindauer to prepare Defendant's bankruptcy filing, and Defendant was very involved in the process.

95.  Part of the information provided to Joyce Lindauer by Defendant was a detailed listing of creditors and accounts.[121]  Mrs. Lindauer testified she considered

---

[120] Ex. G.

[121] Ex. F.

25-40520.28

Defendant detailed, sincere in his efforts to fill out the required documentation, and under stress.

96.    In his questionnaire, Defendant disclosed to his attorney an ownership interest as a sole proprietor of Preferred Platinum Construction, Copper Creek Distributors, DFW Design & Remodeling, and Copper Creek Fine Cabinetry.[122]

97.    Defendant listed three open bank accounts on his questionnaire under the category for money deposits, one located at Texans Credit Union, one at Prosperity Bank xxxxxx919, and one for Preferred Platinum Construction xxxxxx989.[123]  Mrs. Lindauer testified these were personal accounts of Defendant, as opposed to accounts owned by a corporation or other legal entity on which Defendant may have signatory authority.  Because Preferred Platinum Construction was listed as a sole proprietorship by Defendant, its account was included in the personal accounts of Defendant on his questionnaire.

98.    Claims or causes of action against Ron Valk were listed in the questionnaire.[124]

99.    Defendant stated in the questionnaire that both he and his husband, Jose Escoffie, were self-employed.  Defendant listed variable income for both, and Joyce Lindauer stated it is her practice to rely on answers to the questionnaire to determine income and expenses of her debtor clients.  Defendant's income was listed as being derived from two of his sole proprietorships, Preferred Platinum Construction and Copper Creek Distributors.[125]

100.    Schedule I requires a debtor to estimate and disclose "monthly income" which Joyce Lindauer testified is different from "revenue."  The questionnaire asks for "gross income."[126]

101.    In the questionnaire Defendant was asked if, within 4 years prior to filing for bankruptcy, he owned a business or was connected to business, including as a sole

---

[122] Ex. G.

[123] *Id*.

[124] *Id*.

[125] *Id*.

[126] *Id*.

25-40520.29

proprietor, member, partner, officer, director, or managing executive.[127] Defendant answered in the affirmative, and listed the following:

   a.  Managing member of DFW Design & Remodeling, LLC;[128]
   b.  10% owner of Platinum Storage GL, LLC;
   c.  Sole Proprietor as Preferred Platinum Construction; and
   d.  Officer until 2017 of Copper Creek Distributors, Inc.

102.  Joyce Lindauer testified that after a bankruptcy case has been filed and a §341 meeting of creditors held, it is not uncommon for schedule amendments to be required or requested by the Chapter 7 Trustee.  In this case, amendments were required and made.[129]

103.  After the §341 meeting of creditors was held by Mark Weisbart, the Chapter 7 Trustee of Defendant's bankruptcy case, Mr. Weisbart requested additional information and documentation from Defendant including bank statements.  On November 11, 2019, Defendant provided bank statements in an email to him which was copied to Mrs. Lindauer and her legal assistant.[130]  Defendant's email states he sent both "personal" and "business" account statements, and that he was then waiting on USAA bank statements to be provided by USAA which would be forwarded when received.[131]  It does not appear that an account of any type at USAA was listed in the questionnaire provided to Mrs. Lindauer by Defendant.

104.  As previously found by the Court,[132] the Valks filed the 2004 Motion on November 18, 2019.[133]  On December 13, 2019, Plaintiffs Jeremy Haltom and Keith Black both filed joinders to the 2004 Motion.[134]  The Court granted the 2004

---

[127] *Id.*

[128] "DFW Design & Remodeling, LLC" is obviously like the sole proprietorship under the name "DFW Design & Remodeling" yet is a distinct legal entity.

[129] Ex. 2; s*ee also* Ex. H.

[130] Ex. I.

[131] *Id.*

[132] *See supra,* Pgs. 6-7.

[133] *In re Triplett*, No. 19-42570, ECF No. 50; *see also* Ex. 6.

[134] *In re Triplett*, No. 19-42570, ECF Nos. 63, 64.

25-40520.30

Motion on February 3, 2020, and entered its "Order Granting Creditors Shawn Valk and Ron Valk's Motion for Examination Under Bankruptcy Rule 2004 of Donald R. Triplett, Jr." (the "2004 Order").[135]

105.    Regarding document production, the 2004 Order required the following of Triplett:

> "Triplett is directed to (a) take any *reasonable* actions necessary for the Valks, Haltom, and Black to obtain those documents identified on Exhibit A attached hereto and incorporated by reference *from the original sources* of such documents; and (b) produce any documents identified on Exhibit A *that are in his possession or control* and have not yet been produced to the Valks, Haltom, and Black. Such documents may be used for any lawful purpose within the scope of the bankruptcy proceedings, but shall not be used in any manner or means to harass or interfere with the Debtor, his employers or his customers and vendors" [emphasis added].[136]

106.    The 2004 Order further permitted Plaintiffs to "employ all lawful processes, including subpoena powers, to compel attendance at the Examination, production of all of the requested documents in the Motion *from third parties*, and compliance with this Order" [emphasis added].[137]  Defendant was also required to "cooperate with all discovery requests from the Valks, Haltom, and Black in good faith to ensure that the Valks, Haltom, and Black receive the documents in a timely manner."[138]

107.    On January 28, 2020 before entry of the 2004 Order, counsel for Plaintiffs sent a letter to Joyce Lindauer asking for a listing of bank accounts and related information.[139]  This letter demanded that certain information be provided on two days' notice.[140]  Mrs. Lindauer responded the same day, but on February 6, 2020,

---

[135] *In re Triplett*, No. 19-42570, ECF No. 99; *see also* Ex. 8.

[136] Ex. 8.

[137] *Id*.

[138] *Id*.

[139] Ex. 9.

[140] *Id*.

24

25-40520.31

counsel for Plaintiffs wrote that no documentation had yet been received.[141]  Mrs. Lindauer responded on February 6, 2020, that Plaintiffs had "enough information to serve subpoenas right now from what I sent you and what you have on hand in your files.  I will send more information as it comes in."[142]  Later on February 6, 2020, Mrs. Lindauer again wrote Plaintiffs' counsel providing a listing of credit card and bank account information.[143]  Mrs. Lindauer testified this listing did not contain full account numbers because Defendant, at the time, did not possess full account numbers because of the destruction of his records, despite efforts to obtain the information sought by Plaintiffs.  Defendant later testified that he spoke with the relevant financial institutions to obtain account statements, but that some of these institutions charged significant fees to provide him a copy of statements.

108.    Attorneys for Defendant and Plaintiffs had difficulty communicating precisely about what information Plaintiffs were seeking compared to what information Defendant had already provided or would additionally provide.[144]  Plaintiffs' counsel threatened to file a motion to compel.

109.    On cross examination, Mrs. Lindauer stated that boxes of documents were produced to Plaintiffs, including some electronically, but could not remember exactly when.  She testified that documents were first provided to her by Defendant, then reviewed by her, then produced to Plaintiffs.  Some of these were in paper format; others were electronic.

110.    The 2004 Order required Defendant to submit to a ten-hour examination.[145]

111.    As the Court previously found.[146]  Plaintiffs filed a "Second Motion to Extend Time to File Complaint to Determine Dischargeability" on February 28, 2020.[147]  After a hearing, the Court granted the motion on March 16, 2020 in its "Order

---

[141] Ex. 10.

[142] Ex. 11.

[143] Ex. 12.

[144] Ex. 13.

[145] Ex. 8.

[146] *See supra,* Pg. 7.

[147] *In re Triplett*, No. 19-42570, ECF No. 104; *see also* Ex. 14.

25-40520.32

Granting Creditors' Emergency Motion for Second Extension of Deadline for Filing Complaints Under 11 U.S.C. §§ 523 & 727."[148]

112.   As previously found by the Court, on May 18, 2020, an attorney for Plaintiffs conducted the 2004 Examination of Debtor.[149]

113.   During the 2004 Examination, a discussion between the attorneys present, including Mrs. Lindauer, was held regarding the permissible length of the examination.  The attorney taking the examination asked whether Defendant understood "that the Court has provided us with essentially an unlimited amount of time. Do you understand that?"  Mrs. Lindauer interrupted and stated, "I disagree with that."[150]  At trial, Mrs. Lindauer testified that she was unaware of a court order requiring a 2004 examination of unlimited duration.  Defendant's 2004 Examination lasted a total of approximately three days in Mrs. Lindauer's recollection.  Defendant also testified the 2004 Examination lasted three days, and that he similarly was unaware of the requirement that he submit to a 2004 examination of unlimited duration.

114.   As previously found by the Court.[151] Plaintiffs filed their joint Motion to Compel on June 2, 2020.[152]  Debtor objected to the Motion to Compel, and on July 14, 2020, the Court held a hearing on the Motion to Compel.  The Court granted the Motion to Compel on July 21, 2020.[153]

115.   In its order granting the Motion to Compel, the Court ordered Debtor to "re-appear and continue to give testimony and be deposed for no longer than six (6) hours, on the record, by Creditors in connection with Triplett's Rule 2004 examination...If additional time is needed, Triplett shall appear, testify, and be deposed by Creditors in connection with Triplett's Rule 2004 examination for no longer than

---

[148]   *In re Triplett*, No. 19-42570, ECF No. 113; *see also* Ex. 16.

[149] *See supra,* Pg. 7.

[150] Ex. 17.

[151] *See supra,* Pg. 8.

[152] *In re Triplett*, No. 19-42570, ECF No. 124; *see also* Ex. 19.

[153] *In re Triplett*, No. 19-42570, ECF No. 152; *see also* Ex. 20.

26

25-40520.33

three (3) hours, on the record..."[154]  The Court further required Defendant to "answer Creditors questions regarding Triplett's financial condition and financial transactions, prior to the filing of the bankruptcy case and after the filing, however, Triplett does not have to answer questions  concerning the ongoing IRS civil investigation also known as the IRS whistleblower case, and does not have to provide Creditors with the names of Triplett's or affiliated companies' clients."[155] Defendant appeared as ordered on August 8, 2020, and was examined by Plaintiffs.[156]

116.    Meanwhile, Defendant had been requested to produce more information.  On July 10, 2020, Defendant sent an email with responsive documentation available for download to Joyce Lindauer and her legal assistant, Gina Shipman, among others.[157]  After reviewing this information, Mrs. Lindauer told Defendant some of this additional information was not provided to her in the questionnaire and related forms prior to his filing bankruptcy.[158]  Defendant disagreed that he had provided this additional information to Mrs. Lindauer, an assertion with which Mrs. Lindauer shortly thereafter agreed.[159]

117.    Mrs. Lindauer testified it was difficult for Defendant to obtain information, both for her and in response to document requests after filing bankruptcy, because many of the pertinent records were left in an office Defendant previously used which was owned by Ron and/or Shawn Valk.  According to Mrs. Lindauer, after disputes arose between these individuals Defendant lost access to these records, including a computer.  Defendant told Mrs. Lindauer many of these records were destroyed by Ron and/or Shawn Valk.

118.    Joyce Lindauer testified there were some records from USAA which Defendant was unable to obtain after efforts to do so.

---

[154] *Id*. at 1-2, ¶ 2.

[155] *Id*. at 2, ¶ 3.

[156] Ex. 21.

[157] Ex. E.

[158] *Id*.

[159] *Id*.

25-40520.34

119.    Mrs. Lindauer acknowledged the plausible possibility that her office failed to correctly include every piece of information provided in the schedules prepared for and signed by Defendant.  She stated Defendant was always helpful and willing to answer or respond to questions or document requests.

120.    When asked about Defendant's "reasonable" actions taken to make it possible for Plaintiffs to obtain documents from the original sources of such documents, Mrs. Lindauer testified Defendant provided what records he had, attempted to obtain other records including from USAA, and that Mrs. Lindauer understood at the time from Plaintiffs' counsel that Plaintiffs' counsel would obtain by direct subpoena sent directly to the relevant financial institutions those financial records Defendant could not obtain through his own efforts.

121.    The Court last heard testimony from Defendant.

122.    Defendant interviewed several potential bankruptcy attorneys before choosing Joyce Lindauer.  At the time, numerous lawsuits were pending against him.

123.    Defendant filled out the questionnaire from Mrs. Lindauer's office and received some help in doing so from her assistant, Gina Shipman.

124.    Defendant has no formal accounting training but has some bookkeeping experience.

125.    Defendant testified he was owner of Preferred Platinum Construction.  Further, Defendant was an officer at one time, but not an owner of, Copper Creek Distributors, Inc., which Defendant testified is owned by Jose Escoffie.

126.    Defendant testified he understood and was told only to provide information regarding and to list open bank accounts in his personal name, not business accounts unless, like Preferred Platinum Construction, that business was a sole proprietorship.

127.    Defendant testified he owned ninety percent of DFW Design & Remodeling, LLC while Plaintiff, Jeremy Haltom owned the other ten percent.

128.    Defendant's income fluctuates based upon jobs and product sales.  To calculate his income, Defendant provided Gina Shipman with information for use in calculating his income and expenses, which she did on an average basis using an unknown methodology with information from bank statements and tax returns.

25-40520.35

129.    Defendant did not recall receiving a draft of his proposed bankruptcy schedules for review in advance of a meeting in Mrs. Lindauer's office on the petition date. He reviewed, discussed, and approved the drafts provided at that meeting. He stated that some months passed between filling out the questionnaire and approving schedules prepared for him. He believed the schedules were accurate when filed.

130.    Income listed on his original Schedule I was derived from working as a driver, from the sole proprietorship Preferred Platinum Construction, and from working with his husband for Copper Creek Distributors, Inc.

131.    Defendant provided tax returns to Mrs. Lindauer's office for use in preparing his statement of financial affairs. Defendant testified he thought his 2017 income tax return had been filed which he later discovered was incorrect after reviewing a certified mail receipt.

132.    Defendant testified he always tried to answer his attorney's questions, and that he was truthful when answering questions propounded to him during the 2004 Examination.

133.    When Defendant realized his failure to list one or more accounts at USAA, he contacted USAA to obtain statements and sent that information to the Trustee through his attorney.[160] This was difficult because at some point, USAA changed the numbers for the relevant accounts.

134.    Regarding documents requested by Plaintiffs in connection with the 2004 Order, Defendant testified that Mrs. Lindauer asked him for information he had already provided to her office. In order not to miss providing requested documents, he sent her a detailed explanation of the documents produced.[161]

135.    Reagon Herod and David Gibson are attorneys who provided other representation to Defendant during the time in 2020 when he was producing documents.[162]

136.    Defendant testified that a computer which held many of the records requested to be produced by him was removed by Sonia Garcia from its location in his former office in a building owned by Ron and/or Shawn Valk. Previously, Sonia Garcia

---

[160] Ex. I.

[161] Ex. E.

[162] *Id.*

25-40520.36

had been employed by Defendant from 2013 to 2017, but she subsequently was employed by Ron and/or Shawn Valk. When this computer was eventually returned to him, the records in question had been deleted. These missing records included invoices, time records, spreadsheets, and most records for Debtor's sole proprietorships DFW Design & Remodeling and Preferred Platinum Construction.

137.    Defendant testified he produced what bank statements he had or could obtain but did not produce those he did not have or could not obtain. This is congruent with his email dated July 10, 2020 to his attorney, Joyce Lindauer.[163] Defendant further testified that Mrs. Lindauer told him he did not need to produce bank statements he did not have or could not obtain because those records would be subpoenaed by Plaintiffs directly from the relevant financial institutions.

138.    Defendant testified he believes his efforts to produce or obtain requested documents, and his actual production of requested documents, complies with the requirements of the 2004 Order. The Court agrees.

139.    Defendant produced what bank statements he had or could obtain in the categories referenced in Exhibit A attached to the 2004 Order but did not produce those he did not have or could not obtain.[164] The 2004 Order states with respect to certain categories of documents, including bank statements, that "[o]riginals of such documents will be further requested from the financial institution." Defendant did not prevent or attempt to prevent Plaintiffs from seeking by subpoena the production of such documents from relevant financial institutions.

140.    Defendant testified he did not have access to accounting books or ledgers for the years 2017 and 2018 because those records were destroyed by Sonia Garcia after she began working for Ron and/or Shawn Valk, or by another Valk employee named Willie Parker. In addition to computer records there were, according to Defendant, some paper records which were in his former office in the building owned by Ron and/or Shawn Valk. These records included profit and loss statements, check registers, and balance sheets. It is plausible, and the Court here found Defendant's testimony credible, that documents were destroyed by Sonia Garcia or Willie Parker and so could not be produced by Defendant.

---

[163] *Id.*

[164] Ex. 8.

30

141. During these proceedings, Defendant attempted to obtain discovery from Sonia Garcia. However, Plaintiffs filed motions for protective orders to prevent such discovery, together with emergency hearing requests on those motions.[165] Defendant timely objected.[166] The Court denied both motions for protective orders.[167] In denying the motions for protective orders, this Court wrote the following:

> "Plaintiffs and Defendant have experienced significant difficulties conducting discovery in these cases, and the Court has conducted numerous hearings on discovery issues. The time for discovery has been extended multiple times because of these difficulties. The Motions are but the latest examples of such difficulties. The Court considered the pleadings and objections, the attachments thereto, and finds that a hearing on these matters would not be beneficial." [168]

142. After denial of Plaintiffs' motions protective orders, Defendant attempted to depose Sonia Garcia. That attempt was unsuccessful. Thus, Defendant filed motions to compel and for sanctions.[169] In addition to objecting, and despite prior denial of their motions for protective orders, Plaintiffs filed motions to quash Defendant's subpoenas or for protective orders.[170] Rather than repeat its prior ruling, the Court held a status conference after which it required Plaintiffs to re-plead their claims, gave Defendant a corresponding opportunity to amend his answers, and imposed on both sides a meet and confer requirement.[171]

143. Later, the Court was forced to compel Plaintiffs to permit Defendant to depose Sonia Garcia, and to order Plaintiffs and Plaintiffs' counsel "to comply with the

---

[165] *Black*, Adv. No. 20-4057, ECF Nos. 113 and 117; *Haltom*, Adv. No. 20-4059, ECF Nos. 113 and 118.

[166] *Black*, Adv. No. 20-4057, ECF No. 119; *Haltom*, Adv. No. 20-4059, ECF No. 121.

[167] *Black*, Adv. No. 20-4057, ECF No. 121; *Haltom*, Adv. No. 20-4059, ECF No. 123.

[168] *Id*.

[169] *Black*, Adv. No. 20-4057, ECF No. 134; *Haltom*, Adv. No. 20-4059, ECF No. 136.

[170] *Black*, Adv. No. 20-4057, ECF No. 137; *Haltom*, Adv. No. 20-4059, ECF No. 139.

[171] *Black*, Adv. No. 20-4057, ECF No. 142; *Haltom*, Adv. No. 20-4059, ECF No. 144.

25-40520.38

directives of Fed. R. Civ. P. 30 when attending and participating in the deposition."[172]

144. Defendant admitted he was hesitant to produce documents to Plaintiffs because he anticipated they might be used by Plaintiffs to contact his professional contacts to prevent Defendant from being able to earn a living from working. This concern was credible to the Court.

145. After the 2004 Examination and their first Motion to Compel, Plaintiffs filed another Motion to Compel Discovery on September 29, 2020.[173] Defendant objected to the Motion to Compel Discovery on October 20, 2020.[174] The Court conducted a hearing on Plaintiffs' Motion to Compel Discovery on December 4, 2020. At that hearing, after hearing arguments of counsel, the Court stated as follows:

> "THE COURT: That's enough. No, both of you stop.
>
> Most of the issues, I think, that are being raised can and should be part of the 727 litigation. The issues before the Court today [are] simply the 2004 issue and the debtor's failure to comply with the 2004 order and the latest order. Mr. Gibson is correct that we have narrowed, based on the Court's review of the production, we have narrowed the production items to the items identified in the last order. And in light of the debtor's assertion of its Fifth Amendment privilege, the Court will assume an adverse inference that the debtor has not produced all documents responsive to the last three items in the order only.
>
> And for that reason, the Court finds that some sanctions are appropriate. The Court will grant as sanctions the cost of counsel for the [D]ebtor, Mr. Tittle, to appear today in response to the issues related to the last filed order."[175]

146. At the December 4, 2020 hearing, the Court also stated:

---

[172] *Black*, Adv. No. 20-4057, ECF No. 162; *Haltom*, Adv. No. 20-4059, ECF No. 164.

[173] *See supra,* Pgs. 8-9; Ex 22; *see also In re Triplett*, No. 19-42570, ECF No. 171.

[174] Ex. 32.

[175] Ex. 34, Pgs. 43-44 of 46.

25-40520.39

"THE COURT: Why don't you [Mr. Tittle] stop interrupting me and you'll hear my ruling, okay.

It is the Court's belief that Mr. Tittle, much of the issues and the so-called strategies all relate to a 727 action, which can be brought in the 727 action. As far as the Court is concerned, it is the [D]ebtor's failure to certify today that they have provided everything and the [D]ebtor—and the Court's adverse inference that the [D]ebtor has not provided everything responsive to the narrow discovery that the Court has required from the last hearing.

The Court will grant as sanctions, $500. Mr. Gibson, I'm going to ask that you submit an order to the Court consistent with the Court's ruling. That order is due within 7 calendar days. Again, all other issues can be taken up in the context of the 727 action.[176]

147. The Court then entered its "Order Granting in Part/Denying in Part Creditors' Motion to Compel Discovery and Request for Sanctions."[177] The Court ordered Debtor to pay Plaintiffs $500.00 for reasonable attorneys' fees and denied the remainder of the Motion to Compel Discovery.[178]

148. The next day, Plaintiffs filed a reconsideration motion, to which Defendant does not appear to have objected.[179] After a telephonic hearing on another motion, the Court reconsidered its original order on the Motion to Compel Discovery and entered a second "Order Granting in Part and Denying in Part Creditors' Motion to Compel Discovery and Request for Sanctions."[180] In this revised order, the Court ordered Debtor to pay $500.00 in sanctions to Plaintiffs' counsel because of a "failure to certify that he produced all responsive documents in connection with the Creditors' letter dated November 16, 2020, in which the Creditors requested,

---

[176] Ex. 34, Pgs. 44-45 of 46.

[177] *In re Triplett*, No. 19-42570, ECF No. 196.

[178] *Id.*; *see supra*, Pg. 9.

[179] *In re Triplett*, No. 19-42570, ECF No. 197.

[180] *In re Triplett*, No. 19-42570, ECF No. 208; Ex. 33.

33

25-40520.40

among other things, all Intuit QuickBook[s] files for DFW Design and Preferred Platinum Construction for the period 9/19/2015 to 9/19/2019 . . ."[181]

149.    Defendant testified that he paid the $500.00 in sanctions to Plaintiffs' counsel. Defendant also testified that he was willing to sign a certification as referenced in revised the "Order Granting in Part and Denying in Part Creditors' Motion to Compel Discovery and Request for Sanctions."[182]  However, Defendant stated he was instructed by his attorney not to sign such a certification.

150.    Defendant testified at trial that "DFW Design" utilized QuickBooks Desktop while operating, but it is unclear if Defendant meant Debtor's sole proprietorship d/b/a DFW Design & Remodeling, or the separate entity DFW Design & Remodeling, LLC which is owned in part by Plaintiff, Jeremy Haltom.  Defendant also testified that he had personally never used QuickBooks except that his sole proprietorship Preferred Platinum Construction had used QuickBooks.  What records Defendant could access, he testified he produced.

151.    Defendant produced a copy of his 2017 tax return, not realizing that return had not in fact been filed.  That return was filed as soon as this mistake was discovered. Returns for 2018 and later have not yet been filed because, according to Defendant, he was advised by his counsel not to file those returns, and he did not have records available to file for some years.  He has since obtained the needed records, in part through litigation discovery from Plaintiffs, and intends to file these returns when advised by his counsel to do so.  Defendant did not see the proof of claim filed by the Internal Revenue Service in his case prior to his attendance and testimony at his § 341 meeting of creditors.

152.    Defendant testified it is his understanding that there is a difference between "revenue" and "deposits."  The Court agrees.  Deposits are only monies which are deposited into a particular bank account.  Neither "revenue" nor "deposits" are necessarily equivalents for "gross income" or "net income" or "monthly income." Defendant attempted to provide his attorney information to correctly calculate his "monthly income" as required to be disclosed on his schedules.  Defendant attempted to provide his attorney information to correctly disclose his "income from employment or from operating a business" as required to be disclosed on his statement of financial affairs.

---

[181] *Id.*

[182] *Id.*

25-40520.41

153. Defendant was familiar with what it means to sign a document under penalty of perjury.

154. To the extent any of these findings of fact constitute conclusions of law, the Court expressly adopts them as such.

## CONCLUSIONS OF LAW[183]

### III. Jurisdiction and Allocation of Judicial Power

1. The Court has jurisdiction to consider the adversary complaint in this proceeding pursuant to 28 U.S.C. §§ 1334 and 157.

2. This Court has authority to enter a final judgment on all issues raised in this adversary proceeding since it statutorily constitutes a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(A), (I), and (J) and meets all constitutional standards for the proper exercise of full judicial power by this Court.

### IV. Discharge and Exceptions Under 11 U.S.C. § 727

3. The Bankruptcy Code requires that a debtor be granted a discharge unless one of the statutory grounds for denial of that discharge is proven. 11 U.S.C. § 727(a).

4. The denial of a debtor's discharge is considered an extreme remedy. *Pher Partners v. Womble* (*In re Womble*), 289 B.R. 836, 845 (Bankr. N.D. Tex. 2003) (citing *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993)).

5. "Courts should deny discharge only for very specific and serious infractions." *Martin Marietta Matl's Southwest, Inc. v. Lee* (*In re Lee*), 309 B.R. 468, 476 (Bankr. W.D. Tex. 2004) (citing *Ichinose v. Homer Nat'l Bank* (*In re Ichinose*), 946 F.2d 1169, 1172 (5th Cir. 1991)).

6. A denial of discharge is to be imposed only upon those debtors who have not been honest and forthcoming about their affairs and therefore have not fulfilled the duties of full disclosure required of a bankruptcy debtor. *Buckeye Retirement Properties v. Tauber* (*In re Tauber*), 349 B.R. 540, 545 (Bankr. N.D. Ind. 2006)

---

[183] Unless indicated specifically otherwise, all conclusions of law are applicable to and made in both above styled adversary proceedings.

25-40520.42

["The denial of a debtor's discharge is akin to financial capital punishment. It is reserved for the most egregious misconduct by a debtor."].

7.  Thus, speculation and surmise about the existence of such misconduct are insufficient.  Probative evidence must be presented.

8.  To fulfill the statutory policy of providing a debtor with a "fresh start," the provisions of § 727(a) are construed strictly against parties seeking to deny the granting of a debtor's discharge and liberally in favor of a debtor. *Laughlin v. Nouveau Body & Tan, L.L.C. (In re Laughlin)*, 602 F.3d 417, 421 (5th Cir. 2010); *Benchmark Bank v. Crumley (In re Crumley)*, 428 B.R. 349, 356 (Bankr. N.D. Tex. 2010); *First United Bank & Trust, Co. v. Buescher (In re Buescher)*, 491 B.R. 419, 431 (Bankr. E.D. Tex. 2013) (citing *Ichinose v. Homer Nat'l Bank (Matter of Ichinose)*, 946 F.2d 1169, 1172 (5th Cir. 1991)).

9.  The same construction principles favoring a debtor are imposed in an action to determine the dischargeability of a particular debt. *FNFS, Ltd. v. Harwood (In re Harwood)*, 637 F.3d 615, 619 (5th Cir. 2011) (citing *Hudson v. Raggio & Raggio, Inc. (In re Hudson))*, 107 F.3d 355, 356 (5th Cir. 1997)).

10. The Plaintiff bears the burden of proving that the Debtor-Defendant is not entitled to a discharge under § 727.  The standard of proof for its claim is a preponderance of the evidence. *Cadle Co. v. Duncan (In re Duncan)*, 562 F.3d 688, 695 (5th Cir. 2009); *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir. 1992); *Grogan v. Garner*, 498 U.S. 279, 286 (1991).

## A. 11 U.S.C. § 727(a)(3)

11. 11 U.S.C. § 727(a)(3) provides that:

"(a) The court shall grant the debtor a discharge, unless —

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;"

12. "A court may deny a debtor a discharge under 11 U.S.C. § 727(a)(3) if the debtor has destroyed or failed to keep records from which his financial condition may be ascertained." *Judgment Factors, L.L.C. v. Packer (In re Packer)*, 816 F.3d 87, 93-94 (5th Cir. 2016).

36

13.   The premise of this subsection is that an individual who desires the privilege of a bankruptcy discharge is required to provide his creditors "with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial accuracy for a reasonable period past to present." *In re Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996); *see also Broad Nat'l Bank v. Kadison*, 26 B.R. 1015, 1018 (D.N.J. 1983) ["The privilege of a discharge is hinged on disclosure."] and *WTHW Inv. Builders v. Dias (In re Dias)*, 95 B.R. 419, 422 (Bankr. N.D. Tex. 1988) ["Section 727(a)(3) is intended to allow creditors and/or the trustee to examine the debtor's financial condition and determine what has passed through a debtor's hands."].

14.   Plaintiffs have the initial burden to "prove that the debtor failed to keep and preserve his financial records and that this failure prevented the party from ascertaining the debtor's financial condition." *Robertson v. Dennis (In re Dennis)*, 330 F.3d 696, 703 (5th Cir. 2003). If the creditor meets this threshold, the burden shifts to the debtor to exhibit that the failure to keep records was justified under the circumstances. *Buescher v. First United Bank & Trust (In re Buescher)*, 783 F.3d 302, 308 (5th Cir. 2015) (citing *Dennis*, 330 F.3d at 703).

15.   Plaintiffs contend Defendant failed to turn over: (1) information regarding personal bank accounts and others belonging to DFW Design & Remodeling, Preferred Platinum Construction, and Copper Creek, (2) QuickBooks records for DFW Design & Remodeling, Preferred Platinum Construction, and Copper Creek, and (3) Defendant's 2017 income tax return.[184]

16.   The evidence presented to the Court was convincing that Defendant made significant efforts to obtain, produce, and disclose records from which his financial condition and business transactions might be obtained. The Court takes this duty on the part of a debtor seriously.

17.   The evidence was equally convincing that in the underlying bankruptcy, Plaintiffs' counsel was quick to seek to sanction and compel, but less diligent in clearly communicating precisely with counsel for Defendant regarding what was being sought. While Defendant himself sincerely attempted to meet the disclosure requirements necessitated by a bankruptcy filing and the additional demands made by Plaintiffs, his counsel at times was less successful at being clearly responsive to or communicative regarding the significant demands made by Plaintiffs.

---

[184] Amend. Compl., *Black*, Adv. No. 20-4057, 12-13, ¶¶ 53-57, ECF No. 145; Amend. Compl., *Haltom*, Adv. No. 20-4059, 12-13, ¶¶ 53-57, ECF No. 147. *See also* Joint Pre-Trial Order, Adv. No. 20-4057, 9-10, ECF No. 226; *Haltom*, Adv. No. 20-4059, 9-10, ECF No. 227.

25-40520.44

18.     With respect to the allegedly undisclosed information regarding Defendant's personal bank accounts and others belonging to DFW Design & Remodeling, Preferred Platinum Construction, and/or Copper Creek, if any, the Court concludes in applying the above standards to the evidence that Plaintiffs, Keith Black and Jeremy Haltom, have each failed to sustain their burden and prove by a preponderance of the evidence that Defendant, Donald R. Triplett, Jr., destroyed or failed to keep such records from which his financial condition and business transactions may be ascertained sufficient to deny him a discharge under 11 U.S.C. § 727(a)(3).

19.     With respect to the allegedly undisclosed QuickBooks records for DFW Design & Remodeling, Preferred Platinum Construction, and Copper Creek, the Court concludes in applying the above standards to the evidence that Plaintiffs, Keith Black and Jeremy Haltom, have each failed to sustain their burden and prove by a preponderance of the evidence that Defendant, Donald R. Triplett, Jr., destroyed or failed to keep such records from which his financial condition and business transactions may be ascertained sufficient to deny him a discharge under 11 U.S.C. § 727(a)(3).

20.     With respect to the allegedly undisclosed 2017 income tax return, the Court concludes in applying the above standards to the evidence that Plaintiffs, Keith Black and Jeremy Haltom, have each failed to sustain their burden and prove by a preponderance of the evidence that Defendant, Donald R. Triplett, Jr. destroyed or failed to keep such records from which his financial condition and business transactions may be ascertained sufficient to deny him a discharge under 11 U.S.C. § 727(a)(3).

21.     With respect to other allegedly undisclosed information referenced by Plaintiffs at trial, if any, but not clearly included in the allegations of their respective Trial Complaints nor in the Joint Pre-Trial Order(s),[185] for causes of action under 11 U.S.C. § 727(a)(3), the Court concludes in applying the above standards to the evidence that Plaintiffs, Keith Black and Jeremy Haltom, have each failed to sustain their burden and prove by a preponderance of the evidence that Defendant, Donald R. Triplett, Jr., destroyed or failed to keep such records from which his financial condition and business transactions may be ascertained sufficient to deny him a discharge under 11 U.S.C. § 727(a)(3).

---

[185] *Id.*

25-40520.45

## B.  11 U.S.C. § 727(a)(4)(A)

22.    Plaintiffs contend Defendant's discharge should be denied for making a false oath pursuant to 11 U.S.C. § 727(a)(4)(A).

23.    11 U.S.C. § 727(a)(4)(A) provides that:

"(a) The court shall grant the debtor a discharge, unless —

(4) the debtor knowingly and fraudulently, in or in connection with

the  case—

(A) made a false oath or account . . . ."

24.    As one court previously stated, "the bankruptcy schedules and statement of financial affairs of a debtor serve a vital role for creditors in a bankruptcy case, in that they ensure that adequate and truthful information is available to trustees and creditors, not just an objecting creditor, without the need for further investigation to determine whether or not the information is true and correct." *Mullen v. Jones (In re Jones)*, 2011 WL 479063, at *34 (Bankr. N.D. Tex., Feb. 3, 2011).

25.    An individual debtor may forfeit entitlement to a discharge by knowingly and fraudulently making a false oath.  "False oaths sufficient to justify denial of discharge include (1) a false statement or omission in the debtor's schedules or statement of financial affairs, or (2) a false statement by the debtor at an examination during the course of the bankruptcy proceedings." *Buckeye Retirement Co., LLC v. Bullough (In re Bullough)*, 358 B.R. 261, 280 (Bankr. N.D. Tex. 2007).

26.    To sustain their contention that Defendant's discharge should be denied for making a false oath pursuant to 11 U.S.C. § 727(a)(4)(A), Plaintiffs must establish the following elements: (1) the debtor made a statement under oath; (2) such statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement was materially related to the bankruptcy case. *Cadle Co. v. Duncan (In re Duncan)*, 562 F.3d 688, 695 (5th Cir. 2009); *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir. 1992).  However, if a plaintiff establishes a prima facie case that a debtor made false statements, then the burden shifts to the debtor to present evidence that she is innocent of the charged offense. *Cadle Co.*, 562 F.3d at 696.

25-40520.46

27. To justify the denial of a debtor's discharge under 11 U.S.C. § 727(a)(4)(A), a false oath may include: "(1) a false statement or omission in the debtor's schedules, or (2) a false statement by the debtor at the examination during the course of the proceedings." *Beaubouef*, 966 F.2d at 178.

28. "[N]ot every misstatement or omission...constitutes a false oath.  Indeed, even multiple errors do not mandate the finding of a false oath without sufficient evidence of a fraudulent intent." *Buescher*, 491 B.R. at 432 (citing *Cadle Co. v. Pratt (In re Pratt)*, 411 F.3d 561 (5th Cir. 2005)).

29. While fraudulent intent can be difficult to prove, a plaintiff may, in the alternative, utilize circumstantial evidence to demonstrate that a debtor made a false statement with reckless indifference to the truth.  *Beaubouef*, 966 F.2d at 178.

30. Plaintiffs contend Defendant made false statements under oath by allegedly: (1) failing to list his interest in DFW Design & Remodeling, Preferred Platinum Construction, and Copper Creek, (2) failing to list transfers from his bank accounts to DFW Design & Remodeling, Preferred Platinum Construction, and Copper Creek within a year of the petition date, (3) listing his spouse's monthly income as $1,125 when credit applications signed by his husband reflect greater monthly income, and (4) making numerous false statements or claims while under oath at his 341 meeting of creditors and in the 2004 Examination.[186]

31. With respect to the statements under oath allegedly failing to list Defendant's interest, if any, in DFW Design & Remodeling, Preferred Platinum Construction, and Copper Creek, the Court concludes in applying the above standards to the evidence that Plaintiffs, Keith Black and Jeremy Haltom, have each failed to sustain their burden and prove by a preponderance of the evidence that Defendant, Donald R. Triplett, Jr., made a false statement under oath regarding such matters sufficient to deny him a discharge under 11 U.S.C. § 727(a)(4)(A).

32. With respect to the statements under oath allegedly failing to list transfers from Defendant's bank accounts to DFW Design & Remodeling, Preferred Platinum Construction, and Copper Creek within a year of the petition date, if any, the Court concludes in applying the above standards to the evidence that Plaintiffs, Keith Black and Jeremy Haltom, have each failed to sustain their burden and

---

[186] Amend. Compl., *Black*, Adv. No. 20-4057, 13, ¶¶ 58-62, ECF No. 145; Amend. Compl., *Haltom*, Adv. No. 20-4059, 13, ¶¶ 58-62, ECF No. 147.  *See also* Joint Pre-Trial Order, Adv. No. 20-4057, 7-9, ECF No. 226; *Haltom*, Adv. No. 20-4059, 7-9, ECF No. 227.

25-40520.47

prove by a preponderance of the evidence that Defendant, Donald R. Triplett, Jr., made a false statement under oath regarding such matters sufficient to deny him a discharge under 11 U.S.C. § 727(a)(4)(A).

33.    With respect to the statements under oath reporting Mr. Escoffie's monthly salary in Debtor's schedules and/or SOFA alleged to be false by Plaintiffs, the Court concludes in applying the above standards to the evidence that Plaintiffs, Keith Black and Jeremy Haltom, have each failed to sustain their burden and prove by a preponderance of the evidence that Defendant, Donald R. Triplett, Jr., made a false statement under oath regarding such matters sufficient to deny him a discharge under 11 U.S.C. § 727(a)(4)(A).

34.    With respect to false statements or claims allegedly made by Defendant while under oath at his § 341 meeting of creditors and in the 2004 Examination, the Court concludes in applying the above standards to the evidence that Plaintiffs, Keith Black and Jeremy Haltom, have each failed to sustain their burden and prove by a preponderance of the evidence that Defendant, Donald R. Triplett, Jr., made a false statement under oath regarding such matters sufficient to deny him a discharge under 11 U.S.C. § 727(a)(4)(A).

## C. 11 U.S.C. § 727(a)(6)(A)

35.    11 U.S.C. § 727(a)(6)(A) provides that:

"(a) The court shall grant the debtor a discharge, unless —

(6) the debtor has refused, in the case—

(A) to obey any lawful order of the court, other than an order to respond to a material question or to testify. . . ."

36.    A debtor's refusal to comply must be willful and intentional.  Furthermore, a court has wide discretion in its determination of whether a debtor has "refused" to obey a court order.  *See Devers v. Bank of Sheridan, Montana (In re Devers)*, 759 F.2d 751, 755 (9th Cir. 1985).

37.    A plaintiff must show that debtor violated a court order.  *McKeithen Properties, LLC v. Meredith (In re Meredith)*, No. 04-1110, 2005 WL 5468745, at *6 (Bankr. M.D. La. Dec. 29, 2005), *aff'd*, 231 Fed. App'x. 321 (5th Cir. 2007).  "A debtor forfeits his discharge for refusing to obey a court order only in cases of willful disobedience, and not merely for inadvertence or mistake." *Meredith*, 2004 WL 5468745, at *7 (citing *Friendly Financial Discount Corp. v. Jones (In re Jones)*, 490 F.2d 452, 456 (5th Cir. 1974)).  Plaintiff must show that debtor actually

25-40520.48

refused to obey a court order. *Id.* "Mere failure to obey an order is insufficient under § 727(a)(6)(A) . . ." *Id.*

38.     Plaintiffs contend Defendant failed to obey four (4) court orders in the underlying bankruptcy case.[187] These are (1) the 2004 Order,[188] (2) the March 16, 2020 "Order Granting Creditors' Emergency Motion for Second Extension of Deadline for Filing Complaints Under 11 U.S.C. §§ 523 & 727",[189] (3) the "Order Granting Creditors' Motion to Compel Debtor to Complete 2004 Examination",[190] and (4) the "Order Granting in Part/Denying in Part Creditors' Motion to Compel Discovery and Request for Sanctions"[191] as later reconsidered.[192]

39.     With respect to the March 16, 2020 "Order Granting Creditors' Emergency Motion for Second Extension of Deadline for Filing Complaints Under 11 U.S.C. §§ 523 & 727",[193] the Court concludes in applying the above standards to the evidence that Plaintiffs, Keith Black and Jeremy Haltom, have each failed to sustain their burden and prove by a preponderance of the evidence that Defendant, Donald R. Triplett, Jr., willfully refused to obey a lawful order of this Court sufficient to deny him a discharge under 11 U.S.C. § 727(a)(6)(A).

40.     With respect to the 2004 Order,[194] the Court concludes in applying the above standards to the evidence that Plaintiffs, Keith Black and Jeremy Haltom, have each failed to sustain their burden and prove by a preponderance of the evidence

---

[187] Amend. Compl., *Black*, Adv. No. 20-4057, 14, ¶¶ 63-67, ECF No. 145; Amend. Compl., *Haltom*, Adv. No. 20-4059, 14, ¶¶ 63-67, ECF No. 147. *See also* Joint Pre-Trial Order, Adv. No. 20-4057, 1-7, ECF No. 226; *Haltom*, Adv. No. 20-4059, 1-7, ECF No. 227.

[188] *In re Triplett*, No. 19-42570, ECF No. 99; *see also* Ex. 8.

[189] *In re Triplett*, No. 19-42570, ECF No. 113; *see also* Ex. 16.

[190] *In re Triplett*, No. 19-42570, ECF No. 152; *see also* Ex. 20.

[191] *In re Triplett*, No. 19-42570, ECF No. 196.

[192] *In re Triplett*, No. 19-42570, ECF No. 208; Ex. 33.

[193] *In re Triplett*, No. 19-42570, ECF No. 113; *see also* Ex. 16.

[194] *In re Triplett*, No. 19-42570, ECF No. 99; *see also* Ex. 8.

42

25-40520.49

that Defendant, Donald R. Triplett, Jr., willfully refused to obey a lawful order of this Court sufficient to deny him a discharge under 11 U.S.C. § 727(a)(6)(A).

41.    With respect to the "Order Granting Creditors' Motion to Compel Debtor to Complete 2004 Examination,"[195] the Court concludes in applying the above standards to the evidence that Plaintiffs, Keith Black and Jeremy Haltom, have each failed to sustain their burden and prove by a preponderance of the evidence that Defendant, Donald R. Triplett, Jr., willfully refused to obey a lawful order of this Court sufficient to deny him a discharge under 11 U.S.C. § 727(a)(6)(A).

42.    With respect to the "Order Granting in Part/Denying in Part Creditors' Motion to Compel Discovery and Request for Sanctions"[196] including as later reconsidered,[197] the Court concludes in applying the above standards to the evidence that Plaintiffs, Keith Black and Jeremy Haltom, have each failed to sustain their burden and prove by a preponderance of the evidence that Defendant, Donald R. Triplett, Jr., willfully refused to obey a lawful order of this Court sufficient to deny him a discharge under 11 U.S.C. § 727(a)(6)(A).

## V.  Sanctions Motions

43.    Defendant and Plaintiffs have filed, respectively, the Sanctions Motions against one another.[198]

44.    Defendant's Sanctions Motions were filed first and seek sanctions "through a combination of Fed. R. Bankr. P. 9011 (which roughly mirrors Fed. R. Civ. P. 11); Fed. R. Bankr. P. 7037 (which makes applicable to adversary proceedings Fed. R. Civ. P. 37); and 11 U.S.C. § 105 (which gives this Court wide authority to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [Title 11]')."[199]

---

[195] *In re Triplett*, No. 19-42570, ECF No. 152;  *see also* Ex. 20.

[196] *In re Triplett*, No. 19-42570, ECF No. 196.

[197] *In re Triplett*, No. 19-42570, ECF No. 208;  Ex. 33.

[198] *See supra,* Pg. 2.

[199] *Black*, Adv. No. 20-4057, 65, ¶ 193, ECF No. 141; *Haltom*, Adv. No. 20-4059, 65, ¶ 193, ECF No. 143.

43

25-40520.50

45.    More specifically, Defendant urges this Court in the Sanctions Motions "to sanction the Plaintiff[s], the Valks and/or their counsel with the most serious sanction available – up to and including death penalty sanctions."[200]  Reasons given for this request include:

    a.  " . . . [i]mproper use of discovery."[201]

    b.  " . . . the entirely improper and inappropriate use of the court system and of the criminal justice system to try to bend these institutions to their will."[202]

    c.  " . . . none of these suits have anything to do with the allegations therein or with the manufactured harm alleged. They have everything to do with exacting revenge. They have everything to do with forcing Debtor to spend large amounts of money that Plaintiff and the Valks know Debtor doesn't have. They have everything to do with preventing Debtor from asserting claims against them that he legitimately had and still has."[203]

46.    Most of the allegations made by Plaintiffs in their Sanctions Motions involve either pre-petition conduct, or events which occurred in litigation pending outside this Court.

47.    "The imposition of sanctions against an attorney is often guided by Bankruptcy Rule 9011." *In re TRED Holdings, L.P.*, No. 10-40749, 2010 Bankr. LEXIS 3109, at *25 (Bankr. E.D. Tex. 2010); *see also In re Lopez*, Nos. 21-10343, 21-10098, 21-10246, 2022 Bankr. LEXIS 1619, at *10 (Bankr. E.D. Tex. 2022).

---

[200] *Black*, Adv. No. 20-4057, 67, ¶ 201, ECF No. 141; *Haltom*, Adv. No. 20-4059, 67, ¶ 201, ECF No. 143.

[201] *Black*, Adv. No. 20-4057, 67, ¶ 203, ECF No. 141; *Haltom*, Adv. No. 20-4059, 67, ¶ 203, ECF No. 143.

[202] *Black*, Adv. No. 20-4057, 67, ¶ 204, ECF No. 141; *Haltom*, Adv. No. 20-4059, 67, ¶ 204, ECF No. 143.

[203] *Black*, Adv. No. 20-4057, 67, ¶ 205, ECF No. 141; *Haltom*, Adv. No. 20-4059, 67, ¶ 205, ECF No. 143.

25-40520.51

48. Sanctions under Rule 9011 are limited to remedying filing abuses occurring within the judicial system. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 385 (1990). Furthermore, there is no indication in the language of Rule 9011 that it applies to filings in any court other than a bankruptcy court. S*ee Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 245 (5th Cir. 1998). Thus, Rule 9011 cannot apply to state court filings or misconduct prior to the commencement of the bankruptcy case. *Id.*

49. "Rule 11 does not authorize a federal court to sanction a party for signing and filing a complaint in state court prior to removal." *Rice v. Natl. Bev. Corp.*, No. 18 CV 7151, 2019 WL 3037094 at 3 (N.D. Ill. July 11, 2019).

50. "The Court also has authority to impose sanctions against [counsel] under 28 U.S.C. § 1927, which states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

The Fifth Circuit has interpreted the requirement that an attorney's conduct must be vexatious and unreasonable as requiring evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court. *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998)." *See In re TRED Holdings, L.P.*, No. 10-40749, 2010 Bankr. LEXIS 3109, at *25-26 (Bankr. E.D. Tex. 2010)

51. "By its terms, § 1927 permits the district court to award attorneys' fees as a sanction against an attorney who unreasonably and vexatiously 'multiplies the proceedings in any case.' It applies, therefore, to misconduct by an attorney in the course of 'proceedings' in a 'case' before the court, not misconduct that occurs before the case appears on the federal court's docket. That is, the statute provides a discretionary sanction against attorneys who abuse the judicial process, not those who engage in improper conduct in the runup to litigation.'" *Bender v. Freed*, 436 F.3d 747, 751 (7th Cir. 2006).

25-40520.52

52.     Plaintiffs' Sanctions Motions were filed later and in response to Defendant's Sanctions Motions.[204]  They seek "an order striking the unfounded, irrelevant, and borderline defamatory allegations made by the [D]ebtor, Donald R. Triplett, Jr. [] in his Motion for Sanctions [] (the "Death Penalty Sanction Motion") and imposing sanctions under Rule 11, 28 U.S.C. § 1927, and the Court's inherent power to sanction bad faith conduct for attempting to misuse the court system and obtain a litigation advantage through the use of the Death Penalty Sanction Motion."[205]  More specifically, Plaintiffs ask for "an order (i) striking the Death Penalty Sanctions Motion in its entirety; (ii) imposing monetary sanctions against the Defendant and/or its attorney as deemed appropriate; (iii) awarding Plaintiff his attorney's fees in bringing and litigating this Motion; (iv) enjoining the Defendant from making the same or similar unrelated and immaterial allegations in future documents filed with this Court in this adversary proceeding; and (v) granting such other and further relief to which Plaintiff may be entitled at law or equity."[206]

53.     "A claim is moot when a case or controversy no longer exists between the parties." *Brinsdon v. McAllen Indep. Sch. Dist.*, 863 F.3d 338, 345 (5th Cir. 2017).

54.     Mootness "can arise in one of two ways: First, a controversy can become moot when the issues presented are no longer live. A controversy can also become moot when the parties lack a legally cognizable interest in the outcome." *Chevron U.S.A. v. Traillour Oil Co.*, 987 F.2d 1138, 1153 (5th Cir. 1993).

55.     One court recently described mootness as follows:

> "It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982). The doctrine of voluntary cessation evaluates the risk that a defendant is engaging in "litigation

---

[204] *See supra,* Pg. 2.

[205] *Black*, Adv. No. 20-4057, 2, ECF No. 189; *Haltom*, Adv. No. 20-4059, 2, ECF No. 190.

[206] *Black*, Adv. No. 20-4057, 19, ECF No. 189; *Haltom*, Adv. No. 20-4059, 19, ECF No. 190.

25-40520.53

posturing" to avoid judicial review. *See Yarls v. Bunton*, 905 F.3d 905, 910 (5th Cir. 2018); *Aladdin's Castle*, 455 U.S. at 289 n.10, 102 S.Ct. 1070. Thus, when a defendant's voluntary cessation moots a plaintiff's claim, the defendant bears the "heavy burden" to make it "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs., Inc.*, 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). "A controversy may remain to be settled in such circumstances," namely "a dispute over the legality of the challenged practices." *United States v. W. T. Grant Co.*, 345 U.S. 629, 631, 73 S.Ct. 894, 97 L.Ed. 1303 (1953). Because "[t]he defendant is free to return to his old ways" once the litigation is ended, public interest weighs in favor of "having the legality of the practices settled."

*See Sambrano v. United Airlines, Inc.*, No. 4:21-CV-1074-P, 2023 WL 8721437, at *17 (N.D. Tex. Dec. 18, 2023), reconsideration denied, No. 4:21-CV-1074-P, 2024 WL 3085144 (N.D. Tex. June 21, 2024).

56. Because Plaintiffs have failed to prove their allegations, and Defendant, Donald R. Triplett, Jr., is entitled to a discharge under 11 U.S.C. § 727, this Court finds that Defendant's Sanctions Motions against Plaintiffs are moot. Defendant's Sanctions Motions complain mostly of conduct which occurred outside this Court and which as a result this Court may not remedy under the scope of Rule 9011. For remaining conduct which allegedly occurred in these adversary proceedings, little purpose will be served by conducting a trial on the merits of Defendant's Sanctions Motions. Defendant will receive a discharge, and so remaining issues, if any, are not live, and Defendant lacks any cognizable interest in the further outcome of his Sanctions Motions pending in these adversary proceedings.

57. Furthermore, this is not a situation where Plaintiffs, in response to Defendant's Sanctions Motions, have *voluntarily* ceased the activities in these proceedings of which Defendant complains and later claimed mootness. Rather, this Court, in granting Defendant a discharge over Plaintiffs' objections, is *involuntarily* entering an order the effect of which will be to moot the Defendant's Sanctions Motions and require any activities which are within the scope of a discharge under 11 U.S.C. § 727 to cease. But for entry of this discharge order, there is no question Plaintiffs would continue to litigate against Defendant in any and every available forum.

47

25-40520.54

58. Because the behavior of Defendant and/or his counsel which Plaintiffs' Sanctions Motions complaints of directly relates to Defendant's filing of his own Sanctions Motion, if the Defendant's Sanctions Motions are dismissed as moot, then so too should be the Plaintiffs' Sanctions Motions. In the absence of Defendant's Sanctions Motions, the Plaintiffs' Sanctions Motions are unnecessary and superfluous.

59. Therefore, because Defendant's Sanctions Motions are dismissed as moot, so too and for the same reasons are Plaintiffs' Sanctions Motions.

## CONCLUSION

1. The Court concludes that Plaintiffs, Keith Black and Jeremy Haltom, have each failed in their respective adversary proceedings to prove by a preponderance of the evidence that Defendant, Donald R. Triplett, Jr., should be denied a discharge under 11 U.S.C. § 727(a)(3) for destroying or failing to keep records from which his financial condition may be ascertained. Therefore, judgment must be rendered for the Defendant under § 727(a)(3).

2. The Court concludes that Plaintiffs, Keith Black and Jeremy Haltom, have each failed in their respective adversary proceedings to prove by a preponderance of the evidence that Defendant, Donald R. Triplett, Jr., should be denied a discharge under 11 U.S.C. § 727(a)(4)(A) for making a false oath. Therefore, judgment must be rendered for the Defendant under § 727(a)(4)(A).

3. The Court concludes that Plaintiffs, Keith Black and Jeremy Haltom, have each failed in their respective adversary proceedings to prove by a preponderance of the evidence that Defendant, Donald R. Triplett, Jr., should be denied a discharge under 11 U.S.C. § 727(a)(6)(A) for refusal to obey any lawful order of the court. Therefore, judgment must be rendered for the Defendant under § 727(a)(6)(A).

4. Thus, all relief requested by Plaintiffs in the Trial Complaints in the above-referenced adversary proceedings shall be DENIED.

5. Because of the denial of Plaintiffs' respective causes of action in their entirety, Defendant, Donald R. Triplett, Jr., is entitled to and shall be granted by this Court a discharge under 11 U.S.C. § 727.

48

25-40520.55

6.  Furthermore, because Defendant, Donald R. Triplett, Jr., will be granted a discharge under 11 U.S.C. § 727, and for the reasons set forth more fully above, the Court finds the Sanctions Motions are MOOT and should be DISMISSED without prejudice.

7.  As a final note, the Court acknowledges that this has been a long, bitter, and acrimonious legal battle between Plaintiffs and Defendant. The Court does not doubt the frustration of the parties with each other. However, such frustration cannot obviate the degree of proper proof required, especially considering the gravity of the relief Plaintiffs seek.

8.  To the extent any of these conclusions of law constitute findings of fact, the Court expressly adopts them as such.

9.  An appropriate judgment shall be entered consistent with these findings and conclusions.

Signed on 9/4/24

THE HONORABLE JOSHUA P. SEARCY
UNITED STATES BANKRUPTCY JUDGE

49

25-40520.56

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

**EOD**

09/04/2024

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **DONALD R. TRIPLETT, JR.** | § | Case No. 19-42570 |
| xxx-xx-8753 | § | |
| | § | |
| Debtor | § | Chapter 7 |

| | | |
|---|---|---|
| KEITH BLACK | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 20-04057 |
| | § | |
| DONALD R. TRIPLETT, JR. | § | |
| | § | |
| Defendant | § | |

| | | |
|---|---|---|
| JEREMY HALTOM | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 20-04059 |
| | § | |
| DONALD R. TRIPLETT, JR. | § | |
| | § | |
| Defendant | § | |

## JUDGMENT

On April 15, 16, 17, and 18, 2024, the Court held a joint trial in the above

adversary proceedings of the following:

> A. "First Amended Complaint Objecting to Discharge" filed by Plaintiff,
> Keith Black;[1] and

---

[1] *Black*, Adv. No. 20-4057, ECF No. 145.

25-40520.59

B. "First Amended Complaint Objecting to Discharge" filed by Plaintiff, Jeremy Haltom.[2]

These are referred to collectively as the "Trial Complaints."   Both parties appeared through counsel at the joint trial.   Based upon the Court's consideration of the pleadings, including those pleadings in the main bankruptcy case of which the Court took judicial notice, the evidence and testimony admitted at trial, and the argument of counsel, and a decision having been duly rendered and findings of fact and conclusions of law having been issued on this date pursuant to Fed. R. Civ. P. 52, which is incorporated into adversary proceedings in bankruptcy cases by Fed. R. Bankr. P. 7052, the Court finds that good cause exists for the entry of the following judgment.

**IT IS THEREFORE ORDERED** that that the causes of action of Plaintiffs, Keith Black and Jeremy Haltom, alleging that Defendant, Donald R. Triplett, Jr., should be denied a discharge under 11 U.S.C. § 727(a)(3) for destroying or failing to keep records from which his financial condition and business transactions may be ascertained are **DENIED.**

**IT IS FURTHER ORDERED** that the causes of action of Plaintiffs, Keith Black and Jeremy Haltom, alleging that Defendant, Donald R. Triplett, Jr., should be denied a discharge under 11 U.S.C. § 727(a)(4)(A) for making a false oath are **DENIED.**

**IT IS FURTHER ORDERED** that the causes of action of Plaintiffs, Keith Black and Jeremy Haltom, alleging that Defendant, Donald R. Triplett, Jr., should be denied a

---

[2] *Haltom*, Adv. No. 20-4059, ECF No. 147.

25-40520.60

discharge under 11 U.S.C. § 727(a)(6)(A) for refusal to obey any lawful order of the

court are **DENIED.**

      **IT IS FURTHER** that all other relief requested in the Trial Complaints filed by

Plaintiffs is hereby **DENIED**.

      **IT IS FURTHER** that the Clerk of Court is directed to enter an order of discharge

on behalf of Defendant, Donald R. Triplett, Jr. in Case No. 19-42570 pursuant to 11

U.S.C. § 727.

Signed on 9/4/24

THE HONORABLE JOSHUA P. SEARCY
UNITED STATES BANKRUPTCY JUDGE

25-40520.61