## NO. 25-40520

## IN THE UNITED STATES COURT OF APPEALS
## FIFTH CIRCUIT

**In the Matter of**
**DONALD R. TRIPLETT, JR.,**
*Debtor*

**KEITH BLACK; JEREMY HALTOM,**
*Appellants*
**v.**
**DONALD R. TRIPLETT, JR.,**
*Appellee*

**On Appeal from the United States District Court**
**Eastern District of Texas, Sherman Division**
**Case No. 4:24-cv-00838 (JCB)**

## BRIEF OF APPELLEE

**DATED this 12ᵗʰ day of December, 2025.**

Respectfully submitted,

**/s/   Gregory W. Mitchell**
Gregory W. Mitchell
THE MITCHELL LAW FIRM, L.P.
1100 W. Campbell, Suite 200
Richardson, Texas  75080
(972)463-8417 – Office
(972)432-7540 – Facsimile
State Bar ID:  00791285
E-mail:  greg@mitchellps.com
ATTORNEY FOR APPELLEE

NO. 25-40520

## IN THE UNITED STATES COURT OF APPEALS
## FIFTH CIRCUIT

**In the Matter of**
**DONALD R. TRIPLETT, JR.,**
*Debtor*

**KEITH BLACK; JEREMY HALTOM,**
*Appellants*
v.
**DONALD R. TRIPLETT, JR.,**
*Appellee*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal:

| | |
|---|---|
| **Plaintiffs/Appellants:** | Keith Black; Jeremy Haltom |
| **Appellate Counsel For Appellants:** | Eric M. English |
| | Jordan T. Stevens |
| | Adriana T. Young |
| | PORTER HEDGES, LLP |
| | 1000 Main Street, 36th Floor |
| | Houston, Texas 77002 |
| **Trial Counsel For Appellants[1]:** | Brandon Tittle |
| | TITTLE LAW GROUP |

---

[1] Includes representation in both the underlying bankruptcy case – Bankruptcy Case No. 19-42570 in the United States Bankruptcy Court, Eastern District of Texas, Sherman Division ("**Bankruptcy Case**") and the Adversary Proceedings – Adv. Proc. Nos. 20-04057 and 20-

5465 Legacy Drive, Suite 650
Plano, Texas  75024

And

Ronald L. Holmes
John David Reed
HOLMES FIRM, P.C.
International Plaza III
14241 Dallas Parkway, Suite 800
Dallas, Texas  75254

**Appellee:**                        Donald R. Triplett, Jr.

**Appellate and Trial**              Gregory W. Mitchell
**Counsel For Appellee**             THE MITCHELL LAW FIRM, L.P.
                                     1100 W. Campbell, Suite 200
                                     Richardson, Texas  75080

**Bankruptcy Counsel**               Joyce W. Lindauer
**For Appellee:**                    JOYCE W. LINDAUER ATTORNEY, PLLC
                                     117 South Dallas Street
                                     Ennis, Texas  75119

                                     And

                                     David R. Gibson
                                     THE GIBSON LAW GROUP
                                     15400 Knoll Trail Drive, Suite 205
                                     Dallas, Texas  75248

                                     **/s/ Gregory W. Mitchell**
                                     Gregory W. Mitchell

---

04059 in the United States Bankruptcy Corut, Eastern District of Texas, Sherman Division ("**Adversary Proceedings**").

## NO. 25-40520

## IN THE UNITED STATES COURT OF APPEALS
## FIFTH CIRCUIT

**In the Matter of**
**DONALD R. TRIPLETT, JR.,**
*Debtor*

**KEITH BLACK; JEREMY HALTOM,**
*Appellants*
**v.**
**DONALD R. TRIPLETT, JR.,**
*Appellee*

## STATEMENT REGARDING ORAL ARGUMENT

Appellee welcomes the opportunity to make oral argument given undersigned Counsel's involvement in all antecedent trial and appellate proceedings. However, Appellee believes that the Court is more than capable of analyzing the issues involved in this appeal without oral argument.

Respectfully submitted,

**/s/ GREGORY W. MITCHELL**
Gregory W. Mitchell
Attorney for Appellee

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................................v

TABLE OF AUTHORITIES.........................................................................................................vi

INTRODUCTION ..........................................................................................................................1

STATEMENT OF THE ISSUES ..................................................................................................4

STATEMENT OF THE CASE.......................................................................................................8

    A.    Bankruptcy Rule 4002 (Issue #1)...................................................................................11

        1.    The Debtor's Absence on the First Day of Trial Did Not Prejudice Appellants' Substantial Rights (Issue #2).......................................................................13

    B.    11 U.S.C. §727(a)(3) (Issue #3) .....................................................................................15

        1.    Tax Returns.................................................................................................16

        2.    Allegations Regarding Commingling................................................................19

    C.    11 U.S.C. §727(a)(4) (Issue #4) .....................................................................................22

    D.    11 U.S.C. §727(a)(6)(A) (Issue #5).................................................................................25

        1.    The 2004 Order.............................................................................................26

        2.    The Order Granting Creditors' Emergency Motion for Second Extension of Deadline for Filing Complaints Under 11 U.S.C. §§ 523 and 727....................................30

        3.    The Order Granting Creditors' Motion to Compel Debtor to Complete 2004 Examination...................................................................................................33

        4.    The Order Granting in Part/Denying in Part Creditors' Motion to Compel Discovery and Request for Sanctions' including as Later Reconsidered.....................33

    E.    Burden Shifting (Issue #6).............................................................................................34

CONCLUSION ...........................................................................................................................36

CERTIFICATE OF COMPLIANCE..........................................................................................37

CERTIFICATE OF SERVICE ...................................................................................................37

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)..........................................................................................................................39

*Barthlow v. More (In re More)*, 138 B.R. 102 (Bankr.M.D.Fla.1992) ...........................................22

*Buckeye Retirement Properties v. Tauber (In re Tauber)*, 349 B.R. 540 (Bankr. N.D. Ind. 2006)........2

*Ciccarello v. Graham*, 296 F.2d 858 (5th Cir., 1961)...................................................................38

*Grant v. Sadler (In re Sadler)*, 282 B.R. 254 (Bankr. M.D. Fla. 2002)............................................13

*Hudson v. Raggio & Raggio, Inc. (In re Hudson)*, 107 F.3d 355 (5th Cir.1997)..................................1

*Ichinose v. Homer Nat'l Bank (In re Ichinose)*, 946 F.2d 1169 (5th Cir. 1991).................................2

*In re Bradley*, 501 F.3d 421 (5th Cir. 2007) ............................................................................38

*In re Buzzelli*, 246 B.R. 75 (Bankr. W.D. Pa. 2000) ..................................................................16

*In re Caneva*, 550 F.3d 755 (9th Cir. 2008) ............................................................................19

*In re Claybrook*, 385 B.R. 842 (Bankr. E.D. Tex. 2008)..............................................................19

*In re De Ronde*, 509 B.R. 223 (Bankr. S.D. Iowa 2012) ........................................................ 13, 15

*In re Dennis*, 330 F.3d 696 (5th Cir. 2003)..............................................................................19

*In re Fabor,* 330 B.R. 235 (Bankr. N.D. Ind. 2005) ...................................................................16

*In re Hobbs*, 333 B.R. 751 (Bankr. N.D. Tex., 2005) .................................................................22

*In re Howard*, 55 B.R. 580 (Bankr. E.D. N.C. 1985)..................................................................16

*In re Hunn*, 51 B.R. 981 (Bankr. M.D. Fla. 1985) .....................................................................16

*In re Ishahak*, 130 B.R. 16 (Bankr. E.D.N.Y. 1991)..................................................................16

*In re Landin*, 2016 WL 3049626 (Bankr. W.D. Tex. May 20, 2016) ...........................................21

*In re Robson*, 154 B.R. 536 (Bankr. E.D. Ark. 1993)................................................................16

*In re Siddiqi*, No. 19-42834, 2023 WL 2771245, at *3 (Bankr. E.D. Tex. Apr. 4, 2023).............1

*Jackson v. United States*, 196 F.2d 725 (3rd Cir., 1952)........................................................38

*Martin Marietta Matl's Southwest, Inc. v. Lee (In re Lee)*, 309 B.R. 468 (Bankr. W.D. Tex. 2004) ..2

*Pher Partners v. Womble (In re Womble)*, 289 B.R. 836 (Bankr. N.D. Tex. 2003)............................1

*Prudential Ins. Co. of America v. Carlson*, 126 F.2d 607 (10th Cir., 1942)........................................38

*Rosen v. Bezner*, 996 F.2d 1527 (3d Cir. 1993) ...................................................................1

*Sanders v. Leech*, 158 F.2d 486 (5th Cir., 1946)..................................................................38

*The Cadle Company v. Duncan (In re Duncan)*, 562 F.3d 688 (5th Cir. 2009)...................................1

## Statutes

11 U.S.C. §341 ..................................................................................................14

11 U.S.C. §727(a)(2) ...........................................................................................19

11 U.S.C. §727(a)(3) .....................................................................................passim

11 U.S.C. §727(a)(4) .....................................................................................passim

11 U.S.C. §727(a)(5) ...........................................................................................17

11 U.S.C. §727(a)(6) ...........................................................................................30

## Rules

Fed. R. App. P. 32(a)(7)(B)(i) ................................................................................41

Fed. R. App. P. 32(g) ..........................................................................................41

Fed. R. Bankr. P. 1007(c) .....................................................................................13

Fed. R. Bankr. P. 4002........................................................................................passim

Fed. R. Bankr. P. 4005........................................................................................19

Fed. R. Bankr. P. 9005........................................................................................18

**TO THE HONORABLE FIFTH CIRCUIT COURT OF APPEALS:**

Donald R. Triplett, Jr. ("**Triplett**" or "**Appellee**") files this Appellee's Brief, and states:

## INTRODUCTION

1. "The bankruptcy code requires discharge of the debtor unless a statutory exception applies." *See* 11 U.S.C. §727(a); *The Cadle Company v. Duncan (In re Duncan)*, 562 F.3d 688, 695 (5th Cir. 2009). "The exceptions are construed strictly against the creditor and liberally in favor of the debtor. *See Duncan*, 562 F.3d at 695; *Hudson v. Raggio & Raggio, Inc. (In re Hudson)*, 107 F.3d 355 (5th Cir.1997).

2. Denial of a debtor's discharge is considered an extreme remedy. *In re Siddiqi*, No. 19-42834, 2023 WL 2771245, at *3 (Bankr. E.D. Tex. Apr. 4, 2023) (citing *Pher Partners v. Womble (In re Womble)*, 289 B.R. 836 (Bankr. N.D. Tex. 2003); *Rosen v. Bezner*, 996 F.2d 1527 (3d Cir. 1993)). "Courts should deny discharge only for very specific and serious infractions." *Martin Marietta Matl's Southwest, Inc. v. Lee (In re Lee)*, 309 B.R. 468 (Bankr. W.D. Tex. 2004) (citing *Ichinose v. Homer Nat'l Bank (In re Ichinose)*, 946 F.2d 1169, 1172 (5th Cir. 1991)). "The denial of a debtor's discharge is akin to financial capital punishment. It is reserved for the most egregious misconduct by a debtor." (quoting *Buckeye Retirement Properties v. Tauber (In re Tauber)*, 349 B.R. 540, 545 (Bankr. N.D. Ind. 2006).

3. Within this framework, it is important at the outset for the Court to review in detail Appellee's Motion for Sanctions ("**Appellee's Motion for Death-Penalty Sanctions**"), found at ROA.12015-12575, which details the substantial and egregious abuse of the Court system engaged in by the adversary plaintiffs in Appellee's cases.

4. It is often difficult to paint a clear picture of the circumstances surrounding litigation – the "lay of the land," if you will. Appellee's Motion for Death-Penalty Sanctions

provides a clear lay of the land. To be clear, the remaining adversary plaintiffs/Appellants – Keith Black and Jeremy Haltom – are not the abusers; they are merely pawns of the abusers, as discussed in more detail in Appellee's Motion for Death-Penalty Sanctions.[2]

5.      As described in Appellee's Motion for Death-Penalty Sanctions, Appellants have engaged in a years-long campaign of retribution against Mr. Triplett and anyone and everyone associated with Mr. Triplett following Mr. Triplett's revealing to authorities of a massive tax fraud scheme. Primarily, such campaign involved spending literally hundreds of thousands of dollars to file voluminous frivolous litigation against Mr. Triplett in an attempt to cripple him and prevent him from obtaining the "fresh start" that bankruptcy is designed to provide. Indeed, the Valks' campaign is what led to Mr. Triplett's bankruptcy filing in the first place.

6.      Appellants' cases had no merit from the very beginning. Despite throwing hundreds of thousands of dollars at the effort, Appellants' cases were no more than trumped up attempts to use their own allegations to create substance out of thin air. Thankfully, the Bankruptcy Court judge, and now the District Court judge, saw through the efforts.

7.      Given the strong presumption of a Debtor's entitlement to a discharge, it should become clear that this is not the type of case where a debtor should be denied a discharge – a case where aggressive creditors attempt to manipulate the court system such that *they* are the ones whose conduct should be viewed as reprehensible.

---

[2] As laid out in Appellee's Motion for Death-Penalty Sanctions, Ron and Shawn Valk (the "**Valks**"), plaintiffs in voluntarily dismissed Adversary Proceeding 20-04058, funded all litigation against Mr. Triplett – most likely including this appeal. ROA.011877 (¶81 therein), 011878 (¶88 therein); *see also* ROA.3389:20-003391:2 and ROA.003394:2-12 (Haltom); and ROA.003488:1-003489:17 (Black). The Valks admittedly dismissed their adversary in an attempt to avoid accountability for their actions as described in Appellee's Motion for Death-Penalty Sanctions. *See* ROA.7525 (¶16) ("the Valks feel that it is necessary to dismiss the Valk Adversary Proceeding in order to remove any chance that the Death Penalty Sanctions Motion will have an impact on the outcome of the litigation," which can be translated to "to avoid any accountability for their actions").

8.    Appellee urges that the Court find that the District Court did not abuse its discretion when it affirmed the Bankruptcy Court's conclusions that Appellants failed to satisfy their burden on all of their causes of action.

## STATEMENT OF THE ISSUES

Issue #1

As their Issue #1, Appellants fail to properly enunciate the argument that they make in their brief.  Their Issue #1 is presented as follows:

> **Issue 1:**    Did the District Court err in concluding that although Triplett violated Fed. R. Bankr. P. 4002, he was nevertheless entitled to a discharge of Appellant's claims?[3]

However, when Appellants expound on this first issue in their "Introduction," their precise complaint is the lack of or severity of the punishment delivered by the trial court.  To that end, Appellants state

> Simply put, courts must, at the very least, impose some sort of penalty for a debtor's violation of this rule.[4]

Therefore, based on the substance of Appellants' argument, their Issue #1 is more precisely stated as:

> **Issue 1 [REVISED]:**  Did the District Court abuse its discretion in failing to impose a severe penalty against Triplett for failing to appear at the first day of trial?

Such revision is appropriate because, even according to Appellants' own argument and case citations, there is far from universal acceptance of the notion that a violation of Rule 4002 automatically precludes a debtor's discharge of associated claims.

Issue #3

Appellants' statement of their Issue #3 is objectionable for two primary reasons.

First, in relation to 11 U.S.C. §727(a)(3), Appellants first point to "evidence that Triplett failed to _**provide**_ tax returns or sufficient records to deconstruct commingled accounts"

---

[3] *See Appellants' Brief*, at p. 5 (p. 20 of Doc. No. 18 in this matter).

[4] *Id.*, at p. 3 (p. 18 of Doc. No. 18 in this matter).

(emphasis added).  However, in their argument, Appellants do not dispute that Triplett produced what tax returns he had; instead, they argue that he was required to create tax returns and that failure to do so violated that section.  Similarly, Appellants reference Triplett's alleged failure to provide "sufficient records to deconstruct commingled accounts" – language that appears nowhere in the statutory language.

Second, Appellants re-urge as fact a principle that was soundly rejected by the District Court – namely that The Bankruptcy Court made an "implicit finding that Appellants established a prima facie case."

Based on the substance of Appellants' argument, as well as the relevant statutory language, Issue #3 is more appropriately stated as:

> **Issue 3 [REVISED]**:  Did the District Court misinterpret and misapply 11 U.S.C. §727(a)(3) in affirming the Bankruptcy Court Judgment by:  (a) ignoring evidence that Triplett failed to create tax returns and failed to keep or preserve records from which his financial condition or business transactions might be ascertained, unless such failure was justified under all of the circumstances of the case; and (b) failing to acknowledge that the Bankruptcy Court made an implicit finding that Appellants established a prima facie case?

This revision tracks the statutory language such that the alleged improper conduct can more accurately be compared with conduct that the statute prohibits, while still acknowledging the exception provided in the body of the statute.

Issue #4

Appellants' Issue #4 is objectionable for reasons similar to that of Issue #3. Answering the question presented is not determinative of the existence of a violation of 11 U.S.C. §727(a)(4).  Restated, one could answer "Yes" to the question presented and there still not be a violation of §727(a)(4).  The District Court's references to Debtor's conduct in its analysis of §727(a)(4) focus on the elements of the cause of action.  For example, the

District Court stated that "Debtor could have been reasonably unsure how to answer the ownership-interest question when his d/b/a was the object of the ownership." *See* ROA.22935. In that case, the District Court went on to clarify that any such omission – "if disclosure of one was even required" – could have reasonably been found by the Bankruptcy Court to have not been "made with fraudulent intent, knowledge of falsity, or reckless disregard for the truth."

The District Court went on to note that Triplett's listing of an entity on his attorney's bankruptcy questionnaire "can be explained as confused but good-faith attempts to disclose as much information as possible in the limited space afforded by bankruptcy forms," and therefore that his " '% of ownership' omission [was] not [an] intentionally false statement[ ]."

So Appellants' focus with respect to Issue #4 on the Debtor's "confusion" ignores the real issue – that being whether his conduct was made "knowingly and fraudulently" as required by the statute. Therefore, Issue #4 is more appropriately stated as:

> **Issue 4 [REVISED]**: Did the District Court err in affirming the Bankruptcy Court Judgment under 11 U.S.C. §727(a)(4) based on the District Court's failure to find Triplett's misstatements and omissions were made knowingly and fraudulently.

Once again, this revision would accurately track the statutory language such that the alleged improper conduct can more accurately be compared with conduct that the statute prohibits.

Issue #6

Appellants' statement of Issue #6 is nonsensical to the extent that it assumes that the Bankruptcy Court improperly shifted the burden of proof – an allegation that the District Court flatly rejected. *See* ROA.22933-34. Appellants' apparent true complaint is that the District Court did not agree with Appellants' contention regarding burden shifting.

Therefore, an appropriate restatement of Issue #6 would be as follows:

> **Issue 6 [REVISED]**:  Did the District Court err in failing to
> find that the Bankruptcy Court improperly shifted the burden
> of proof to Appellants with respect to 11 U.S.C. §727(a)(3)
> and the issue of whether Appellee's failures were justified
> under all of the circumstances of the case.

Such revision would first require this court to make a finding that the District Court refused

to make before turning to the issue as stated by Appellants as to whether any such burden

shifting was harmless.

## <u>STATEMENT OF THE CASE</u>

1.      Before turning to the issues presented, Appellee is compelled to correct inaccuracies in Appellants' presentation of the purported "Factual Background" of the case. In their brief, Appellants assert numerous allegations as fact that, at best, are either disputed, paint an incomplete picture, or make improper innuendo; at worst, they are clearly false.

2.      As part of their opening factual background, Appellants assert the Debtor failed to file certain "required" documents on the Petition Date, "prompting the issuance of a *Notice of Missing Documents and Notice that the Case May be Dismissed If Documents Are Not Filed by October 3, 2019.*" *See Appellants Brief*, at p. 7 (citing to "ROA.11").  No such document is referenced at "ROA.11."  In any event, the referenced documents are not due by and certainly are not late if not filed on the Petition Date.  *See* Fed. R. Bankr. P. 1007(c) (schedules, statements and other documents to be file "with the petition or within 14 days thereafter").

3.      Appellants go on to allege that the Debtor filed certain documents "two days after the Bankruptcy Court-imposed deadline."  For that assertion, Appellants cite to "ROA.12."  However, once again, no such deadline is apparent from ROA.12.  It is quite common in bankruptcy practice to seek extensions of the initial deadline to file bankruptcy schedules, but this record does not reflect any late filing of the schedules.

4.      Similarly, Appellants allege that the Debtor "failed to file his Pay Records," once again citing to "ROA.12."  And once again, no reference to "Pay Records" is found at ROA.12.  Nor are pay records even required if a debtor is self-employed.

5.      In the next paragraph, Appellants imply that numerous creditors had problems with Debtor's answers to questions at his 11 U.S.C. §341 meeting of creditors

("Finding Triplett's responses to the questions asked of him at the Section 341 Meeting of Creditors evasive and his SOFA, Schedules, and Statement of Monthly Income glaringly false, several of Triplett's other creditors . . ."). Only later is it clear that the only creditors making such allegations were Shawn and Ron Valk (notably, the adversary plaintiffs whose cases actually went to trial (Appellants herein) never appeared at the creditor meeting and never testified at trial). This form of argument – whereby the alleging party fabricates allegations and then later repeats them as if they were fact – is indicative of the Valks and their lackeys, Keith Black and Jeremy Haltom.

6.      In the very next paragraph, Appellants make spurious allegations in their brief that "Black's proof of claim was in the amount of $186,176.70, and Haltom's proof of claim was in the amount of $262,840.66 – **both caused,** *inter alia*, **by Triplett's fraud**. For this proposition Appellants cite to "ROA.2389, 20007." ROA.2389 represents a copy of Keith Black's Proof of Claim, and there is zero mention of fraud therein. Similarly, the *Final Judgment* attached to Black's Proof of Claim (*see* ROA.2391-93) explicitly states the following:

> Following the Court's rendition of judgment, Plaintiff KEITH BLACK, through his counsel, announced on the record the non-suit without prejudice claims asserted in Plaintiff's Original Petition based upon causes of action for Fraud, Fraud in a Securities Transaction, and Conversion.

7.      Similarly, ROA.20007 is a page from the Debtor's schedules that has nothing to do with a claim of either Keith Black or Jeremy Haltom, much less allegations of fraud.

8.      The factual misrepresentations continue on p. 9 of *Appellants' Brief*, where Appellants allege that the "2004 Order" (as defined therein) "required Triplett to obtain **from original sources** documents identified in the Order . . .". The cite for that assertion is "ROA.14." That cite – which references the Bankruptcy Court's Findings and Conclusions - makes reference to the Court's order granting authority to take a Rule 2004 examination, but

does not contain any language from that order. The actual 2004 Order can be found at ROA.999-1004. A review of the 2004 Order makes clear that there is neither reference to nor requirement that Triplett "obtain from original sources documents identified in the Order." The allegation is simply false.

9.      In yet another example of the Valks and Appellants making accusations and then using those allegations as purported proof of wrongdoing, in the very next paragraph (the last paragraph beginning near the bottom of p. 9 of *Appellants' Brief*), Appellants state, "On February 28, 2020, **due to Triplett's failure to provide complete information and his concealment of financial accounts**, the Valks and Appellants filed . . ." (emphasis added). No court ever made such a finding. The cite for this proposition is "ROA.32-33, 2402." ROA.32-33 references the Bankruptcy Court's Findings and Conclusions, but the only relevant finding therein is simply a reference to Appellants' filing of a motion – not the allegations on which such motion is based. ROA.2402 is similarly just a copy of Appellants' motion – NOT a finding of any court. It's simply an allegation that Appellants fabricated and then used as the basis for filing a motion. And then here, in *Appellants' Brief*, it's now represented as fact. It is not fact, and any such statement belongs in the "Argument" section – not as part of "Factual Background."

10.      These kinds of factual representations continue throughout the supposed "Factual Background," rendering Appellants' "Factual Background" as completely lacking in credibility.

## SUMMARY OF THE ARGUMENT

Put simply, the Bankruptcy Court did not err in finding that Appellants failed to satisfy their burden of proof on all causes of action.  Similarly, the District Corut did not err in upholding the Bankruptcy Court's findings and conclusions.

## ARGUMENT

### A.  Bankruptcy Rule 4002 (Issue #1)

11.    At the outset of Appellants' argument related to Fed. R. Bankr. P. 4002 ("**Rule 4002**"), Appellants desperately seek to lay out what they wish caselaw would say regarding Rule 4002 – that any Debtor found to be in violation of that rule "must be denied a discharge." *See Appellants' Brief*, at p. 16.  Unfortunately, recognizing that caselaw doesn't support that position, Appellants immediately diminish their own argument by adding "or at a minimum face some form of penalty." *Id.*

12.    The immediate backpedaling reveals the problem with Appellants' position, and that is that there is no "one size fits all" ramification for a violation of Rule 4002.  The rule itself provides no consequences for a Debtor's failure to appear at a hearing on a complaint objecting to their discharge.  That's not to say there should never be consequences, but there could be a variety of reasons that a Debtor may miss one or more days of trial, or a portion of one day.

13.    Rule 4002(a)(2) – the provision in question – provides that

> **In General.**  In addition to performing other duties prescribed by the Code and rules, the debtor shall:
>
> . . .
>
> (2) attend the hearing on a complaint objecting to discharge and testify, if called as a witness.

14.    To be clear, Mr. Triplett appeared at the trial.  Out of a four-day trial, Triplett was not in attendance for one day.  What's more, there is no evidence in the record that supports why Debtor was not present on the first day of trial.

15.    Therefore, based on a purely literal reading of Rule 4002(a)(2), the Debtor complied with the Rule.  To the extent his absence on Day One constitutes a violation, the question then becomes what the appropriate consequence should be.  The existence of an infinite number of scenarios involving the absence of a Debtor once again makes clear that there is no universal consequence for missing a day of trial.  Appellants would have this Court believe any absence warrants a denial of discharge, but that is simply not the case, and courts have not followed such a rule.  The Rule doesn't mandate a specific punishment.  And caselaw makes clear that trial courts have wide discretion to determine what is appropriate.

16.    In its opinion, the District Court cited to the case of *In re De Ronde*, 509 B.R. 223 (Bankr. S.D. Iowa 2012) – a case cited with approval by Appellants.  Therein, the debtor failed to appear for the entirety of the trial on a complaint to deny her discharge.  In that case, the court made clear that

> [w]hether a discharge may be denied through a motion for
> default based solely upon a violation by the debtor-defendant
> of Bankruptcy Rule 4002(a)(2) is left to the discretion of the
> court (citing to *Grant v. Sadler (In re Sadler)*, 282 B.R. 254, 262-
> 63 (Bankr. M.D. Fla. 2002)).

17.    That court acknowledged that De Ronde's failure to appear could have been grounds for denial of a discharge if the Plaintiff had presented a prima facie case.  However, the plaintiffs' pre-trial request for a default judgment based upon De Ronde's failure to appear was denied, which required their claims to be established under the requisite burden of proof.

18.     In that case, however, the plaintiffs successfully met their initial burden under 11 U.S.C. §727(a)(5) in showing that assets were obtained by De Ronde during a time period not too remote from her bankruptcy filing, and on the date she filed her petition she no longer had these assets. At that point, the burden shifted to the debtor, who was unable to satisfy her burden of explaining her loss of assets.

19.     The exact same analysis was applied in the case at bar. Only in this case, the Bankruptcy Court found that Plaintiffs failed to satisfy their burden. Therefore, contrary to Appellants' burden shifting argument,[5] the burden never shifted to Defendants.

20.     Once again, the overarching theme of cases that have addressed a violation of Rule 4002(a)(2) is that the Bankruptcy Court has substantial discretion to determine an appropriate remedy for a violation found to exist.

21.     The Bankruptcy Court did not abuse its discretion in failing to impose the harsh punishment urged by Appellants.

### 1. The Debtor's Absence on the First Day of Trial Did Not Prejudice Appellants' Substantial Rights (Issue #2)

22.     Despite finding that the Debtor did violate Rule 4002(a)(2), the District Court applied the harmless error rule of Fed. R. Bankr. P. 9005 and found that Debtor's absence did not prejudice Appellants' substantial rights.

23.     Appellants respond to this conclusion in their brief by attempting to enunciate a "substantial right" that was prejudiced. However, the only response Appellants have been able to conjure appears to be that:

> (1) the right to call him as a witness *was* the "substantial right"; and
>
> (2) the fact that they were unsuccessful at satisfying their burden, thereby leading to the Debtor's discharge, was the "substantial right".

---

[5] *See, infra.*

24.     Regarding the argument that the "substantial right" was the right to call the Debtor as a witness, this argument begs the question of what the harm was. Despite being given the opportunity to enunciate at oral argument to the District Court, and despite the opportunity to do so in their brief to this Court, Appellants have been unable to identify a single question that they did not get to ask Mr. Triplett in the trial court. *See* ROA.22926 ("At oral argument on appeal, this court asked creditors whether there were any specific questions that they would have asked debtor on direct examination that they were unable to ask him during cross-examination. They identified none."). The right to call a witness does not automatically render evidence necessary to meet a burden of proof.

25.     Regarding the circular argument that Debtor's discharge is the "substantial right," Appellants ignore the bankruptcy court's conclusion that they failed to carry their burden of proof. As the court in *In re De Ronde* found – a case cited with approval in *Appellants' Brief* – if the trial court in its discretion refuses to grant a default judgment, then Plaintiffs must satisfy their burden. Here, they failed to do that, despite admittedly having sufficient opportunity to ask whatever questions of the Debtor they wanted to ask. There is no caselaw support for Appellants' "per se harm" or "harm as a matter of law" arguments.[6]

---

[6] Appellants point to numerous cases that purportedly stand for the proposition that "a debtor's violation of Bankruptcy Rule 4002, alone, is sufficient to deny discharge." *See Appellants Brief*, at p. 24 and FN 79 therein. However, the cited cases do not support that proposition. Quite to the contrary, in every single case cited, the court found that (contrary to this case) the plaintiff had met its burden of proof.

➔ *In re Fabor,* 330 B.R. 235 (Bankr. N.D. Ind. 2005): this very first case cited, held that the plaintiff therein had established a prima facie case – *not* that the plaintiff was entitled to judgment merely because the debtor did not appear.

➔ *In re Robson*, 154 B.R. 536 (Bankr. E.D. Ark. 1993): while the Court did make reference to the debtor's absence, the court went on to identify multiple specific reasons for denial of discharge, including "continuing fraud" and "violations of Orders". The Court even noted that "the debtors have managed to meet the requirements for several of the nondischarge provisions under section 727." *Id.*, at 539.

➔ *In re Ishahak*, 130 B.R. 16 (Bankr. E.D.N.Y. 1991): once again, the court here made a clear finding that the plaintiff had met its burden of proof ("In the instant case County established a *prime facie* case

In any event a discharge is a debtor's right, not a creditor's – a right that can only be withheld if a creditor meets its burden.  Appellants' extensive citation to legislative history and predecessor bankruptcy statutes does not change the fact that Appellants failed to carry their burden of proof.  The numerous cases – cases cited by Appellants – where plaintiffs were able to satisfy their burden of proof demonstrates that Appellants' argument that the District Court's application of the harmless error rule somehow creates "perverse incentives" for debtors to ignore rules and force creditors to overcome the harmless error standards is meritless.  Creditors have been able to satisfy their burden of proof and establish such harm.  But Appellants could not.  The District Court did not err in so finding.

## B.  11 U.S.C. §727(a)(3) (Issue #3)

26.     When beginning the analysis of 11 U.S.C. §727(a)(3), it is important to have in mind the text of the statute – in particular, the statutory list of conduct that can warrant a denial of discharge under that section. 11 U.S.C. §727(a)(3) provides that a Court may deny a debtor a discharge if it is shown that

---

by proving all the elements necessary to sustain an objection to discharge under sections 727(a)(2)(A).").

➔ *In re Hunn*, 51 B.R. 981 (Bankr. M.D. Fla. 1985):  yet again, this court found that the plaintiff met its burden ("In direct violation of Bankruptcy Rule 4002, the debtor failed to appear at the trial. Nevertheless, Rule 4005 places the burden of proof in objection to discharge on the plaintiff. We must determine whether the plaintiff presented enough evidence to raise an inference of conduct proscribed by the provisions under which the complaint is brought, to shift to the defendant the burden of going forward with the evidence. We find that the plaintiff's testimony was sufficient . . .").

➔ *In re Howard*, 55 B.R. 580 (Bankr. E.D. N.C. 1985):  in this case, the Court only mentioned the debtor's failure to appear after making findings that included:  (1) Numerous transfers were engaged in to defraud creditors; (2) the debtor engaged in a "continuing concealment" of assets; and (3) None of the transfers were reflected on Debtor's schedules and that such failure constituted a "false oath or account".  Therefore, once again, the plaintiff here satisfied their burden of proof.

➔ *In re Buzzelli*, 246 B.R. 75 (Bankr. W.D. Pa. 2000):  the Court made voluminous findings regarding the debtor's failures in producing recorded information ("PNC has proven by a preponderance of the evidence that the debtor has either concealed, or failed to keep or preserve, any and all recorded information which the Court orally directed the debtor to produce but which has not yet been produced by the debtor")

---

> the debtor has **concealed**, **destroyed**, **mutilated**, **falsified**, or **failed to keep or preserve** any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case; [emphasis added]

11 U.S.C. §727(a)(3).

27.     Appellants challenge the trial court's conclusion and the District Court's affirmation that they failed to satisfy their burden under 11 U.S.C. §727(a)(3).  Although Appellants' argument in this regard is not entirely clear, they appear to argue simply that, because other courts have denied discharges in some cases in allegedly similar circumstances, the District Court erred by not doing so here.

28.     In doing so, Appellants first ignore the clear discretion provided bankruptcy courts as the trier of fact.  Appellants acknowledge at the outset of their analysis under 11 U.S.C. §727(a)(3) that "[a] court **may** deny a debtor a discharge . . .," but then ignore such discretion in their analysis.

### 1. Tax Returns

29.     With respect to the issue of tax returns, Appellants once again misrepresent not only the law but the case cited in support when they allege that the failure to create tax returns can constitute grounds for denial of discharge.  The statute says no such thing.  The statute uses the following specific terms related to actions of a debtor that can warrant a denial of discharge:

(1) Conceal;
(2) Destroy;
(3) Mutilate;
(4) Falsify; and
(5) Fail to keep or preserve.

30.     Each of those terms implies action related to documents that already exist, as opposed to the failure to create documents.

31.     Notably, Appellants did not state that Mr. Triplett failed to produce documents that could be used to prepare tax returns – only that such returns were not actually prepared.  Tax returns are a reflection of other source data – not source data itself.

32.     The District Court flatly rejected Appellants' attempt to add language to the statute that is not there when it noted,

> [b]y the subsection's plain language, it is not clear that it requires a debtor to create or file tax returns at all. . . . Failure to create and failure to file tax returns could not fall within concealing, destroying, mutilating, or falsifying. Those are active; failure to create and failure to file are passive.

ROA.22928.

33.     The District Court went on to similarly reject the applicability of the final provision of §727(a)(3) – failure to keep and failure to preserve – stating "[n]either failure to keep nor failure to preserve encompasses the failure to *create* tax returns in the first place" (emphasis in original).[7]  ROA.22929.

34.     In support of this assertion – *i.e.*, that courts have refused to discharge debtors who failed to file returns – Appellants point to *In re Claybrook*, 385 B.R. 842 (Bankr. E.D. Tex. 2008).  In that case, however, it is clear that the debtor therein filed, but failed to produce, tax returns.  Appellants similarly cite to *In re Dennis*, 330 F.3d 696 (5th Cir. 2003) for the same proposition.  This Court should be offended at the misrepresentation of this Court's own holding, as *In re Dennis* stands for nothing of the sort.  To the contrary, this

---

[7] In their brief, Appellants assert "section 727(a)(3) places an affirmative obligation on debtors to create adequate records," citing to *In re Caneva*, 550 F.3d 755, 762-[*sic*] (9th Cir. 2008).  However, even their cited language does not say that.  Their cited language states that "[T]he statute imposes an affirmative duty on the debtor **to keep and preserve** recorded information . . ." (emphasis added).  Nowhere in the cited language, nor in the entirety of that case, does it say anything about an affirmative duty to **create** a tax return.

Court in *In re Dennis* made an explicit finding that "Dennis also filed several income tax returns," in direct contrast to the arguments being made by the plaintiff in that matter.

35.    Perhaps more importantly, Appellants have cited to no cases where there were facts like those present in this case where information that could have been used to prepare tax returns was stolen by the very same party that is now complaining about the failure to file tax returns.

36.    In any event, Mr. Triplett explained in his testimony at trial why he failed to file tax returns.  He credibly testified that he had been advised by counsel not to file them based on the lack of sufficient documentation – much of which had been stolen by the Valks (the party funding Appellants' litigation).  *See* ROA.09989:25-09991:15.  Section 727(a)(3) makes clear that any such act or failure to act can be found to be justified under all of the circumstances.  However, it is also perfectly reasonable for the Bankruptcy Court to find, and the District Court to affirm, that because of the issues related to the destruction of documents, that Appellants never met their burden in the first place such that the burden never needed to shift to Appellee to show justification.  If the Appellee's documents were destroyed by the Valks, then it makes sense that Appellants could not establish that Appellee was responsible for "conceal[ing], destroy[ing], mutilate[ing], falsif[ying], or fail[ing] to keep or preserve any recorded information."  Because, in fact, it was the Valks that were responsible for such destruction.

37.    It was not, therefore, an abuse of discretion for the Bankruptcy Court to have found that Mr. Triplett's explanation of the failure to file tax returns was justified under the circumstances (to the extent any justification was even necessary).  The fact that it is the very people that are complaining about the failure to file tax returns (the Valks and their

lackeys, Keith Black and Jeremy Haltom) that stole the information that could be used to prepare those returns renders such a conclusion warranted.

38.    Moreover, Appellants' argument regarding tax returns ignores the fact that tax returns are a reflection of other source data – source data that they undisputedly had in their possession, because it was admitted into evidence at trial.  If Appellee had produced tax returns, Appellants would instead be arguing today that those tax returns were false and did not accurately reflect Appellee's financial condition.  Instead, however, Appellants had voluminous records that allowed them to drill down much further than the summary information found in tax returns.  It goes to show that Appellants were more focused on making allegations against Triplett than they were about truly attempting to understand his financial situation.  The reality is that they understood his financial situation – he was broke as a result of their conduct.  But that wasn't enough.  They wanted to exact punishment.  They wanted him prosecuted for fabricated crimes.  That conduct is the very conduct that is laid out in detail in Appellee's Motion for Death-Penalty Sanctions.  *See, supra,* at Introductory ¶¶2-3.

### 2.    Allegations Regarding Commingling

39.    Appellants go on to make reference to the alleged commingling of funds.  However, to be clear, every entity that Mr. Triplett was involved in had its own bank account, and bank statements for every account was obtained by Appellants and included in the record at trial.

40.    Therefore, the notion that such records were not maintained and maintained separately is curious at best.  Plaintiffs' trial exhibits included bank statements from Triplett

individually; from Preferred Platinum Construction, Triplett's DBA; and from Copper Creek Distributors.[8]

41.     As to Preferred Platinum, Appellants had all of the bank statements of Preferred Platinum, and they are part of the record. *See* ROA.4689-4743; ROA.5596-5698. However, Preferred Platinum was a DBA of Mr. Triplett. Therefore, the allegation that Mr. Triplett commingled business and personal funds is meaningless. By definition, as a DBA, funds of Preferred Platinum were funds of Mr. Triplett. It's not commingling if the funds belong to the same person.

42.     Finally, Appellants ignore caselaw that has held that the alleged failure to produce business records cannot form the basis for denial of discharge under §727. In *In re Hobbs*, 333 B.R. 751 (Bankr. N.D. Tex., 2005), Judge Hale concluded that:

> The inability to produce or locate the financial records of her company, in itself, will not deprive Defendant the opportunity for a fresh start, particularly when the company has been dissolved for almost three years before the bankruptcy petition was filed. (citing *Barthlow v. More (In re More)*, 138 B.R. 102, 105–106 (Bankr.M.D.Fla.1992).
>
> . . .
>
> The debtor is in bankruptcy individually; the company is not. The records from the storage units relate to the company and are not within the statute. Therefore, the fact that they were not retained or produced would not cause the Debtor to be deprived of her discharge. Defendant will not be denied discharge based on the inadequate production of corporate records.

*In re Hobbs*, 333 B.R. 751, 757.

---

[8] These facts clearly distinguish this case from the facts of *In re Landin*, 2016 WL 3049626 (Bankr. W.D. Tex. May 20, 2016), a case cited in *Appellants' Brief* for the proposition that the failure to keep records that would differentiate between business and personal expenses could be a violation of §727(a)(3). *See* p. 28-29 therein. In *Landin*, it was explicitly found that the debtor therein used one bank account for all of his personal and business expenses.

43.     At the time of Mr. Triplett's bankruptcy filing, DFW Design had not operated for more than three years, as reflected by the latest bank statement showing any activity.  *See* ROA.8094 (85:14-15 therein).

44.     Once again, however, the Appellants have more than enough information with respect to Mr. Triplett's businesses to determine both his financial condition and the financial condition of the business.

45.     In its analysis, the Bankruptcy Court took all of the information into consideration and concluded that Appellants had not met their burden.  The Court made the following specific conclusions of law:

> 15.  Plaintiffs contend Defendant failed to turn over:  (1) information regarding personal bank accounts and others belonging to DFW Design & Remodeling, Preferred Platinum Construction, and Copper Creek, (2) Quickbooks records for DFW Design & Remodeling, Preferred Platinum Construction, and Copper Creek, and (3) Defendant's 2017 income tax return.
>
> 16.  The evidence presented to the Court was convincing that Defendant made significant efforts to obtain, produce, and disclose records from which his financial condition and business transactions might be obtained.  The Court takes this duty on the part of a debtor seriously.
>
> 17.  The evidence was equally convincing that in the underlying bankruptcy, Plaintiffs' counsel was quick to seek to sanction and compel, but less diligent in clearly communicating precisely with counsel for Defendant regarding what was being sought.  While Defendant himself sincerely attempted to meet the disclosure requirements necessitated by a bankruptcy filing and the additional demands made by Plaintiffs his counsel at times was less successful at being clearly responsive to or communicative regarding the significant demands made by Plaintiffs.

ROA.10203.

46.     Based on those conclusions, the Court went on to find that Appellants failed to satisfy their burden.  The Court's conclusions are not clear error and are well within the Court's discretion as factfinder.  The District Court did not abuse its discretion in upholding the Bankruptcy Court's rejection of Appellants' cause of action under 11 U.S.C. §727(a)(3).

47.      Appellants conclude their analysis of 11 U.S.C. §727(a)(3) by returning to their insistence that the Bankruptcy Court *must* have found that Appellants met their burden because it allegedly used Triplett's rebuttal evidence.  But the logic is faulty.  The very same evidence that goes to show that Mr. Triplett may have been justified in failing to do certain things (*e.g.*, he was likely justified in failing to file tax returns because Appellants stole his data) also goes to negate Appellants' case that Triplett ever violated any provision of §727(a)(3).  If, for example, Triplett's data was stolen, then he could not have been the one who "concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information."  Therefore, once again, the Bankruptcy Court's findings that Appellants failed to meet their burden was more than reasonable and was well within his sound discretion.  And the District Court was equally justified in accepting the Bankruptcy Court's findings.  The District Court's footnote with respect to which Appellants are so critical – *see Appellants Brief*, at p. 37 – simply points to that very fact – *i.e.*, that evidence that could go to justification also goes to negate an elements of Appellants' cause of action.  *See* ROA.22931.

C.  <u>11 U.S.C. §727(a)(4) (Issue #4)</u>

48.      Turning to 11 U.S.C. §727(a)(4), Appellants' allegations are riddled with half-truths and misrepresentations regarding the evidence at trial.  But perhaps the most confusing part of Appellants' Brief regarding §727(a)(4) is the fact that Appellants never even attempt to explain which statements are allegedly false oaths.

49.      *Appellants' Brief* leads this section of its brief off with the supposed "example" of a false oath in Debtor's disclosures in his bankruptcy Schedule A/B, where he allegedly "failed to disclose an ownership interest in Preferred Platinum Construction."  *See Appellants' Brier*, at p. 39.

50.     This allegation is simply false.  Mr. Triplett's Bankruptcy Schedule A/B very clearly discloses his interest in Preferred Platinum Construction:

**19. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**

☐ No
☑ Yes.  Give specific information about them...........................

| Name of entity: | % of ownership: | |
| --- | --- | --- |
| DFW Design & Remodeling, INC —Insolvent | 90% | $0.00 |
| TV Arrowhead LLC (1 asset -Lake House) Sold -Funds went to the Trustee | 50% | $325,000.00 |
| Preferred Platinum Construction | | $0.00 |
| Copper Creek Distributors, Inc. | | $0.00 |
| DFW Design & Remodeling | 100% | $0.00 |
| DFW Design Flooring and More | 100% | $0.00 |
| iTri4Life | 100% | $0.00 |
| Platunum Storage GL, LLC | 100% | $0.00 |
| Preferred Platinum Storage Construction | 100% | $0.00 |

*See* ROA.4033.

51.     Mr. Triplett did not list an ownership percentage because, as the undisputed and uncontroverted trial testimony demonstrated, Preferred Platinum Construction was simply a DBA of Mr. Triplett.  It seems axiomatic that one does not own a percentage of oneself.  And yet Appellants want to paint Mr. Triplett's failure to so identify an ownership percentage as some sort of devious concealment.  The argument borders on the preposterous.  Not only did Mr. Triplett disclose the dba name, but Appellants had every bank statement that Preferred Platinum Construction ever had.  The record is replete with such statements.

52.     In fact, the record makes clear that Appellants understood that Preferred Platinum was simply a DBA.  In their witness and exhibit list – *see* ROA.4021 – Appellants identified Exhibit 38 as "Prosperity Bank Account for Preferred Platinum."  However, a review of Exhibit 38 – *see* ROA.5574-5592 – plainly reveals that, at least for the account ending in -6778, the bank statements are in the name of "Donald R. Triplett, Jr. DBA Preferred Platinum Construction."  *See, e.g.,* ROA.5596, 5599, 5604, 5612, etc.

53.      Continuing with the oblivious nature of Appellants' analysis under 11 U.S.C. §727(a)(4), Appellants continue to argue that "Triplett also failed to disclose an interest in Copper Creek," despite the fact that the overwhelming uncontroverted evidence at trial demonstrated that Copper Creek was owned by Tripett's spouse. *See, e.g.,* ROA.5562-5573. The only "evidence" that Appellants point to is a questionnaire that Triplett filled out for his attorney. At the risk of stating the obvious, a questionnaire filled out for an attorney is not an "oath" that can be the subject of a cause of action under 11 U.S.C. §727(a)(4). Appellants further allege that his questionnaire response "directly contradicts" his Rule 2004 examination testimony that he was not an employee of Copper Creek,[9]  purportedly because his questionnaire response indicates that Copper Creek is a "source of income." Notwithstanding the fact, once again, that a questionnaire response is not a "statement made under oath," Appellants ignore the fact that being an employee is not the only way to derive a "source of income." Independent contractors derive a source of income and are not employees. Therefore, even if the bankruptcy questionnaire constituted an "oath," Appellants have not established any inconsistency in Appellee's statements.

54.      Continuing with allegations regarding alleged false oaths, Appellants suggest that Triplett made false statements when, "in his SOFA, Triplett listed his gross income as $180,000.00. However, the total income calculated from Triplett's bank statements is $304,000.00." *See Appellants' Brief*, at 39-40. This "apples-to-oranges" comparison is evident on its face, as bank deposits do not translate directly to "gross income." A wide variety of bank deposits would not constitute income, including receipts such as expense

---

[9] Appellants' cite for this in their brief is to the Bankruptcy Court's Findings and Conclusions, at ROA.10174.

reimbursements, tax refunds, repayment of loans, and insurance claims. Appellants don't even attempt to reconcile the difference. Therefore, their comparison is meaningless.

55.     Appellants conclude their analysis under §727(a)(4) with several references to Triplett stating that occasionally his review of documents was less than a thorough analysis. But this analysis adds nothing to Appellants' argument to establish that any of Triplett's statements made under oath were false. Appellants have not established that Mr. Triplett made any false oaths, much less that he did so "knowingly and fraudulently."

56.     Appellants' framing of the issue under §727(a)(4) suggests that the District Court erred by finding that "Triplett's many misstatements and omissions were simply the product of his confusion." But neither the Bankruptcy Court nor the District Court ever found that Triplett made any such "misstatements and omissions." The District Court only made reference to "confusion" when it described Triplett's disclosure regarding Copper Creek Distributors on his bankruptcy questionnaire as a "confused but good-faith attempt[ ] to disclose as much information as possible in the limited space afforded by the bankruptcy forms." The District Court made it clear just one sentence above when it adopted the bankruptcy court's finding that Triplett "was not the owner of that company at all." Therefore, no such disclosure was even required. Therefore, there was no misstatement. The District Court similarly found that listing a percentage owned of a DBA was meaningless and that such an "omission" did not constitute an intentionally false statement. In fact, it was not false at all.

57.     The Bankruptcy Court did not err in finding that Appellants failed to carry their burden under 11 U.S.C. §727(a)(4), and the District Court did not err in refusing to find any sort of abuse of discretion.

### D. 11 U.S.C. §727(a)(6)(A) (Issue #5)

58.     Appellants' final attempt to deny Mr. Triplett's discharge is brought under 11 U.S.C. §727(a)(6)(A) for his alleged "refus[al] to obey numerous lawful orders entered by the Court in his bankruptcy case and in connection with the 2004 Examination of him."

59.     Appellants have not brought forth anything new that was not already rejected by both the Bankruptcy Court and the District Court.

60.     11 U.S.C. §727(a)(6)(A) provides that a court may deny a debtor's discharge if it is established that the debtor has refused to obey any lawful order of the court (other than an order to respond to a material question or to testify).

61.     Appellants once again allege that Triplett violated the following orders:

(1) The 2004 Order;

(2) The Order Granting Creditors' Emergency Motion for Second Extension of Deadline for Filing Complaints Under 11 U.S.C. §§ 523 and 727;

(3) The Order Granting Creditors' Motion to Compel Debtor to Complete 2004 Examination; and

(4) The Order Granting in Part/Denying in Part Creditors' Motion to Compel Discovery and Request for Sanctions including as later reconsidered.

And once again, Appellants are incorrect.

62.     Just as Appellants failed to engage in any sort of detailed analysis of the orders that they allege Triplett violated in their appellate brief the District Court, they once again fail to so much as cite to a single provision of any of the alleged violated orders. Instead, they make conclusory allegations of violation based on half-truths and incomplete information.  Appellee will once again endeavor herein to clarify the record, thereby clarifying why the trial court's conclusions were appropriate and not in error, and why the District Court did not err in upholding the Bankruptcy Court's findings and conclusions.

1.  **The 2004 Order**

63.     The 2004 Order – found at ROA.20228-20233 – makes the following

specific orders directed at Mr. Triplett, as follows:

(1) [¶3]: ". . . Donald R. Triplett, Jr. shall submit to a ten (10) hour examination[10] that may be split into two different days . . . regarding the various subject areas as described in the Motion."

(2) [¶7]: "Triplett is directed to (a) take any reasonable actions necessary for the Valks, Haltom, and Black to obtain those documents identified on **Exhibit A** attached hereto and incorporated by reference from the original sources of such documents; and (b) produce any documents identified on **Exhibit A** that are in his possession or control and have not yet been produced to the Valks, Haltom, and Black." and

(3) [¶10]: "Triplett shall cooperate with all discovery requests from the Valks, Haltom and Black in good faith to ensure that the Valks, Haltom, and Black receive the documents in a timely manner."

64.     Appellants fall well short of establishing any violation by Mr. Triplett of any

of these positions, thereby confirming that the Bankruptcy Court's decision was appropriate.

65.     Mr. Triplett clearly appeared and submitted to a 2004 Examination.  *See*

ROA.8073-8127 (Day #1 – May 18, 2020); ROA.8167-8222 (Day #2 – May 19, 2020); and

ROA.8564-8618 (Day #3 – August 8, 2020).

66.     And although Appellants point to a statement made by Mr. Triplett that he

was only going to testify "[f]or five hours today and tomorrow.  And that's it"  (*See*

ROA.8075 (12:20-21 therein), when a subsequent judge's order was explained to him, he

clearly appeared as required.  *See* ROA.8564-8618.  At trial, Mr. Triplett explained his

misunderstanding,

> What I didn't know at that time was there had been another
> hearing which nobody made me aware of and in which Ms.
> Lindauer was also not at the hearing, where I guess the judge
> changed her mind and she did an order that said it was going
> to be unlimited.  And as we sit here, I don't believe Ms.

---

[10] In their brief, Appellants make much of the length of the examination after it was subsequently changed. However, Mr. Triplett's understanding at the time of being questioned on the subject of the required length of the examination was based on this language.

> Lindauer knew that. And I know for sure that I didn't know that on that particular day, okay. I subsequently found out that not only did she change it, but had also made some type of ruling that she wanted me to be at every hearing. And I - - I didn't know why. I didn't question it. I just had to comply with it. But I did go to that deposition. I did do three days, I believe, of depositions as a result of that change.
>
> . . .
>
> It was truly my belief on the day that I was sitting there that I did not have to be more than 10 hours. It was subsequently proven to us that that was not the case and that the judge had, in fact, said it was unlimited. And I didn't like it, but I did comply with it.

ROA.9904:23-9905:20.

67.     And to be clear, Appellants were able to complete their examination of Mr. Triplett on August 8, 2020. *See* ROA.8617 (Mr. Reed, counsel for Appellants, announced, "I am going to pass the witness, and I am done for the day.")

68.     Appellants have repeatedly alleged that Mr. Triplett "refused to produce responsive documents." That allegation is both inaccurate as well as incomplete in its analysis. Even if Mr. Triplett had not produced any documents, Appellants had full authority to obtain documents sought (which they did), and Mr. Triplett only had to cooperate with that effort to the extent such cooperation was sought. Appellants point to no attempt to request cooperation with Mr. Triplett, nor can they point to any lack of such cooperation. The fact that every bank statement for every account and every credit card statement for every account of Mr. Triplett's is part of the trial court record is clear evidence to that effect.

69.     Interestingly, the only support cited in Appellants' Brief to the record in support of their allegation that Mr. Triplett refused to produce responsive documents (*see* Appellants' Brief at 42-43) is a reference to "ROA.8046" [FN116] – which is Appellants'

own allegations in their *Creditors' Emergency Motion for Second Extension of Deadline for Filing Complaints Under 11 U.S.C. §§ 523 & 727*.  This sort of misdirection was employed repeatedly by Appellants in motions and hearings throughout – *i.e.*, using their own allegations as supposed proof of a failure to comply.

70.    In their brief, Appellants focus only on (2)(b) of the 2004 Order – the production of documents in Mr. Triplett's possession or control.  They fail to engage in any analysis of other provisions.  In particular, Appellants fail to engage in any analysis of Paragraph #9, which states:

> [¶9]:  The Valks, Haltom, and Black may also employ subpoena powers on Triplett's financial institutions and credit card companies, including those in which Triplett is the signatory and/or authorized user on the account, to retrieve the documents identified in the Motion.

ROA.8026.

71.    Appellants also fail to make clear to this Court that that is exactly what they did.  Appellants issued subpoenas to every financial institution and every credit card company that Mr. Triplett had an account – either in his personal name or in the name of a business.  The record is replete will all of these account statements.  *See e.g.,* ROA.4905-4975 (Bank of America statements); ROA.4689-4755 (Colonial Bank statements); ROA.5574-5765 (Prosperity bank statements); ROA.8281-8330 (USAA statements).

72.    Further, Appellants have failed to point to any evidence that supports the idea that Mr. Triplett failed or refused to "cooperate with all discovery requests" as ordered.

73.    Appellants inaccurately represent Mr. Triplett's testimony at his 2004 examination (*see* p. 44 of *Appellants' Brief*) when they suggest that Mr. Triplett "confirmed he had taken no actions and made no inquiries to procure the financial information and records."  To the contrary, Mr. Triplett testified that he "search[ed] high and low, anything

that I have in my possession or anything that I have control over in my possession, and provide it." *See* ROA.8081 (35:5-8 therein). Mr. Triplett further testified that he had called financial institutions and had been informed that there would be substantial costs associated with obtaining the records sought. Mr. Triplett responded that he had not done specific things asked by counsel for Appellants, but Appellants did not and cannot establish that the actions they were insisting that he take were, in fact, required. They were not. A debtor in a chapter 7 bankruptcy cannot be required by a creditor (and indeed was not required by the Court) to spend hundreds or thousands of dollars obtaining records (in this case, indeed, many of which the creditors already had because they stole them).

74.    Mr. Triplett credibly testified at trial that his business records had been stolen by these very Appellants (*see, e.g.,* ROA.9877), which logically explains why he didn't have those records in his possession to be able to provide. But once again, Mr. Triplett never failed or refused to cooperate with Appellants' obtaining that information, as demonstrated by the fact that there is no evidence to the contrary. If such evidence existed, Appellants would have surely pointed to it.

75.    Mr. Triplett satisfied all of the requirements of the 2004 Order.

**2.    The Order Granting Creditors' Emergency Motion for Second Extension of Deadline for Filing Complaints Under 11 U.S.C. §§ 523 and 727**

76.    Appellants next allege that Mr. Triplett violated the Court's *Order Granting Creditors' Emergency Motion for Second Extension of Deadline for Filing Complaints Under 11 U.S.C. §§ 523 and 727* (the "**2nd Alleged Order Violated**").

77.    The 2nd Alleged Order Violated appears at ROA.20633-34 and makes the following orders directed to Mr. Triplett:

> (1) [¶3]: "Triplett shall appear on April 7, 2020, at 9:30 a.m. . . . to give testimony and be deposed by Creditors in connection with Triplett's Rule

2004 examination, unless Triplett and the Creditors agree to a date, time, and location for Triplett's Rule 2004 examination and deposition prior to April 7, 2020."

(2) [¶4]: "Triplett shall produce to Creditors by no later than March 19, 2020 at 5:00 p.m. CST, all documents, materials, and information requested by Creditors, and which are identified in Exhibit "A" attached to this Court's . . . 2004 Order."

78.   As already noted above, Mr. Triplett appeared at his 2004 Examination on three separate days until the 2004 examination was completed.

79.   Mr. Triplett also produced all documents he had in his possession. *See, e.g.,* ROA.8081.

80.   Appellants further misrepresent the trial court testimony when they allege that Joyce Lindauer – Mr. Triplett's bankruptcy counsel – in response to the question of whether Mr. Triplett had made calls to financial institutions, responded "No."[11]  In fact, what Ms. Lindauer said was:

> A. No.  **Because you told him not to do it because you said you did not trust the information he would get himself.**

ROA.9814:14-16.

81.   In the same testimony, Ms. Lindauer responded – in a quote that Appellants highlighted in their Brief at p. 45 – when asked "So did you – did you comply with this letter?" responded, "I think we tried to comply.  I would not say we fully complied."  But Counsel for Appellants did not pursue that line of questioning to determine what Ms. Lindauer may have been suggesting was not fully complied with (or whose fault it may have been for whatever lack of full compliance may have existed).

82.   Ms. Lindauer further testified that:

---

[11] *See Appellants' Brief,* at p. 45.

➔ She viewed Mr. Triplett as the "model client" in that he would go above and beyond in responding to requests for information. ROA.9761; *see also* ROA.5919-5935.

➔ She recalled three or four bankers' boxes full of documents at the 2004 examination. ROA.9800.

➔ She had sent something to Appellants' counsel that led her to believe that Appellants had enough information to serve subpoenas. ROA.9806-07; *see also* ROA.2776.

➔ She believed she had provided all information received from Mr. Triplett to Appellants' counsel. ROA.9808:7-9.

➔ When asked about providing account numbers, that Mr. Triplett had provided the account numbers. ROA.9809:3-4; *see also* ROA.2779-2781.

➔ It was her understanding based on a letter from Appellants' counsel that they were going to subpoena whatever documents they didn't have. ROA.9811:25-9812:3; *see also* ROA.4246 (Holmes letter to Joyce Lindauer on January 28, 2020.).

➔ "But he produced what he had. And then you guys told us – first of all you told us you didn't think that the documents he had been provided were accurate or complete. You claim that he had forged some of the bank statements and that they were not accurate. And you weren't going to rely on his documents and you were going to get them yourself. That's what you told us." ROA.9812:8-15.

83.     To the extent that Ms. Lindauer believed that some order had not been fully complied with, based on her subsequent testimony, it didn't have anything to do with Mr. Triplett's production of documents.

84.     Appellants' claim that Mr. Triplett should have ignored the advice of counsel; that he should have produced documents even though Appellants had told him that they wouldn't use them is simply not supported by the Court's order. The Court's order required Mr. Triplett to produce documents he had and take "reasonable actions" necessary for Appellants to obtain the documents requested. Appellants were ultimately able to obtain those documents; therefore Mr. Triplett's actions must have been reasonable. Any further

actions as alleged by Appellants and reflected in Appellants' Brief were not reasonable. Mr. Triplett's counsel didn't believe they were reasonable; Mr. Triplett didn't believe they were reasonable; and now neither the Bankruptcy Court nor the District Court believed they were reasonable.

85.    Therefore, Mr. Triplett satisfied the requirements of the 2nd Alleged Order Violated.

### 3.   The Order Granting Creditors' Motion to Compel Debtor to Complete 2004 Examination

86.    The third order Appellants allege Mr. Triplett violated is the *Order Granting Creditors' Motion to Compel Debtor to Complete 2004 Examination* (the "**3rd Alleged Order Violated**"), found at ROA.21386-21394

87.    The only order as to Mr. Triplett in the 3rd Alleged Order Violated orders him to reappear to continue his 2004 examination. He did that, and the transcript of the continued 2004 examination is found at ROA.8564-8618.

88.    Therefore, Mr. Triplett satisfied the requirements of the 3rd Alleged Order Violated.

### 4.   The Order Granting in Part/Denying in Part Creditors' Motion to Compel Discovery and Request for Sanctions' including as Later Reconsidered

89.    The final order that Mr. Triplett is alleged to have violated is the *Order Granting in Part an* [*sic.*] *Denying in Part Creditors' Motion to Compel Discovery and Request for Sanctions* (the "**4th Alleged Order Violated**").

90.    The 4th Alleged Order Violated appears in the record at ROA.21990-91.

91.    The only action this order directs Mr. Triplett to take was to pay $500 to Appellants' trial court counsel. It is undisputed that Mr. Triplett paid this amount. ROA.9911:7-10.

92.     Therefore, Mr. Triplett satisfied the requirements of the 4th Alleged Order Violated.

93.     Because Appellants failed to establish the existence of any false oaths, it is unnecessary for Appellee to address the issue of the intentional or knowing nature of a false oath that does not exist.  Mr. Triplett's efforts – efforts that both the Bankruptcy Court and District Court have now acknowledged – refute any knowing or intentional conduct even to the extent the Court had found some inadvertent false oath.  But such a finding was unnecessary.

E.   **Burden Shifting (Issue #6)**

94.     The issue of alleged burden shifting has been addressed herein in a number of contexts, and in all such situations, it is clear that the District Court rejected that notion.

95.     To the contrary, it's clear that the Bankruptcy Court found, and the District Court upheld the finding, that Appellants failed to carry their burden at trial.

96.     The gist of Appellants argument relates to comments made by both the Bankruptcy Court and the District Court suggesting that some of Appellee's conduct may have been justified under the circumstances.  Appellants argue that such analysis (regarding justification) could only occur if the trial court found that Appellants had satisfied their burden such that the burden shifted to Appellee to establish his affirmative defense of justification.

97.     But what Appellants ignore is that the very same evidence that demonstrates the validity of a justification also serves to negate Appellants evidence, preventing them from satisfying their burden.  For example, evidence that the Valks and/or the Appellants stole and/or destroyed Triplett's information not only goes to the issue of Triplett being justified in his inability to produce such information, but it also serves to negate Appellants' case that

Triplett "concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information." This evidence shows that it was the Valks that destroyed evidence. It was the Valks that failed to keep or preserve recorded information. Not Triplett!

98.    It is clear, therefore, that the Bankruptcy Court did not improperly shift the burden of proof. The burden of proof never shifted to Triplett because Appellants never satisfied their burden such that it would shift to Triplett.

99.    Similarly, simply because the Bankruptcy Court observed that Mr. Triplett made "significant efforts to obtain, produce, and disclose records from which his financial condition and business transactions might be obtained" does not mean that Appellants satisfied their burden. This conclusion could be reached using Appellants' evidence alone. Appellants' evidence included, among other things, Mr. Triplett's 2004 examination testimony (*e.g.*, ROA.8073-127; ROA.8167-222; ROA.8564-8618), transcripts from previous hearings (*e.g.,* ROA.3217; ROA.3111); Mr. Triplett's bankruptcy schedules (ROA.7809-7925), and communications between Appellants' counsel and Mr. Triplett's counsel (*e.g.,* ROA.8031-8041). Mr. Triplett's efforts could easily be gleaned from these documents.

100.    Based on the Court's findings with regard to Appellants' evidence, the Court never needed to reach a consideration of Appellee's affirmative defenses. Indeed, the Court made no conclusions of law to the effect that any failure of Appellee was "justified," as alleged in Appellants' Brief. Instead, it concluded that Appellants failed to meet their burden of proof.

101.    The trial court even went out of its way to add an additional comment regarding the failure of Appellants to satisfy their burden. *See* ROA.10215 ([¶7]: "The Court does not doubt the frustration of the parties with each other. However, such frustration

cannot obviate the degree of proper proof required, especially considering the gravity of the relief Plaintiffs seek."

## CONCLUSION

102.    Appellants' arguments all boil down to a criticism of conclusions made by the Bankruptcy Court that were well within its discretion.  It is well within the discretion of a trial court as the trier of fact to give discounted weight to evidence that it deems appropriate. It is well established in caselaw that determining the credibility of the evidence is exclusively within the purview of the trier of fact.  Appellate courts have frequently ruled that "the trier's judgment of such credibility is final in the absence of a clear mistake, a misinterpretation of the applicable law, or a preponderance of consistent and inherently probable evidence contrary to the finding."  *Ciccarello v. Graham*, 296 F.2d 858, 860 (5th Cir., 1961) (citing  *Sanders v. Leech*, 158 F.2d 486 (5th Cir., 1946); *Prudential Ins. Co. of America v. Carlson*, 126 F.2d 607 (10th Cir., 1942); *Jackson v. United States*, 196 F.2d 725 (3rd Cir., 1952). In a case cited favorably by Appellants – *In re Bradley*, 501 F.3d 421, 434 (5th Cir. 2007) – the Fifth Circuit stated it this way:

> when the bankruptcy court's weighing of the evidence is plausible in light of the record taken as a whole, a finding of clear error is precluded, even if we would have weighed the evidence differently.  As the Supreme Court stated, "[w]here there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous." (citing *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)).

103.    Appellants' arguments once again do nothing more than attempt to substitute their judgment in place of the Bankruptcy Court's.  They've entirely failed – again – to satisfy their burden.

104.    This Court should affirm the rulings of the Bankruptcy Court and the District Court.

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g) and Fed. R. Bankr. P. 8015(a)(7)(C), I hereby certify that this Brief complies with the word limitations of Fed. R. App. P. 32(a)(7)(B)(i) and Fed. R. Bankr. P. 8015(a)(7)(B)(i) in that, according to undersigned counsel's word processing system, this Brief contains 10,773 words.

/s/ **Gregory W. Mitchell**
Gregory W. Mitchell
Counsel for Appellee

## CERTIFICATE OF SERVICE

I hereby certify that on this **12th day of December, 2025**, the foregoing was served on counsel for Appellants.

/s/ **Gregory W. Mitchell**
Gregory W. Mitchell
Counsel for Appellee